IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TEXAS
TYLER DIVISION

| | | |
|---|---|---|
| JERRY LAZA, § | | |
|    *Plaintiff*, § | | |
| § | | |
| *v.* § | | |
| § | | |
| CITY OF PALESTINE, § | Civil Action No. 6:17-CV-00533-JDK | |
| MIKE ALEXANDER, RONALD STUTES, § | | |
| DOUG SMITH, WILL BRULE, STEVE § | JURY DEMANDED | |
| PRESLEY, MITCHELL JORDAN, § | | |
| VICKEY CHIVERS, LARISSA § | | |
| LOVELESS, JOE BAXTER, DANA § | | |
| GOOLSBY, AND ANN CONNER, § | | |
|    *Defendants*. § | | |

**PLAINTIFF'S SECOND AMENDED COMPLAINT**

**COMES NOW** Plaintiff, JERRY LAZA, and files this Second Amended Complaint against the City of Palestine and others under 42 USC § 1983.

Summarizing, the City of Palestine embarked on a 20-year campaign of persecution against Plaintiff Jerry Laza under the guise of zoning ordinance enforcement. This crusade was motivated by city officials' disapproval of the aesthetic of Laza's property. In an attempt to force Laza to bring his property up to its own subjective standards of visual appeal in a way that conforms with its beautification initiatives, the City of Palestine, its officials, and employees infringed Laza's constitutionally vested rights. Defendants exhausted every resource at their disposal in furtherance of their vendetta against Laza—prosecuting him both criminally and civilly—despite Laza's attempts to make peace and desire to simply be allowed to operate his business without encumbrance.

Laza comes now to seek financial and equitable damages.

## I. PARTIES AND SERVICE

1. **Plaintiff, Jerry Laza**, ("Laza" or "Plaintiff") is an individual and resident of Texas residing at 1101 W. Oak Street, Palestine, Texas 75801.

2. **Defendant City of Palestine** ("City") is a home-rule municipality in Anderson County in the State of Texas which may be served at 504 N. Queen St., Palestine, Texas 75801.

3. **Defendant Mike Alexander** is sued in his personal capacity and may be served at 3508 Plover Run Trail, Pflugerville, Texas 78660, or wherever he may be found.

4. **Defendant Ronald Stutes** ("City Attorney") is sued in his personal capacity and may be served at 110 North College, Tyler, Texas 75702, or wherever he may be found.

5. **Defendant City Council Members ("Council")** corporately refers to members of the City Council of Palestine when it filed suit against Laza in 2016. These members include Doug Smith, Will Brule, Steve Presley, Mitchell Jordan, Vickey Chivers, Larissa Loveless, Joe Baxter, Dana Goolsby, and Ann Conner, all of whom are sued in their official capacities, and may be served in Anderson County at 504 N. Queen St., Palestine, Texas 75801.

## II. JURISDICTION AND VENUE

6. This Court has subject-matter jurisdiction over this suit because it arises under U.S. Const. amend. XIV, § 1. "Nor shall any State deprive any person of life, liberty, or property, without due process of law; nor deny to any person within its jurisdiction the equal protection of the laws." 28 U.S.C. § 1331 (Federal Question).

7. This action is brought under the Civil Rights Act of 1871, 42 U.S.C. §§ 1983, 1985 which provides redress to those deprived of civil rights under color of state law against those who work and conspire toward that end under 28 U.S.C. § 1343(a)(3)(4) and § 1331.

8. This Court has supplemental jurisdiction under 28 U.S.C. § 1367(a) over Plaintiffs' state claims because the claims are related to its constitutional claims within this Court's original jurisdiction and form part of the same case under Article III of the United States Constitution.

9. This Court has personal jurisdiction over the defendants, who reside in Texas and acted as described herein, creating the events leading to this suit.

10. Venue is properly founded in this judicial district under 28 U.S.C. §§ 1391(b) and 1400(b) because a substantial part of the events giving rise to the claims in this action occurred within the geographic area falling into the jurisdiction of the Eastern District of Texas. Venue also lies under 28 U.S.C. § 1400(a), because defendants reside or may be found in this district.

### III.   FACTS

11. In the year 1988 in Palestine Texas, 23-year-old Jerry Laza dreamed of having his own lawn mower repair shop. As he searched for the right property, Laza noticed that Halls Repair, a local small engine repair shop located at 302 E Crawford St, Palestine, Texas 75801, had recently closed due to its owner's death.

12. Laza approached the late shop owner's wife, Elizabeth Neal, with a mutually beneficial proposal: Laza would pay Neal monthly rent and maintain the property in exchange for the shop inventory left behind by her husband. This way, Neal would receive financial support and her property would be kept up, and Laza could get a head start building his lawnmower business. Neal happily agreed to the proposal, and Laza began his dream job. Soon after, in 1990, Laza was able to purchase the property from Neal outright.

13. Laza operated his shop in peace from 1990-1994. Business was good, and he began to fill a niche in the rural community for residents who needed lawnmower, chainsaw, and small

engine repairs. Then in 1995, everything changed when the City of Palestine (the "City) began a campaign against Laza to drive him out of town using zoning regulations.

14. City officials, displeased with the appearance and use of Laza's property, began harassing Laza with citations for zoning ordinance violations, despite the fact that grandfather clauses placed Laza's property into compliance and Laza had maintained the property in similar condition since the death of the previous shop owner.

15. Unbeknownst to Laza, the City was not targeting him by happenstance. Beginning around 1992, the City of Palestine had begun a campaign to create a Historic Preservation program (the "Program") that was intended to encourage tourism, rental property purchase, retirement, and other sources of revenue for Palestine via restoration and beautification of property. Under the program, qualifying property owners would receive tax breaks for their "historic" properties in exchange for keeping them up to the aesthetic standards of the City.

16. Under the Program, "Historic Districts" were officially created within Palestine, and qualifying properties within those districts were adopted into the National Register of Historic Places. Laza's property on Crawford St. fell into the Downtown Historic District—one which the City intended to house boutiques, bakeries, and similar small-town attractions. A lawnmower shop simply did not fit certain City leaders and bureaucrats' vision for that area, so the City's staff began looking for creative ways to push Laza out via threats of civil penalty and criminal prosecution for city code and zoning ordinance violations.

17. In an effort to come into compliance with the allegedly violated ordinances, Laza left his property open to constant inspection by the Palestine fire marshal. During one such inspection, Laza noticed the fire marshal writing down vehicle identification numbers of items of Laza's

personal property, and Laza asked him to leave. The fire marshal responded by stating that Laza's property would be condemned, and ordered Laza to vacate. Laza emphatically refused to vacate the property he had worked so hard to acquire. In retaliation, the City cut off Laza's gas, power, and water in an attempt to flush him out.

18. Unwavering and determined to continue operating his business, Laza elected to become entirely self-sufficient. He successfully dug a functional well on his property and crafted a homemade diesel generator from mechanical parts in his shop. Laza's lawnmower shop continued business as usual.

19. A few years later, in 1998, Laza repaired a lawnmower for a customer who happened to be head of the Palestine Historical Preservation movement. The customer offered Laza a trade—his property at 1101 W. Oak St. for Laza's property at 302 E. Crawford St. This trade would achieve the City's goal of ousting Laza from the area.

20. Laza, tired of fighting, agreed to the trade, and acquired the property at 1101 W. Oak St., Palestine, Texas 75801 (the "Property"). At that time, the property was underdeveloped land, unoccupied and suitable for Laza's use running a small motor repair business. Laza hoped that here, out by the railroad tracks and away from the heart of downtown Palestine, he would finally be left alone.

21. Unfortunately for Laza, in conjunction with the City's Historic District program, it also rolled out a "Main Street" initiative which served largely the same purpose—to revitalize downtown Palestine economically. The City created a Main Street District within its larger Historic District through the Texas Historical Commission Main Street Program. This Main Street district was created about one block from Laza's property.

22. Due to the development of the Main Street and Historic District programs, peace and quiet did not last long for Laza. Shortly after acquiring the Property, Laza began setting up his business by unloading trailers of lawn mowers and shop supplies. To Laza's dismay, the City showed up on his Property shortly thereafter and began threatening citations for ordinance violations related to outdoor storage of his inventory and equipment. Laza responded to these threats by discontinuing his move onto the Property and informing the City that he would simply return to his previous business location at 302 E. Crawford St., Palestine, Texas 75801.

23. The City balked at Laza's statement, not wishing for Laza's "unattractive" business to return to its pretty new Downtown District. As such, in an effort to keep Laza out of the district and at the W. Oak Property, the City capitulated and provided Laza an Ordinance Granting a Specific Use Permit for his Property ("Ordinance") on June 22, 1998. This ordinance granted Laza permission to use the Property for outside storage in the C-3 General Commercial Zoning District in which it is located as provided in the Comprehensive Zoning Ordinance of the City of Palestine, Texas.

24. The City left Laza alone for eight more years until 2006, when—unhappy with its previous failure to force Laza to conform his Property to the City's subjective standards of visual appeal, and not content to push Laza to the outskirts of Palestine—it returned to his Property with additional citations in tow. The cited violations included alleged noncompliant outdoor storage, lack of privacy fencing, and operation of a junkyard with improper zoning.

25. The City threatened to prosecute Laza criminally in the Palestine Municipal Court for alleged violation of its ordinances. At this point, Laza recognized the City's efforts as tantamount to harassment, but still offered to settle things outside of the courtroom by building a privacy

fence, moving his lawnmowers and other inventory to the inside of the fence, and adding hedges and shrubs for beautification purposes. The City was not content with these remedies, and instead insisted that Laza "clean up" his property to conform with its aesthetic standards.

26. When Laza refused to bend to the City's whims, the City filed suit in the municipal court. The lawsuit ended with a jury verdict acquitting Laza. The jury found that Laza had variances of outdoor storage dating back to the ordinance the City granted Laza in 1998, that a privacy fence was not required in the front of Laza's business, and that Laza was operating a lawnmower shop instead of a junkyard.

27. The City left Laza alone for three more years, but in 2009, an animal control officer for the City of Palestine began writing Laza tickets for keeping a horse inside City limits. At the request of the Palestine Municipal Court judge, Laza applied for an agricultural designation and was granted such. Laza was found to have met the requirements to keep goats and horses within City limits. All out of ideas regarding how to harass Laza with additional violations, the City shrunk back for another seven years.

28. Then in 2016, under the new leadership of police chief and interim city manager Mike Alexander, the City of Palestine decided to challenge Laza again. Alexander took personal offense to Laza's refusal to conform his property to the City's arbitrary standards of beauty, calling the property "an embarrassment to the City," and made it his personal mission to force Laza to sell his property and leave. Alexander and the City hired attorney Ron Stutes to act as the Palestine City Attorney and bring suit against Laza once more—this time in the state district court. Two months prior to filing, the City's Code Enforcement department, under the direction of Alexander, presented Laza with 28 pages of violations of city codes and ordinances in the

form of a complaint. These alleged ordinance violations were nearly identical to those alleged by the City in 2006 and 2009.

29. Despite the fact that a number of other businesses in the City of Palestine, including some large chains and smaller retail businesses, kept their property in a similar state to Laza's, the City chose to treat Laza differently from other individuals and businesses and target him specifically with this plethora of violations.

30. In response to the City's complaint, Laza reached out to Alexander to see if peace could be made. Alexander informed him that no deals would be made, nothing could be worked out, and the City would sue him in district court.

31. In its eagerness to file suit, the City violated Laza's due process rights in the interest of expediency. Though lawsuits by the City of Palestine require the approval of the Palestine City Council through ordinance or resolution under the Palestine City Charter, no such approval was ever given prior to the filling of the suit by Stutes. By the City's own admission, there was no discussion of the lawsuit by the City Council until June 27, 2016, 18 days after it was filed on June 9, 2016. Additionally, the June 27th discussion was facilitated by none other than Laza himself, who went before the City Council to ask if they could work something out that would save both sides time and attorney fees. The Palestine City Council had heard nothing about the lawsuit until its members were contacted by Laza himself.

32. Despite Laza's efforts, the suit was filed and captioned *City of Palestine, Texas v. Jerry Laza*, No. DCCV16-356-349. A few months into the lawsuit on October 21, 2016, the City of Palestine, under the direction of police chief and interim city manager Mike Alexander, conducted a warrantless search of Laza's Property by law enforcement and city personnel.

Defendants took pictures of serial numbers on Laza's equipment and vehicles in an attempt to bolster their claims against him.

33. The suit ultimately resulted in another jury trial, but this time, the City prevailed. Prior to trial, the City of Palestine severed and removed a number of Laza's claims, both federal and state, resulting in the immediate case. Case No. DCCV16-356-349 is currently on appeal.

## IV. APPLICABLE LEGAL AUTHORITIES

**a. 42 USC § 1983 claims for deprivation of constitutional rights and waiver of immunity.**

34. One of purposes underlying Civil Rights Act (42 USCS § 1983), giving federal right of action for deprivation of any right, privilege, or immunity secured by Federal Constitution, is to provide remedy in federal courts supplementary to any remedy any state might have, and relief under Act may not be defeated because of failure to exhaust administrative remedies provided under state law. *Damico v. California*, 88 S. Ct. 526 (1967).

35. To state claim for relief in action under 42 USC § 1983, plaintiffs must establish that (1) they were deprived of right secured by Constitution or laws of United States, and (2) alleged deprivation was committed under color of state law. *American Mfrs. Mut. Ins. Co. v. Sullivan*, 119 S. Ct. 977 (1999).

36. 42 USC § 1983 allows suits against municipal employees who exceed their legal authority and infringe established constitutional rights, waiving sovereign and governmental immunity, and against their employing cities under a respondeat superior theory where the governing council effectively ratifies an employee's actions. *Myers v. City of Highland Vill.*, 269 F. Supp. 2d 850, 2003 U.S. Dist. LEXIS 11515 (E.D. Tex. 2003).

**b. The Texas Open Meetings Act ensures accountability for governing bodies.**

37. The Texas Open Meetings Act was adopted to help make governmental decision-making accessible to the public. It requires meetings of governmental bodies to be open to the public, except for expressly authorized closed sessions, and to be preceded by public notice of the time, place, and subject matter of the meeting ("A governmental body shall give written notice of the date, hour, place, and subject of each meeting held by the governmental body." TEX. GOV'T CODE § 551.041.).

38. "The provisions of [the Act] are mandatory and are to be liberally construed in favor of open government." *See City of Laredo v. Escamilla*, 219 S.W.3d 14, 19 (Tex. App.—San Antonio 2006, pet. denied); *Willmann v. City of San Antonio*, 123 S.W.3d 469, 473 (Tex. App.—San Antonio 2003, pet. denied); *Toyah Indep. Sch. Dist. v. Pecos-Barstow Indep. Sch. Dist.*, 466 S.W.2d 377, 380 (Tex. App.—San Antonio 1971, no writ).

## V. CLAIM: VIOLATION OF TAKINGS CLAUSE (42 USC § 1983)

**a. Legal Standard**

39. The Takings Clause of the Fifth Amendment prohibits the government from taking private property without just compensation. *Palazzolo v. Rhode Island*, 533 U.S. 606, 617 (2001). While the government may regulate private property, "if regulation goes too far it will be recognized as a taking." *Pennsylvania Coal Co. v. Mahon*, 260 U.S. 393, 415 (1922).

40. "[W]hen a regulation impedes the use of property without depriving the owner of all economically beneficial use, a taking still may be found based on 'a complex of factors,' including (1) the economic impact of the regulation on the claimant; (2) the extent to which the regulation has interfered with distinct investment-backed expectations; and (3) the character of

the governmental action." *Murr v. Wisconsin*, 137 S. Ct. 1933, 1943 (2017) (citing *Penn Central Transp. Co. v. New York City*, 438 U.S. 104, 124 (1978).

### b. Application

41. The city's enforcement of ordinances against Plaintiff constitutes a regulatory taking. The city seeks to prevent Plaintiff from using his property for outside storage, which the City specifically granted him permission through the Specific Use Permit Ordinance.

42. Plaintiff invested in the property with the expectation that he would be able to store equipment outside, and despite giving Plaintiff express permission to do so, the City effectively rendered the property useless for the activity for which Plaintiff invested in.

43. The city's targeted enforcement against Plaintiff will significantly impact his future use and economic interest in the land.

## VI.   CLAIM: VIOLATION OF EQUAL PROTECTION CLAUSE (42 USC § 1983)

### a. Legal Standard

44. A plaintiff may bring an equal protection claim as a "class of one" when he has been (1) intentionally treated differently from others similarly situated and (2) there was no rational basis for the difference in treatment. *Lindquist v. City of Pasadena Tex.*, 669 F.3d 225, 233 (5th Cir. 2012) (citing *Vill. of Willowbrook v. Olech*, 528 U.S. 562, 564 (2000).

### b. Application

45. The city has spent years targeting Plaintiff for ordinance violations while other property owners in the city are not held to the same level of scrutiny.

46. By its harassment of Plaintiff and exercising its police powers selectively, treating Plaintiff different from similarly situated persons, the City has filed to provide equal protection.

47. The City's unequal enforcement of its ordinances against Plaintiff has severely impeded the use of his property in a manner that others are able to enjoy, a violation of Plaintiff's rights under the 14th Amendment and enforced by § 1983.

### VII. CLAIM – VIOLATION OF DUE PROCESS (42 USC § 1983)

a. **Legal Standard**

48. Procedural due process provides that government actors may not make decisions that deprive individuals of life, liberty, or property without due process of law mandated by the Fifth and Fourteenth Amendments. *Mathews v. Eldridge*, 424 U.S. 319, 332 (1976).

49. According to state law, a city may only act through its governing body. *City of Bonham v. Sw. Sanitation, Inc.*, 871 S.W.2d 765, 767 (Tex. App.—Texarkana 1994, writ denied). Acts of other officials are ineffectual without express authorization of the city council by vote reflected in the minutes. *Id.* (citing *Canales v. Laughlin*, 214 S.W.2d 451 (Tex. 1948)).

b. **Application**

50. Ron Stutes filed suit on behalf of the city against Plaintiff on June 9, 2016. According to the city's own admission, the City Council did not discuss this lawsuit until June, 27, 2016, and has never voted to even ratify the decision by Stutes to file the suit.

51. Ron Stutes, acting under color of state law, instigated this lawsuit without approval of the Palestine City Council, the City's governing body, as required by state law.

52. Ron Stutes acted outside of the scope of his authority, significantly depriving Plaintiff of his property interest, in violation of Plaintiff's right to due process of law.

## VIII. CLAIM – UNLAWFUL SEARCH (42 USC § 1983)

### a. Legal Standard

53. The Fourth Amendment of the U.S. Constitution provides that "[t]he right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated, and no Warrants shall issue, but upon probable cause, supported by Oath or affirmation, and particularly describing the place to be searched, and the persons or things to be seized." U.S. Const. amend. IV.

54. The Fourth Amendment prohibition against unreasonable searches protects against warrantless intrusions during civil as well as criminal investigations. *Marshall v. Barlow's Inc.*, 436 U.S. 307, 312 (1978). "If the government intrudes on a person's property, the privacy interest suffers whether the government's motivation is to investigate violations of criminal laws or breaches of other statutory or regulatory standards." *Id*.

### b. Application

55. The City of Palestine, under the direction of police chief and interim city manager Mike Alexander, unlawfully and unreasonably intruded upon and searched Laza's Property in violation of his Fourth Amendment rights when it sent law enforcement and city personnel to conduct a warrantless search of the property on October 21, 2016 for investigative regulatory purposes without a probable cause.

## IX. CLAIM: VIOLATION OF TEXAS OPEN MEETINGS ACT

### a. Legal Standard

56. The Texas Open Meetings Act (TOMA) requires that government meetings be open to the public. The provisions of TOMA are mandatory and liberally construed in favor of open government. *Toyah Ind. Sch. Dist. v. Pecos-Barstow Ind. Sch. Dist.*, 466 S.W.2d 377, 380 (Tex. Civ. App.--San Antonio 1971, no writ).

57. Any action taken by a governmental body in violation of the TOMA is voidable; a successful plaintiff is entitled to have unlawful actions reversed. *Ferris v. Texas Bd. of Chiropractic Examiners*, 808 S.W.2d 514, 1991 Tex. App. LEXIS 509 (Tex. App. Austin Mar. 6, 1991, writ denied); TEX. GOV'T CODE § 551.141.

58. Any interested person may bring an action by mandamus or injunction to stop, prevent, or reverse a violation or threatened violation of TOMA by members of a governmental body. TEX. GOV'T CODE § 551.142(a).

59. The Texas Open Meeting Act requires written notices regarding the subject of each meeting. Tex Gov't Code Code Ann. § 551.041.

### b. Application

60. The City Administrator, Mike Alexander, under sworn testimony, stated that he held a meeting with members of the City Council of the City of Palestine, and discussed the above captioned and numbered lawsuit as it related to the authority of the City Council to pass an ordinance or resolution authorizing the subject litigation.

61. Anderson further stated under oath that he did not have approval and did not sign any document authorized by the City Council to file any lawsuit against the Plaintiff.

62. There is no published date in Anderson County with a meeting notice related to a City Council meeting, along with a posted agenda of that meeting, pursuant to Texas Open Meetings Act authorizing any lawsuit against the Plaintiff. The posted agenda included no notice or agenda related to any authorization of any lawsuit against the Plaintiff.

63. In violation of the Act, the Defendants heard and discussed the lawsuit at the unnoticed meeting, even though this subject was not listed on any posted agenda. Nothing on the posted agenda indicated the substance of the presentation which covered discussions concerning the authority and the ordinance to prosecute a lawsuit and litigation against Plaintiff.

64. As a defendant in unauthorized litigation leading to this suit and property taxpayer in Palestine, Plaintiff has standing to sue the city for violation of the Open Meetings Act as an "interested person," a phrase with wide meaning.

### X.   CLAIM - INJUNCTIVE RELIEF

65. Plaintiff has a probable right of recovery in this action, in that the Defendants are persons that have unlawfully prosecuted claims against the Plaintiff and violated the Texas Open Meetings Act.

66. Plaintiff has a probable right of recovery in this action, in that the City Attorney, in concert with the City Administrator, has violated Texas Law and caused damages to the Plaintiff.

67. The Plaintiff has no adequate remedy at law without injunctive relief to protect plaintiff from the harm caused, in that the City of Palestine, intends to violate the laws of Texas and the United States, breach its agreements with the Plaintiff, by failing to honor its agreements, and to refuse to allow the operation of the Plaintiff's business as was agreed twenty years ago.

68. Monetary damages will not fully compensate Plaintiff for the harm done by Defendants'

actions. The court should temporarily enjoin Defendants' enforcement actions to preserve the status quo prior to the conduct by Defendants in violation of the Open Meetings Act.

69. On final trial, the temporary injunction should be made permanent.

## XI. WAIVER OF IMMUNITY

### a. Constitutional waiver of immunity.

70. Defendants have waived governmental immunity from the claims in this complaint by infringing upon Plaintiff's constitutional rights.

71. Municipalities cannot make use of the qualified immunity defense. They can be held liable even if they did not know they were violating the victim's constitutional rights. *Owen v. City of Independence*, 445 U.S. 622 (1980).

72. A plaintiff may establish municipal liability under section 1983 by proving a violation of constitutional rights by an action pursuant to official municipal policy or pursuant to misconduct so pervasive among non-policy-making employees of the municipality as to constitute a custom or usage with the force of law. *Monell v. Dep't of Soc. Servs.*, 436 U.S. 658, 690-91 (1978).

### b. Waiver under the Texas Open Meetings Act.

67. Section 551.141 of the Texas Government Code states that "[a]n action taken by a governmental body in violation of this chapter is voidable." TEX. GOV'T CODE § 551.141.

68. Therefore, "[t]he Open Meetings Act expressly waives sovereign immunity for violations of the act." *Hays Cty. v. Hays Cty. Water Planning P'ship*, 69 S.W.3d 253, 257 (Tex. App.—Austin 2002, no pet.); see generally Tex. Att'y Gen. Open Meetings Handbook (2020), p. 76 (citations and quotations omitted) ("the Open Meetings Act expressly waives sovereign

immunity for violations of the Act.").[1] "[T]his Court has explained that the open meetings act waives immunity for violations of the act and authorizes suits against governmental bodies." *Riley v. Comm'rs Court*, 413 S.W.3d 774, 776–77 (Tex. App.—Austin 2013, pet. denied).

## XII. CONDITIONS PRECEDENT

69. Plaintiff has satisfied all conditions precedent to bring this suit.

## XIII. DAMAGES

70. Plaintiff seeks economic damages from Defendants for the loss of property value, mental anguish, and attorney fees as appropriate.

71. Plaintiff seeks an injunction requiring Defendants to cease enforcement of ordinances against Plaintiff and his business until such time that the City's council passes a resolution in support of an enforcement action that at least colorably gives authority to the City's bureaucrats to prosecute Laza based on some law.

## XIV. ATTORNEY'S FEES

72. Plaintiff seeks recovery of attorney's fees pursuant to TEX. PROP. CODE § 5.006, TEX. CIV. PRAC. & REM. CODE § 37.009 and § 38.001, and 42 USC 1988.

## XV. JURY DEMANDED

73. Plaintiff demands a jury trial.

---

[1] The Texas Attorney General Open Meetings Handbook (2020) is printed and distributed by the State of Texas as a guide to all Texas government entities, and includes an impressively persuasive view of the requirements of the Texas Open Meetings Act, incorporating opinions issued by the Texas Attorney General and Texas law. While not controlling, this treatise is admissible as a publicly promulgated authority issued by the Texas Attorney General's office under Texas Rule of Evidence 204.

## XVI. PRAYER

WHEREFORE PREMISES CONSIDERED, Plaintiff respectfully requests the court enter judgment in favor of Plaintiff and find Defendants, jointly and severally, in violation of federal law at 42 USC § 1983 and § 1988:

a. Award Plaintiff damages for loss of property value, mental anguish, and injunctive relief as described above against the Defendants.
b. Reasonable and necessary attorney's fees;
c. Costs of court;
d. Post-judgment interest at the lawful rate, and;
e. All other relief to which Plaintiff may be entitled in law and equity.

Respectfully submitted,

By: /s/Warren V. Norred
Warren V. Norred, Texas Bar No. 24045094
515 E. Border, Arlington, TX  76010
Tel. (817) 709-3984; Fax. (817) 524-6686
Attorneys for Plaintiff

I certify that I served this Second Amended Complaint on March 9, 2021 to all parties through the Court's PACER system, including the following representatives for the City of Palestine:
James Matthew Rowan, at mrowan@cr.law
Ron Stutes, rstutes@wilsonlawfirm.com
Lance Vincent, lancev@rllawfirm.net

By: /s/Warren V. Norred
Warren V. Norred