UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TEXAS
TYLER DIVISION

| | | |
|---|---|---|
| **JERRY LAZA,** | § | |
| | § | |
| **Plaintiff,** | § | |
| | § | |
| v. | § | **CIVIL ACTION NO. 6:17-cv-00533-JDK** |
| | § | |
| **CITY OF PALESTINE, TEXAS, et al.,** | § | |
| | § | |
| **Defendants.** | § | |

## PLAINTIFF'S RESPONSE TO STUTES'S MOTION FOR SUMMARY JUDGMENT

COMES NOW Plaintiff Jerry Laza ("Laza") and files this Response to Defendant Stutes's Motion for Summary Judgment, with accompanying exhibits, ECF No. 86 on the Court's docket.

Summarizing, Stutes's Motion rests on a fundamental misstatement of material facts and mischaracterization of law. Defendant Stutes misrepresented the City of Palestine City Charter, as described below. A reading of the plain language of the Charter, together with the Texas Open Meetings Act, invalidates Stutes's claim for qualified immunity and shows that he indeed violated Laza's rights. Stutes's Motion does not contain a Statement of Issues to which Laza may respond; therefore, Laza respectfully shows the Court as follows.

# I.    CONTENTS

**II. SUMMARY JUDGMENT EVIDENCE** ........................................................ **4**

**III. RESPONSE TO STATEMENT OF MATERIAL FACTS** ......................... **4**

   A.   AFFIDAVIT OF RONALD STUTES ........................................................................ 4

   B.   AFFIDAVIT OF MIKE ALEXANDER ..................................................................... 5

   C.   AFFIDAVIT OF TERESA HERRERA ...................................................................... 5

**IV. ARGUMENTS AND AUTHORITIES** .......................................................... **5**

   D.   PLAINTIFF'S PROCEDURAL DUE PROCESS AND OPEN MEETINGS ACT CLAIMS
SUCCEED .......................................................................................................... 5

      *i.*   *Due Process Law* ...................................................................................... 5

      *ii.*   *TOMA Law* ............................................................................................. 6

      *iii.*   *TOMA and Due Process Analysis* .......................................................... 11

   E.   PLAINTIFF'S REQUEST FOR INJUNCTIVE RELIEF UNDER THE OPEN MEETINGS
ACT SUCCEEDS .............................................................................................. 16

   F.   QUALIFIED IMMUNITY .................................................................................. 16

      *i.*   *City of Palestine Charter and Texas Open Meetings Act* ......................... 17

      *ii.*   *Procedural Due Process* ......................................................................... 20

      *iii.*   *Equal Protection Clause* ........................................................................ 21

   G.   OFFICIAL IMMUNITY CLAIMS ....................................................................... 24

**V.  PRAYER FOR RELIEF** .......................................................................... **24**

## II.    TABLE OF AUTHORITIES

### CASES

*Acker v. Texas Water Com.*, 790 S.W.2d 299 (Tex. 1990). ...........................................................5

*Ashcroft v. al-Kidd*, 563 U.S. 731 (2011)...................................................................................16

*Bexar Medina Atascosa Water Dist. v. Bexar Medina Atascosa Landowners' Ass'n*, 2 S.W.3d 459 (Tex. App.—San Antonio 1999, pet. denied). ....................................................................6

*Bowie v. Bd. of Cty Comm'rs*, 203 Md. App. 153 (Ct. Sp. App. 2012). .....................................20

*City of Bonham v. Sw. Sanitation, Inc.*, 871 S.W.2d 765 (Tex. App.—Texarkana 1994, writ denied). ...................................................................................................................... 4, 14, 19

*Comer v. County of Twin Falls*, 942 P.2d 557 (Idaho 1997).......................................................20

*Committee for Washington's Riverfront Parks v. Thompson*, 451 A. 2d 1177 (D.C. 1982) .........20

*Cox Enterprises, Inc. v. Board of Trustees of Austin I.S.D.*, 706 S.W.2d 956 (Tex. 1986). .......5, 7

*Ferris v. Texas Board of Chiropractic Examiners*, 808 S.W.2d 514 (Tex. App.- Austin 1991, writ denied) ........................................................................................................................ 7, 9, 17

*Finlan v. City of Dallas*, 888 F. Supp. 779 (N.D. Tex. 1995*)*. ..................................................5, 8

*Harlow v. Fitzgerald*, 457 U.S. 800 (1982).................................................................................15

*Iverson v. Putnam*, 2017 Tex. App. LEXIS 3975 (14th Ct. App. May 2, 2017)...........................15

*Killam Ranch Props. v. Webb County*, 376 S.W.3d 147 (Tex. Ct. App. 2012).............................9

*Lindquist v. City of Pasadena Tex.*, 669 F.3d 225 (5th Cir. 2012) .............................................20

*Mathews v. Eldridge*, 424 U.S. 319 (1976). ...........................................................................4, 19

*Porth v. Morgan*, 622 S.W.2d 470 (Tex. App.- Tyler 1981, writ ref'd n.r.e.) ..............................7

*Tovar v. State*, 978 S.W.2d 584 (Tex. Crim. App. 1998) (Tex. Crim. App. Oct. 28, 1998, no pet.). ..............................................................................................................................................9

*Town of Shady Shores v. Swanson*, 590 S.W.3d 544 (Tex. 2019)................................................7

*Toya Ind. Sch. Dist. v. Pecos-Barstow Ind. Sch. Dist.*, 466 S.W.2d 377 (Tex. Civ. App.—San Antonio 1971, no writ). ......................................................................................................9, 17

*United States v. City of Garland*, 124 F. Supp. 2d 442 (N.D. Tex. 2000). ..................................17

### STATUTES

Tex. Gov't Code §§ 551 et seq. .........................................................................................passim

### OTHER AUTHORITIES

Atty. Gen. Op. JC-169 (2000). .....................................................................................................7

Op. Tex. Att'y Gen. No. LO-95-055 (1995) ..................................................................................7

### III.   SUMMARY JUDGMENT EVIDENCE

1.     The following are attached in support of Laza's Response to Defendant Stutes's Motion

for Summary Judgment:

> **Exhibit A:** Portions of the Deposition of Jeffrey Lyons and Patsy Smith, as
> representatives of the City of Palestine taken on June 5, 2017;
> **Exhibit B:** Ordinance Granting Laza a Specific Use Permit 110 W. Oak Street;
> **Exhibit C:** Portions of Defendant Ronald Stutes's Discovery Responses;
> **Exhibit D:** Palestine Municipal Court records;
> **Exhibit E:** 2016 Notice of Violation;
> **Exhibit F:** Judgment in City of Palestine, Texas v. Jerry Laza, No. DCCV16-356-
> 349, entered February 28, 2018;
> **Exhibit G:** Memorandum Opinion from the Twelfth Court of Appeals denying
> Laza's Petition for Writ of Mandamus on January 3, 2018;
> **Exhibit H:** Portions of Laza's Petition for Writ of Mandamus, September 18, 2017;
> and
> **Exhibit I:** Declaration of Jerry Laza.

### IV.   RESPONSE TO STATEMENT OF MATERIAL FACTS

#### A.  Affidavit of Ronald Stutes

2.     Paragraph 1: Undisputed.

3.     Paragraph 2: Undisputed.

4.     Paragraph 3: Disputed. Laza was not present during these purported meetings and cannot

confirm who was present. Laza cannot ascertain whether "all persons at the meeting were in

agreement" because no meeting minutes were produced in the course of discovery.

5.     Paragraph 4: Disputed. As discussed below, there is ample evidence that Stutes did not

follow protocol prior to filing suit against Laza in 2016.

6.      Paragraph 5: Disputed. The City Council was not fully aware prior to filing suit.

7.     Paragraph 6: Undisputed.

8.     Paragraph 7: Disputed. Laza is unaware of the content of the purported telephone calls.

9.      Paragraph 8: Disputed. There is no proposed Rule 11 agreement in the record.

10.     Paragraph 9: Disputed as to the assertion that the inspection was done pursuant to a Rule 11 agreement.

11.     Paragraph 10: Undisputed.

12.     Paragraph 11: Undisputed.

13.     Paragraph 12: Undisputed.

14.     Paragraph 13: Disputed.

**B.  Affidavit of Mike Alexander**

15.     Paragraph 14: Disputed.

**C.  Affidavit of Teresa Herrera**

16.     Paragraph 15: Disputed as to the implication that the City Council minutes referenced in Ex. C, ¶ 2 of the Affidavit of Teresa Herrera constitute initiation of *City of Palestine v. Laza* (state court lawsuit).

17.     Paragraph 16: Undisputed.

## V.      ARGUMENTS AND AUTHORITIES

**D.  Plaintiff's Procedural Due Process and Open Meetings Act Claims Succeed**

18.     Laza's TOMA and Due Process claims are factually and legally intertwined, so Laza will analyze them together.

*i.      Due Process Law*

19.     Procedural due process provides that government actors may not make decisions that deprive individuals of life, liberty, or property without due process of law mandated by the Fifth and Fourteenth Amendments. *Mathews v. Eldridge*, 424 U.S. 319, 332 (1976).

20.     According to state law, a city may only act through its governing body. *City of Bonham v.*

*Sw. Sanitation, Inc.*, 871 S.W.2d 765, 767 (Tex. App.—Texarkana 1994, writ denied).

21.     Acts of other officials are ineffectual without express authorization of the city council by vote reflected in the minutes. *Id.* (citing *Canales v. Laughlin*, 214 S.W.2d 451 (Tex. 1948)).

22.     Defendant Ronald Stutes violated Laza's due process rights when he filed the 2016 lawsuit against Laza without proper authorization from the City of Palestine's governing body—the Palestine City Council. For a complete analysis of Stutes's violation see Section B.

23.     As such, the pleadings show Defendant Stutes acted outside the scope of his authority, significantly depriving Laza of his property interest and violating his right to due process of law.

        *ii.     TOMA Law*

24.     "The purpose of the Texas Open Meetings Act is to protect the public's interest, in knowing the workings of its governmental bodies. *Cox Enterprises, Inc. v. Board of Trustees of Austin I.S.D.*, 706 S.W.2d 956, 960 (Tex. 1986).

25.     "Our citizens are entitled to more than a result. They are entitled not only to know what government decides but to observe how and why every decision is reached. The explicit command of the statute is for openness at every stage of the deliberations. Accordingly, Texas courts demand exact and literal compliance with the terms of this statute." *Acker v. Texas Water Com.*, 790 S.W.2d 299, 300 (Tex. 1990).

26.     As the Texas Supreme Court has observed, citizens "are entitled not only to know what the government decides but to observe how and why every decision is reached. The explicit command of the statute is for openness at every stage of the deliberations." *Id*

27.     "In our country, we have a basic belief that in a democracy the people do not need their government to protect them from themselves." *Finlan v. City of Dallas*, 888 F. Supp. 779 (N.D. Tex. 1995).

28.     A "meeting" includes any deliberation involving a "quorum" or majority of the members of a governing body at which they act on or discuss any public business or policy over which they have control.

29.     Section 551.001(4)(A) of the Texas Open Meetings Act ("TOMA") uses the term "deliberation" to define "meeting": "a deliberation between a quorum of a governmental body, or between a quorum of a governmental body and another person, during which public business or public policy over which the governmental body has supervision or control is discussed or considered or during which the governmental body takes formal action . . ." Tex. Gov't Code §§ 551 et seq.

30.     The Act applies to a governmental body when it engages in a "regular, special, or called meeting." *Id.* § 551.001(3).

31.     Informal meetings of a quorum of members of a governmental body are also subject to the Act. "Deliberation," a key term for understanding the Act, is defined as follows: "Deliberation" means a verbal or written exchange between a quorum of a governmental body, or between a quorum of a governmental body and another person, concerning an issue within the jurisdiction of the governmental body. *See id.* at § 551.001(2).

32.     "Deliberation" and "discussion" are synonymous for purposes of the Act. *Bexar Medina Atascosa Water Dist. v. Bexar Medina Atascosa Landowners' Ass'n*, 2 S.W.3d 459, 460–61 (Tex. App.—San Antonio 1999, pet. denied).

33.     Any verbal exchange between a majority of the members concerning any issue within their jurisdiction constitutes a "deliberation" and when a majority of a public, decision-making body is considering a pending issue, there can be no "informal" discussion. There is either formal consideration of a matter in compliance with the Open Meetings Act or an illegal meeting.

34.     Agendas for all meetings shall be sufficiently specific to inform the public of the subjects to be deliberated at the meeting, setting out any special or unusual matters to be considered or any matter in which the public has a particular interest. Deliberations or actions pertaining to a superintendent and principals are of particular public interest, and notice of those subjects must be worded with such clarity that the public will understand what a board proposes to discuss or accomplish. *Cox Enterprises, Inc. v. Austin Indep. Sch. Dist.*, 706 S.W.2d 956 (Tex. 1986).

35.     The terms "employee briefing" or "staff briefing" do not give adequate notice of the subject matter to be presented to a board by employees or staff members. Atty. Gen. Op. JC-169 (2000).

36.     The subject of a report or update by district staff or a member of the board must be set out in the notice in a manner that informs a reader about the subjects to be addressed. Atty. Gen. Op. GA-668 (2008)

37.     Secret meetings of government entities violate the letter and spirit of the Texas Open Meetings Act, which stipulates that "[e]very regular, special, or called meeting of a gov't body shall be open to the public…". *Id*. at § 551.002.

38.     Furthermore, "[a] governmental body shall prepare and keep minutes or make a recording of each open meeting of the body." *Id*. at § 551.021(a).

39.     Meetings behind closed doors of government entities violate the Texas Open Meetings Act, codified as sec. 551.002 of the Texas Gov't Code, which requires that "[e]very regular, special, or called meeting of a governmental body shall be open to the public…". *Id*. The Texas Supreme Court has held that under the Open Meetings Act provides that an action taken in violation of the Act is voidable. *Town of Shady Shores v. Swanson*, 590 S.W.3d 544, 63 (Tex. 2019).

40.     A governmental entity may ratify only what it could have lawfully authorized initially.

*Ferris v. Texas Board of Chiropractic Examiners*, 808 S.W.2d 514, 518 (Tex. App.- Austin 1991,

writ denied); *Porth v. Morgan*, 622 S.W.2d 470, 475-76 (Tex. App.- Tyler 1981, writ ref'd n.r.e.);

*see also* Op. Tex. Att'y Gen. No. LO-95-055 (1995) (violations caused by deliberations that did

not comply with the Act cannot be cured by repeating the deliberations in an open meeting held in

compliance with the Act).

41.     Meetings of governmental bodies must be open to the public, except for expressly

authorized executive sessions. Tex. Gov't Code § 551.002.

42.     Among the provisions expressly authorizing an executive session is section 551.071, which

provides that

> A governmental body may not conduct a private consultation with its attorney except:
>
> (1) when the governmental body seeks the advice of its attorney about:
>
> (A) pending or contemplated litigation; or
>
> (B) a settlement offer; or
>
> (2) on a matter in which the duty of the attorney to the governmental body under the Texas Disciplinary Rules of Professional Conduct of the State Bar of Texas clearly conflicts with this chapter.

Tex. Gov't Code. § 551.071

43.     Opinion No. JC-0233:

> The crux of these requirements for purposes of section 2(e) [(now Government Code section 551.07l)] is that the communication must be related to an opinion on law or legal services or assistance in some legal proceeding. Thus, a governmental body may hold an executive session to seek or receive the advice of its attorney only with regard to matters in which it seeks the attorney's legal advice or with regard to matters which relate to a specific pending or contemplated legal proceeding. If the discussion does not relate to a specific legal proceeding, the closed door discussion with the attorney must be limited to legal matters. General discussion o*f policy, unrelated to legal matters, is not permitted under the language of section 2(e) merely because an attorney is present*.

*Id*. quoting Tex. Att'y Gen. Op. No. JM-100 at 2.

44.    A governmental body may consult with its attorney in executive session to discuss the legal issues raised in connection with awarding a contract, but it may not discuss the merits of a proposed contract, financial considerations, or other nonlegal matters in an executive session held under section 551.071 of the Government Code. *See Finlan v. City of Dallas*, 888 F. Supp. 779,782 n. 9 (N.D. Tex. 1995) (citing Tex. Att'y Gen. Op. No. JM-100 (1983)).

45.    "If during an executive session there is discussion of topics outside the scope of the statutory exception for legal advice, then there is a violation of the Texas Open Meetings Act. *See Olympic Waste Servs*., 204 S.W.3d at 502." *Killam Ranch Props. v. Webb County*, 376 S.W.3d 147 (Tex. Ct. App. 2012).

46.    Former school board president was criminally responsible for holding a closed meeting in violation of the Open Meetings Act, Tex. Gov't Code § 551.144, regardless of his mental state with respect to whether the closed meeting was permitted under the act.  *Tovar v. State*, 978 S.W.2d 584 (Tex. Crim. App. 1998) (Tex. Crim. App. Oct. 28, 1998, no pet.).

47.    Therefore, a government official can be found guilty of violating Tex. Gov't Code § 551.144 by calling or participating in an impermissible closed meeting, even when he is unaware of the illegality of the meeting. *See id*.

48.    As stated on page 14 of *Laza's Second Amended Complaint* (Doc. No. 46), the Texas Open Meetings Act (TOMA) requires that government meetings be open to the public. The provisions of TOMA are mandatory and liberally construed in favor of open government. *Toya Ind. Sch. Dist. v. Pecos-Barstow Ind. Sch. Dist.*, 466 S.W.2d 377, 380 (Tex. Civ. App.—San Antonio 1971, no writ).

49.    TOMA requires written notices regarding the subject of each meeting. Tex. Gov't Code Ann. § 551.041.

50.     Any action taken by a governmental body in violation of the TOMA is voidable; a successful plaintiff is entitled to have unlawful actions reversed. *Ferris v. Tex. Bd. of Chiropractic Exam'rs*, 808 S.W.2d 514, 517–18 (Tex. App.—Austin 1991, writ denied); Tex. Gov't Code § 551.141.

    iii.     *TOMA and Due Process Analysis*

51.     Stutes argues in his Motion at 5 that "[Plaintiff] alleges (in a vague manner) that there was an "unnoticed" City Council meeting wherein the authority to file the state court lawsuit was discussed. Defendant Stutes denies this baseless allegation."

52.     In Defendant Stutes's discovery responses, Stutes admits that he filed a lawsuit against Laza on June 9, 2016, on behalf of the City of Palestine, Texas:

| |
|---|
| **RFA NO. 14:**     On June 9, 2016, you filed a Lawsuit against Plaintiff. |
| **RESPONSE:**     Defendant admits that, on June 9, 2016, he was counsel of record for the City of Palestine's lawsuit against Plaintiff. |
| **RFA NO. 15:**     You filed the Lawsuit against Plaintiff on behalf of the City. |
| **RESPONSE:**     Defendant admits that he was counsel of record for the City of Palestine's lawsuit against Plaintiff. |

Stutes's Resp. to Pl's RFA No. 14–14 (Ex. C).

53.     Further, Stutes admits he had "no knowledge" of any Palestine City Council minutes discussing any lawsuit against Laza on or before the date the lawsuit was filed:

| |
|---|
| **RFP NO.4:**     Produce all certified minutes of Palestine City Council meetings that discuss any lawsuit against Plaintiff on or before June 9, 2016. |
| **RESPONSE:**     None to Defendant's knowledge. |

Stutes's Resp. to Pl's RFP No. 4 (Ex. C).

54.     Stutes's acknowledgment that there are no minutes from any City Council meeting

authorizing the lawsuit against Laza is a clear admission that the suit was initiated in violation of TOMA and Laza's right to due process.

55.     Next, Stutes admits the decision to file a lawsuit against Laza was made in a closed meeting between Stutes, Jeffrey Lyons, Patsy Smith, Ass't City Manager Pannell, and others:

> **Interrogatory 8:**     Describe the process that led to the City authorizing and filing the Lawsuit against Plaintiff on June 9, 2016.
>
> **ANSWER:**        There was a meeting sometime in early 2016 between me, Jeffrey Lyons, Patsy Smith, Assistant City Manager Larry Pannell, and others whose names I cannot presently recall.   It was determined that a Notice of Violation would be issued to Plaintiff due to his continuing violations of numerous City of Palestine Ordinances.  If Plaintiff did not comply with the Ordinances, then it was determined that a lawsuit would be filed to enforce the Ordinances. Plaintiff did not comply with the City of Palestine Ordinances.  Pursuant to the authority granted the City Attorney by the City of Palestine, and with the approval of City of Palestine officials, a lawsuit was filed against Plaintiff to enforce the Ordinances.
>
> **Interrogatory 9:**   Identify the time and place of the meeting during which the City Council authorized you to file the Lawsuit against Plaintiff on June 9, 2016.
>
> **ANSWER:**        There was no City Council meeting prior to June 9, 2016, during which the filing of the subject lawsuit was discussed.  Appropriate City of Palestine officials and the City Attorney, pursuant to their lawful authority and responsibilities, determined to proceed with the lawsuit against Plaintiff.  Thereafter, the City of Palestine City Council was routinely appraised of the status of the litigation. A trial was held in Anderson County District Court and the Plaintiff was found liable to the City of Palestine.

Stute's Resp. to Pl.'s Interrog. No. 8–9.

56.     As discussed in the Second Amended Complaint, a city may only act through its governing body. (Doc. No. 46, ¶ 49.) Here, there is no evidence that the Palestine City Council ever voted or gave authority to Defendant Stutes to file suit against Laza in an open meeting.

57.     Thus, the record shows Defendant Stutes acted outside the scope of his authority, in violation of the TOMA, razing a plausible issue of material fact and rendering Defendant's Motion for Summary judgment on this matter inappropriate.

58.     Stutes further alleges that "[t]he authority set forth in the City Charter, together with the request and approval of appropriate City of Palestine officials, was the authority for Defendant

Stutes, as City Attorney, to file the lawsuit on behalf of the City of Palestine against Plaintiff Laza."
(Stutes Motion at 6).

59.     Stutes proceeds to cite the affidavits of Mike Alexander, the former City Manager, for the proposition that Stutes had the authority to prosecute suit against Laza. (Stutes Motion at 6). Nowhere in the affidavit does Alexander confirm that the City Council voted to initiate the litigation. Nor do the minutes of the City Council, authenticated by the current City Manager, Teresa Herrera. (Stutes Motion at 6).

60.     Laza does not deny, nor has he ever denied, that the City Council discussed the lawsuit against him in closed session, after the suit was initiated.

61.     Laza complains that the City Council did not vote to initiate the lawsuit, or even discuss it, prior to its initiation by Stutes, rendering it invalid. Alternatively, the suit was discussed or approved by a vote at a session unrecorded in the minutes. Under both theories, the City violated TOMA though its agent Stutes.

62.     Stutes contends that the City Charter authorized Stutes's suit without prior authorization from the City. (Stutes Motion at 13).

63.     It reads in relevant part,

attention. If the city council shall determine that said complaints are well founded, it shall be the city attorney's duty to take such actions as may be necessary, and in the event the offending corporation, firm or person, shall fail or refuse to conform to the orders of the council in respect thereto, it shall be the duty of the council to direct the city attorney to institute suit in the court having jurisdiction thereof against such corporation, firm or person, for a judgment of forfeiture of franchise or privilege, or any other judgment

proper under the premises [sic]. It shall be the city attorney's duty to see that all penal ordinances of the city are impartially enforced. Whenever deemed expedient, the city council may employ other attorneys.

(Defendant's Ex. D. §8.7).

64.     Stutes cites, with emphasis on a prior line stating, "[t]he city attorney shall represent the city in all litigation and controversies."

65.     Nothing in the text of the City Charter authorizes the city attorneys to file suits in violation of TOMA, without the City Council's approval. Note the operative language above, "[i]f the city council shall determine," "it shall be the duty of the council to direct the city attorney to institute suit," "the city council may employ other attorneys." In sum, there is simply no plausible reading of §8.7 to initiate suit against Mr. Laza without approval of the city council; approval that must come in the form of a vote, per TOMA.

66.     Laza has never contended that Stutes did not represent the city when he brought suit. Laza complains that he did not have the requisite authority to initiate the suit without a determination by the council. Stutes's reliance on the line "[t]he city attorney shall represent the city in all litigation and controversies," treats a statutory designation as a grant of authority rather than a designation. This is apparent when the following language concerning the City's determination and direction, is taken into account.

67.     Continuing their chain of tendentious loose reading, Stutes cites *San Antonio v. Aguilar* 670 S.W. 2d 681 (Tex. Civ. App. – San Antonio [4th Dist.]1984, no writ). (Stutes Motion at 14). stating,

Express authority exists where the principal has made it clear to the agent that he wants the act under scrutiny to be done. H. Reuschlein & W. Gregory, AGENCY AND PARTNERSHIP, § 14 (1979); implied authority exists where there is no proof of express authority, but appearances justify a finding that in some manner the agent was authorized to do what he did; in other words, there is circumstantial proof of actual authority. *Id.* at § 15.

(Stute's Motion at 14).

68.     Stutes neglects to cite the critical language in *Aguilar*,

"Where, as here, the City Attorney has authority derived from the city charter to represent the City in all legal proceedings, the City Council is not required to pass a resolution or an ordinance as a prerequisite to an appeal.  We hold this an internal administrative decision and not within the purview of the Open Meetings Act."
*Id.* at 686.

69.     This Court will note that the facts in *Aguilar* center around an appeal of a suit where the city attorney of San Antonio had previously represented the city, under color of proper authorization.

70.     In the facts at bar, Laza complains that Defendant Stutes in his capacity as city attorney, improperly initiated an original proceeding against Laza, absent proper authorization from the City. In short, *Aguilar* is wholly distinguished from this matter and wholly irrelevant.

71.     Finally, Stutes argues that his meeting with City Administrator, Mike Alexander's testimony, conferred express authority for Stutes to sue. (Stutes Motion at 15).

72.     As noted above, Defendant Stutes admitted that he had no knowledge of any city council meeting authorizing suit. The obvious method of reconciling Stutes's testimony with Alexander's is to conclude that Stutes filed the suit against Laza without authorization, and once the City was notified *post hoc,* no objection was made. However, no record of any affirmative authorization of a lawsuit appears to have been made.

73.     At a bare minimum, a genuine issue of material fact exists regarding the propriety of Stutes's suit against Laza in light of the City Charter and TOMA.

74.     Defendant complaints that Laza lacks a protected property interest. (Stutes Motion at 16). As noted supra, Laza's property interest is the ability to operate his repair shop while maintaining his inventory on the premises. Defendant correctly clarifies the holding in City of *Bonham v. Southwest Sanitation, Inc.,* 871 S.W.2d 765, 767, (Stutes Motion at 17). however, the holding the

holding there does not change the fact that the Palestine City charter does not authorize the City Attorney to prosecute suit without direction of the City Council.

### E. Plaintiff's Request for Injunctive Relief Under the Open Meetings Act Succeeds.

75.     Under the Texas Open Meetings Act (TOMA), "[a]n action taken by a governmental body in violation of this chapter is voidable." Tex. Gov't Code Ann. § 551.141 (West).

76.     As previously explained herein, Defendants discussed the state lawsuit against Laza in a closed meeting with city officials for the City of Palestine, violating the TOMA. (Doc. No. 46, at 14-15). This controversy is ongoing and live, as the Texas state court lawsuit is currently active on appeal (*Jerry Laza v. City of Palestine, Texas*, No. 06-18-00051-CV).

77.     This Court has already stated that, if Laza is successful in proving his TOMA claim, he can obtain relief from this Court in the form of "voiding the state court judgment against him." (Doc. No. 82, at 15).

78.     As outlined in the preceding section, a genuine issue of material fact exists regarding the City's compliance with TOMA in this case.

### F. Qualified Immunity

79.     The qualified immunity defense is not available to Defendant Stutes because there was clearly established law at the time of the wrongful conduct, Defendant Stutes violated that clearly established law, and a reasonable person would have known of the clearly established law.

80.     To invoke the defense of qualified immunity, the burden is on the state actor alleging qualified immunity to establish (among other things) that he was acting within the scope of his discretionary authority. *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982); *see also Iverson v. Putnam*, 2017 Tex. App. LEXIS 3975, at *7 (14th Ct. App. May 2, 2017), citing *Haver v. Coats*, 491 S.W.3d 877, 882 (14th Ct. App. 2016). A discretionary function requires "personal

deliberation, decision, and judgment." *Iverson*, at \*7. Defendant Stutes did not carry his burden.

81.     If the law was clearly established, **the immunity defense ordinarily should fail**, since a reasonably competent public official should know the law governing his conduct. *Id.* at 818-19. Where an official could be expected to know that certain conduct would violate statutory or constitutional rights, he should be made to hesitate; and a person who suffers injury caused by such conduct may have a cause of action. *Id.* at 819.

### a.  "Specific" Clearly Established Law

82.     A government official's conduct violates clearly established law when, at the time of the challenged conduct, "[t]he contours of [a] right [are] sufficiently clear," that every "reasonable official would [have understood] that what he is doing violates that right." *Ashcroft v. al-Kidd*, 563 U.S. 731, 732 (2011), citing *Anderson v. Creighton*, 483 U.S. 635, 640, 107 S. Ct. 3034, 97 L. Ed. 2d 523 (1987). A case need not be directly on point, but existing precedent must have placed the statutory or constitutional question beyond debate. *Ashcroft*, at 732.

83.     The clearly established law here is fourfold: The Texas Open Meetings Act, the Equal Protection Clause, the Procedural Due Process Clause, and the City of Palestine City Charter.

84.     Defendant Stutes claims that he was not given prior notice that his conduct was unlawful. But that is not the legal standard. The test is whether a reasonable person would have known that his actions were violative of an established right or law. *Id.*

### b.  Defendant Stutes Is Not Entitled to Qualified Immunity

### i.     *City of Palestine Charter and Texas Open Meetings Act*

85.     The City of Palestine City Charter does not permit the city attorney to file suit against a corporation, person, or firm without approval of the Palestine City Council. Section 8.7 of the City of Palestine City Charter states in part:

If the city council shall determine that said complaints are well founded, it shall be the city attorney's duty to take such actions as may be necessary, and in the event the offending corporation, firm or person, shall fail or refuse to conform to the orders of the council in respect thereto, ***it shall be the duty of the council to direct the city attorney to institute suit*** in the court having jurisdiction thereof against such corporation, firm or person, for a judgment of forfeiture of franchise or privilege, or any other judgment proper under the premises [sic]. . . It shall be the city attorney's duty to see that all penal ordinances of the city are ***impartially enforced.***

ECF No. 87-4, p. 18-19 (emphasis added).

86.    From the plain language of the Palestine City Charter, Defendant Stutes was required to obtain permission from the City Council prior to instituting suit against Laza. The Charter was in force at the time Defendant Stutes filed suit against Laza. A reasonable person in Defendant Stutes's position as City Attorney would be familiar with the limits and rules set forth in this particular section of the City Charter. Defendant Stutes violated the Charter when he instituted suit without obtaining a resolution by the Palestine City Council in a lawful City Council meeting.

87.    Defendant Stutes claims in authorizing him to "represent" the City of Palestine in legal proceedings, the Charter gives him *carte blanche* to file suit against any defendant and without obtaining City Council approval. A plain reading of the Charter clearly requires that the City Council *direct* the City Attorney to institute suit. Every first-year law student knows an attorney cannot represent a client who has not yet retained the attorney's services.

88.    Members of a governmental body may not conspire to meet in numbers less than a quorum for the purpose of secret deliberations in violation of the Texas Open Meetings Act ("TOMA"). Tex. Gov't Code Ann. § 551.143 (Vernon 1994). *See United States v. City of Garland*, 124 F. Supp. 2d 442, 446, n. 2 (N.D. Tex. 2000).

89.    The provisions of TOMA are mandatory and liberally construed in favor of open government. *Toya Ind. Sch. Dist. v. Pecos-Barstow Ind. Sch. Dist.*, 466 S.W.2d 377, 380 (Tex.

Civ. App.—San Antonio 1971, no writ). TOMA requires written notices regarding the subject of each meeting. Tex. Gov't Code Ann. § 551.041.

90.     Any action taken by a governmental body in violation of the TOMA is voidable; a successful plaintiff is entitled to have unlawful actions reversed. *Ferris v. Tex. Bd. of Chiropractic Exam'rs*, 808 S.W.2d 514, 517–18 (Tex. App.—Austin 1991, writ denied); Tex. Gov't Code § 551.141.

91.     In Defendant Stutes's discovery responses, Stutes admits that he filed a lawsuit against Laza on June 9, 2016, on behalf of the City of Palestine, Texas:

> **RFA NO. 14:**     On June 9, 2016, you filed a Lawsuit against Plaintiff.
>
> **RESPONSE:**     Defendant admits that, on June 9, 2016, he was counsel of record for the City of Palestine's lawsuit against Plaintiff.
>
> **RFA NO. 15:**     You filed the Lawsuit against Plaintiff on behalf of the City.
>
> **RESPONSE:**     Defendant admits that he was counsel of record for the City of Palestine's lawsuit against Plaintiff.

Stutes's Resp. to Pl's RFA. No. 14–15 (Ex. C), ECF No. 88-1, p. 67.

92.     Further, Stutes admits he had "no knowledge" of any Palestine City Council minutes discussing any lawsuit against Laza on or before the date the lawsuit was filed:

> **RFP NO.4:**     Produce all certified minutes of Palestine City Council meetings that discuss any lawsuit against Plaintiff on or before June 9, 2016.
>
> **RESPONSE:**     None to Defendant's knowledge.

Stutes's Resp. to Pl's RFP. No. 4 (Ex. C), ECF No. 88-1, p. 68.

93.     Stutes's acknowledgment that there are no minutes from any City Council meeting authorizing the lawsuit against Laza is a clear admission that the suit was initiated in violation of TOMA and Laza's right to due process.

94.     Next, Stutes admits the decision to file a lawsuit against Laza was made in a closed meeting

between Stutes, Jeffrey Lyons, Patsy Smith, Ass't City Manager Pannell, and others:

**Interrogatory 8:**   Describe the process that led to the City authorizing and filing the Lawsuit against Plaintiff on June 9, 2016.

**ANSWER:**        There was a meeting sometime in early 2016 between me, Jeffrey Lyons, Patsy Smith, Assistant City Manager Larry Pannell, and others whose names I cannot presently recall.   It was determined that a Notice of Violation would be issued to Plaintiff due to his continuing violations of numerous City of Palestine Ordinances.  If Plaintiff did not comply with the Ordinances, then it was determined that a lawsuit would be filed to enforce the Ordinances. Plaintiff did not comply with the City of Palestine Ordinances.  Pursuant to the authority granted the City Attorney by the City of Palestine, and with the approval of City of Palestine officials, a lawsuit was filed against Plaintiff to enforce the Ordinances.

**Interrogatory 9:**   Identify the time and place of the meeting during which the City Council authorized you to file the Lawsuit against Plaintiff on June 9, 2016.

**ANSWER:**        There was no City Council meeting prior to June 9, 2016, during which the filing of the subject lawsuit was discussed.   Appropriate City of Palestine officials and the City Attorney, pursuant to their lawful authority and responsibilities, determined to proceed with the lawsuit against Plaintiff.   Thereafter, the City of Palestine City Council was routinely appraised of the status of the litigation. A trial was held in Anderson County District Court and the Plaintiff was found liable to the City of Palestine.

Stute's Resp. to Pl.'s Interrog. No. 8–9 (Ex. C), ECF No. 88-1, p. 71.

95.     As discussed in the Second Amended Complaint, a city may only act through its governing

body. (Doc. No. 46, ¶ 49.) Here, there is no evidence that the Palestine City Council ever voted or

gave authority to Defendant Stutes to file suit against Laza in an open meeting.

96.     Thus, the record shows Defendant Stutes acted outside the scope of his authority, in

violation of the TOMA.

> ii.     *Procedural Due Process*

97.     Procedural due process provides that government actors may not make decisions that

deprive individuals of life, liberty, or property without due process of law mandated by the Fifth

and Fourteenth Amendments. *Mathews v. Eldridge*, 424 U.S. 319, 332 (1976).

98.     According to state law, a city may only act through its governing body. *City of Bonham v.*

*Sw. Sanitation, Inc.*, 871 S.W.2d 765, 767 (Tex. App.—Texarkana 1994, writ denied).

99.     Acts of other officials are ineffectual without express authorization of the city council by vote reflected in the minutes. *Id.* (citing *Canales v. Laughlin*, 214 S.W.2d 451 (Tex. 1948)).

100.    Additionally, Courts nationwide have held that failure to disclose information of a meeting subject to a state Open Meetings Act is a violation of Due Process. In *Bowie v. Bd. of Cty Comm'rs*, a Maryland court held that a zoning board of appeals violated the board's own rules and the State Open Meetings Law when it held a meeting on private property and denied a neighboring property owner admission to the site. *Bowie v. Bd. of Cty Comm'rs*, 203 Md. App. 153, 168-71 (Ct. Sp. App. 2012). The court also held that the board violated due process when it held a meeting without creating a record of the meeting. *Id.* at 171. *See also Committee for Washington's Riverfront Parks v. Thompson*, 451 A. 2d 1177 (D.C. 1982); and *Comer v. County of Twin Falls*, 942 P.2d 557 (Idaho 1997), compare with *Noble v. Kootenai Cty.*, 231 P.3d 1034 (Idaho 2010).

101.    As previously shown herein, Defendant Stutes violated Laza's due process rights when he filed the 2016 lawsuit against Laza without proper authorization from the City of Palestine's governing body—the Palestine City Council. He further violated Laza's due process rights when he met with some members of the City Council and did not adhere to TOMA requirements and did not make a record of the meeting.

102.    As such, the pleadings show Defendants allowed Defendant Stutes to act outside the scope of his authority, significantly depriving Laza of his property interest and violating his right to due process of law.

          iii.     Equal Protection Clause

103.    A plaintiff may bring an equal protection claim as a "class of one" when he has been (1) intentionally treated differently from others similarly situated and (2) there was no rational basis

for the difference in treatment. *Lindquist v. City of Pasadena Tex.*, 669 F.3d 225, 233 (5th Cir. 2012) (*citing Vill. of Willowbrook v. Olech*, 528 U.S. 562, 564 (2000)).

104.    Additionally, the Palestine City Charter, as quoted above, states that "[i]t shall be the city attorney's duty to see that all penal ordinances of the city are ***impartially enforced.***" ECF No. 87-4, p. 18-19 (emphasis added).

105.    As discussed in Plaintiff's Motion for Summary Judgment (ECF No. 88, ¶ 6-7, 10, 12-20), Defendants unconstitutionally discriminated against Laza without rational basis beginning in 1995 and continuing through at least 2016.

106.    Defendants perpetuated this discrimination through selective enforcement of their police powers when they levied city ordinances against Laza in a way that severely impeded the use of his property. Such enforcement efforts were not imposed upon others to the same extent.

107.    Defendant Stutes admits that a Notice of Violation was sent to Laza concerning conditions on seven of Laza's properties which had existed for years prior to the filing of the 2016 lawsuit.

---

**RFA NO. 11:**  On April 6, 2016, the City sent Plaintiff a Notice of Violation, informing him that the following lots were in violation of the City Code:

    a.  1101 West Oak Street – Lots 24A, 25A, and 26A of Block B-5, Texas Land Company, Palestine, Texas;

    b.  1216 West Debard Street – Lots 29A and 30A of Block B-5, Texas Land Company, Palestine, Texas;

    c.  1218 West Debard Street – Lots 38C and 39C of Block B-5, Texas Land Company, Palestine Texas;

    d.  402 Texas Avenue – Lot 40 of Block B-5, Texas Land Company, Palestine,Texas;

    e.  307 Fort Street – Lots 27A and 28A of Block B-5, Texas Land Company,Palestine, Texas;

    f.  412 Texas Avenue – Lot 38D of Block B-5, Texas Land Company, Palestine,Texas;

    g.  1019 West Oak – Lots 20B and 20C of Block B-4, Texas Land Company,Palestine, Texas.

**RESPONSE:**    Defendant admits that the Notice of Violation is dated April 6, 2016 for the above listed properties.

**RFA NO. 12:**    The violations listed in the Notice of Violation concerned property conditions that existed for multiple years prior to the issuance of the Notice of Violation.

**RESPONSE:**    Defendant admits that the violations were in existence for a period of time prior to the issuance of the April 6, 2016 Notice of Violation, but is without sufficient knowledge or information to admit or deny the length of time.

---

Stute's Resp. to Pl.'s RFA. No. 11–12 (Ex. C).

108.    At the same time, as evidenced by the 2017 deposition of Palestine city officials, other property owners simply ignored the ordinances that Palestine enforced against Laza with no consequences. Palestine Dep. 194:17–195:13 (Ex. A) (admitting that the city does not enforce its owners against another property); *id.* at 195:25–197:16, 223:15–224:15 (admitting that another property is violating city ordinances, that it is likely to be a rat harborage, and that the city has not issued a citation to the property owners); *id.* at 201:10–206:12, 226:9–227:17 (admitting that city property has overgrown grass, contains junk vehicles, outside storage bins, and trash, and is likely a rat and mosquito harborage, in violation of city ordinances); *id.* at 206:14–211:23, 227:18–228:15 (admitting that other properties, in an area not zoned for agricultural use, contain livestock, brush piles that are rat harborages, unauthorized junkyards, and mosquito harborages); *id.* at 212:2—213:5, 228:16–229:10 (admitting that the city has not brought enforcement against a property that has overgrown grass and is likely a rat and mosquito harborage); *id.* at 213:7–215:18, 229:12–231:7 (admitting that another property contains an unauthorized junkyard, and that the city has not brought enforcement action against them within, at least, the past four years); 231:8–232:12, 216:5–219:1 (admitting that the city has continually sent notices of violations to another property owner for several years but has not sued the owner); 219:11–220:14, 232:13–233:20 (admitting that another property, which has overgrown grass and is a rat harborage, has not been given a citation despite being in violation but that code enforcement is currently "working it"); *id.* at 220:20–221:10, 233:21–234:14 (admitting that another property is a rat harborage, is in violation of city ordinances, and has not been given a citation despite being sent a notice of violation); 221:14–222:11, 234:16–235:4 (admitting that a property contains junk vehicles, in violation of city ordinances, and has not been issued a citation); *id.* at 222:16–223:8, 235:5–236:12 (admitting that another property contains overgrown grass but has not been issued a citation).

109.    While the city representatives relied on several excuses as to why the city chooses not to enforce its ordinances against the owners of these properties, such as a lack of time, funding, or manpower, this does not explain how the city chooses to exert so much of its resources on its militant campaign against Laza. The city relentlessly pursued Laza, filing the 2016 lawsuit against him despite Laza being found not guilty of some of the same violations in municipal court. *Id.* 43:14–46:4, 50:24–51:11, 132:15–17.

110.    The City cannot claim that it does not have the resources to prosecute other properties while it specifically targets properties owned by Laza, ultimately suing him alone. City representatives were unable to recall any lawsuit filed against other property owners like the one filed against Laza. *Id.* at 39:16–18, 146:3–13, 192:15–193:9. Nor did they claim they made any effort to enforce ordinances impartially. *Id.* at 74:16–75:3.

111.    Thus, while the city may claim that it does not have the resources to enforce its ordinances against other property owners, it does not have any rational basis for targeting Laza, not only by actually choosing to enforce its ordinances against him but by suing him while other property owners simply ignore the ordinances.

### G. Official Immunity Claims

112.    As shown in the previous paragraphs, Defendant Stutes exceeded his discretionary and ministerial duties when he incompetently or knowingly violated the TOMA, Palestine City Charter, Due Process Clause, and Equal Protection Clause, and he is not entitled to immunity.

## VI.    PRAYER FOR RELIEF

Laza prays this court deny Stutes's Motion for Summary Judgment and grant all other relief to which he may be entitled.

Respectfully submitted,

NORRED LAW, PLLC
/s/ Warren V. Norred
Warren V. Norred, Texas Bar No. 24045094; warren@norredlaw.com
515 E. Border Street; Arlington, Texas 76010
Tel. (817) 704-3984; Fax. (817) 524-6686
Attorney for Laza

**CERTIFICATE OF SERVICE** - I certify that the above was served on all parties seeking service via the Court's e-file system on March 11, 2022.

/s/Warren V. Norred