# EXHIBIT A

1                             NO. DCCV16-356346

2   CITY OF PALESTINE     )     IN THE DISTRICT COURT
                          )
3   VS.                  )     349TH JUDICIAL DISTRICT
                          )
4   JERRY LAZA           )     ANDERSON COUNTY, TEXAS

5

6

7

8       -------------------------------------------------

9                  ORAL DEPOSITIONS OF

10                   JEFFREY LYONS

11                       AND

12                   PATSY SMITH

13                  JUNE 5, 2017

14       -------------------------------------------------

15

16

17      ORAL DEPOSITIONS OF JEFFREY LYONS AND PATSY SMITH,

18   produced as witnesses at the instance of the Defendant,

19   and duly sworn, was taken in the above-styled and

20   numbered cause on June 5, 2017, from 10:15 a.m. to 3:43

21   p.m., before Lisa Dowdy, CSR in and for the State of

22   Texas, reported by machine method, at Potter Minton,

23   P.C., 110 North College, Suite 500, Tyler, Texas 75702,

24   pursuant to the Texas Rules of Civil Procedure and the

25   provisions stated on the record or attached hereto.

MSJ – EXHIBIT A

```
 1                    A P P E A R A N C E S

 2    FOR THE PLAINTIFF:
           Ronald D. Stutes
 3         POTTER MINTON, P.C.
           110 North College, Suite 500
 4         Tyler, Texas 75702
           903-597-8311 Telephone
 5         903-593-0846 Fax
           ronstutes@potterminton.com
 6
      FOR THE DEFENDANT:
 7         James C. Mosser
           MOSSER LAW, P.L.L.C.
 8         2805 Dallas Parkway, Suite 222
           Plano, Texas 75093
 9         972-733-3223 Telephone
           972-473-0600 Fax
10         jmossser@mosserlaw.com

11    ALSO PRESENT:
           Jerry Laza
12

13

14

15

16

17

18

19

20

21

22

23

24

25
```

MSJ – EXHIBIT A

```
1                    P R O C E E D I N G S

2                       June 5, 2017

3                        10:15 a.m.

4              JEFFREY LYONS AND PATSY SMITH,

5    having been first duly sworn, testified as follows:

6                         EXAMINATION

7    BY MR. MOSSER:

8         Q.   Mr. Lyons, would you please state your name and

9    occupation for the record?

10        A.   (By Mr. Lyons) Jeffrey Lyons, Director of

11   Development Services, City of Palestine.

12        Q.   And, Ms. Smith, would you do the same, state

13   your name and your occupation for the record?

14        A.   (By Ms. Smith) Patsy Smith, Community Services

15   Director for the City of Palestine.

16        Q.   And can both of you hear me all right from over

17   there?  This is a huge table.  I don't know.

18        A.   (By Mr. Lyons) I can hear you, sir.

19        A.   (By Ms. Smith) Yes, sir.

20        Q.   You can hear me okay?

21        A.   (By Ms. Smith) Yes, sir.

22        Q.   And you are going to have to speak up because

23   I'm old and can't hear, so if you get accustomed to

24   things and fall off in tone, I will say repeat that.

25   Now, if you don't know what I'm talking about, it's okay
```

1       A.   (By Ms. Smith) No, sir.

2       A.   (By Mr. Lyons) No, sir.

3       Q.   All right.  Well, we'll pick on Mr. Lyons --

4   is it Lyons; is that right, or Lyons?

5       A.   (By Mr. Lyons) Lyons.

6       Q.   Not French?

7       A.   (By Mr. Lyons) Not that I know of.

8       Q.   I bet it was once.

9       A.   (By Mr. Lyons) Could be.

10      Q.   Because Lions is L-I-O-N-S, isn't it?

11      A.   (By Mr. Lyons) Yeah.  I've had it pronounced so

12  many different ways.  I always have to spell it.

13      Q.   Well, you ought to be me.  They've called me

14  lots of different things, so don't feel bad.

15           I thought I was ready to go and I'm going to go

16  ahead and start anyway.

17           So you said you were executive director?

18      A.   (By Mr. Lyons) Director.

19      Q.   Director of what?

20      A.   (By Mr. Lyons) Development services.

21      Q.   Development services.  Tell us what development

22  services means.

23      A.   (By Mr. Lyons) it means building inspections,

24  planning and zoning, building permitting, historic

25  preservation, zoning regulations, primarily inspections

1   and city planning.

2       Q.   And you understand that you are here for and as

3   a representative of the City of Palestine?

4       A.   (By Mr. Lyons) Yes, sir.

5       Q.   Is that correct?

6       A.   (By Mr. Lyons) That's correct.

7       Q.   Now, does your position require a vote of the

8   city council?

9       A.   (By Mr. Lyons) My position --

10      Q.   As director.

11      A.   (By Mr. Lyons) It requires affirmation of the

12  city council.  Once the city manager recommends a

13  position like mine, they would have to affirm it, yes.

14      Q.   Do they do it that by resolution or ordinance?

15      A.   (By Mr. Lyons) Just by action of the council.

16  I don't think it's either a resolution or an ordinance

17  per se.

18      Q.   Do you know the difference between those two

19  things, ordinance and resolution?

20      A.   (By Mr. Lyons) Yes, sir.

21      Q.   And let me share this with you.  If you nod

22  your head, which we all do, she can't hear your head

23  rolling back and forth.

24      A.   (By Mr. Lyons) Got you.

25      Q.   It's not like a lawyer where you've got rattles

DEFS0162

MSJ – EXHIBIT A

1    as DCCV16-356-349?

2        A.   (By Mr. Lyons) Let's say the meeting that we

3    held together, the May 2016 meeting.

4        Q.   2016 meeting?

5        A.   (By Mr. Lyons) I believe it was in 2016.

6        Q.   So did you make a decision then to file a

7    lawsuit against Mr. Laza?

8        A.   (By Mr. Lyons) No, sir, I did not.

9        Q.   Who did?

10       A.   (By Mr. Lyons) The city manager.

11       Q.   Mr. Alexander?

12       A.   (By Mr. Lyons) Yes, sir.

13       Q.   What was the basis of his decision?

14       A.   (By Mr. Lyons) His opinion of the condition of

15   the property as it stands.

16       Q.   Any other like kind lawsuit been filed by the

17   City of Palestine against other residents?

18       A.   (By Mr. Lyons) I'm not aware of any, no, sir.

19       Q.   And did Mr. Alexander go to the city council

20   to obtain a resolution to file this lawsuit against

21   Mr. Laza?

22       A.   (By Mr. Lyons) Not to my knowledge.

23       Q.   Do you know of any resolution by the Palestine

24   City Council regarding lawsuits of this nature?

25       A.   (By Mr. Lyons) No, sir, I'm not aware of any.

MSJ – EXHIBIT A

1    me?

2        A.    (By Mr. Lyons) No, sir.

3        Q.    Why is that?

4        A.    (By Mr. Lyons) I was not instructed to by Ron.

5        Q.    Did you ask Mr. Stutes if you should?

6        A.    (By Mr. Lyons) No, sir.

7        Q.    Well, he couldn't instruct you if you didn't

8    ask him, could you?

9        A.    (By Mr. Lyons) He could.  He knows more than I

10   do.

11       Q.    He could have worn a swami hat.  Did he ask you

12   to give him all those e-mails?

13       A.    (By Mr. Lyons) No, sir.

14       Q.    So what is it that you found during your

15   inspection that was in violation of 16.13?

16       A.    (By Mr. Lyons) Storage in front of the primary

17   building.

18       Q.    So when you said in front of it, the wall of

19   the building is here?

20       A.    (By Mr. Lyons) Yes, sir.

21       Q.    And did you find things stored in front of it?

22       A.    (By Mr. Lyons) Yes, sir.

23       Q.    Where?

24       A.    (By Mr. Lyons) In front of the building along

25   next to the sidewalk.

DEFS0197

MSJ – EXHIBIT A

Jeffrey Lyons AND Patsy Smith

```
 1        Q.   Along the sidewalk?

 2        A.   (By Mr. Lyons) Just behind the sidewalk, yes.

 3        Q.   Oh, behind the sidewalk?

 4        A.   (By Mr. Lyons) (Witness nods head).

 5        Q.   So still on Mr. Laza's property?

 6        A.   (By Mr. Lyons) Yes, sir.

 7        Q.   How long had that been stored there?

 8        A.   (By Mr. Lyons) I can't say specifically.

 9        Q.   Since when?

10        A.   (By Mr. Lyons) I don't know.

11        Q.   You don't know.  Well, you were building

12   inspector back in -- ten years ago, weren't you?

13             MR. STUTES:  Objection, form.

14        A.   (By Mr. Lyons) Yes, sir.

15        Q.   Isn't that true?

16        A.   (By Mr. Lyons) Yes, sir.

17        Q.   So was it there ten years ago?

18        A.   (By Mr. Lyons) It was.

19        Q.   It was there ten years ago?

20        A.   (By Mr. Lyons) Yes, sir.

21        Q.   In fact, you prosecuted a criminal complaint

22   against Mr. Laza for that same issue ten years ago,

23   didn't you?

24        A.   (By Mr. Lyons) No, sir.

25        Q.   What did you prosecute him ten years ago for?
```

DEFS0198

MSJ – EXHIBIT A

1    A.    (By Mr. Lyons) I did not.

2    Q.    Who did?

3    A.    (By Mr. Lyons) Warren Oakley.

4    Q.    Well, the City of Palestine did.  When I ask

5    you, I'm referring to the City of Palestine.

6    A.    (By Mr. Lyons) Okay.  Well, I did not -- I did

7    not then.

8    Q.    The City of Palestine didn't prosecute?

9    A.    (By Mr. Lyons) The City of Palestine did, yes.

10   Q.    That's right.  That's what I'm asking.  You

11   represent the City of Palestine.  Do you understand

12   that?

13   A.    (By Mr. Lyons) Yes, I do.

14   Q.    Okay.  So when I ask you a question, you've --

15   A.    (By Mr. Lyons) I got you.  Yes, I got you.

16   Q.    So the City of Palestine prosecuted Mr. Laza

17   ten years ago for the very same offense you are

18   complaining of in this lawsuit?

19   A.    (By Mr. Lyons) Yes, sir.

20   Q.    What were the results of that prosecution?

21   A.    (By Mr. Lyons) I believe it went to municipal

22   court.

23   Q.    Yes, sir.

24   A.    (By Mr. Lyons) And there was a jury.

25   Q.    Yes.

DEFS0199

MSJ – EXHIBIT A

1        A.    (By Mr. Lyons) And he was found not guilty.

2        Q.    He was found not guilty?

3        A.    (By Mr. Lyons) Yes.  I was not present, but

4    that's what I was told.

5        Q.    That's okay.  That's okay.  You went back and

6    reviewed those files, didn't you?

7        A.    (By Mr. Lyons) I did not.

8        Q.    Why not?

9        A.    (By Mr. Lyons) There were no files, to my

10   knowledge.

11       Q.    Did you go ask the city secretary for them?

12       A.    (By Mr. Lyons) No, sir.

13       Q.    Did you go ask the city municipal court clerk

14   for them?

15       A.    (By Mr. Lyons) Yes, I did.

16       Q.    And she said there were no such files?

17       A.    (By Mr. Lyons) I took -- we don't keep a record

18   of that, as I understand.  Since it's not a certain type

19   of court, there's no like minutes.  To my knowledge,

20   there's no minutes.

21       Q.    I'm shocked.  That just sounds awful.

22             MR. STUTES:  Objection, form.

23             MR. MOSSER:  That wasn't a question.  That

24   was just a Jim-ism.

25       Q.    What else was Mr. Laza prosecuted for, this

DEFS0200
MSJ – EXHIBIT A

1           MR. MOSSER:  What's your form objection?

2           MR. STUTES:  I didn't object to form.

3           MR. MOSSER:  Read back his objection on

4    that last question, please.

5           (Objection read back by reporter).

6           MR. MOSSER:  So what's your form

7    objection?

8           MR. STUTES:  It calls for a legal

9    conclusion on that previous question.

10          MR. MOSSER:  What's the legal conclusion,

11   whether he went and looked for records?

12          MR. STUTES:  I've explained the basis of

13   my objection.  The basis of my objection is you asked

14   him what the Rules require.

15          MR. MOSSER:  I did not.  I did not,

16   Mr. Stutes.

17   Q.   Mr. Lyons, did you go ask the record keepers to

18   look for records and communications related to Mr. Laza

19   and these claims you made in this lawsuit?

20   A.   (By Mr. Lyons) No, sir.

21   Q.   Did anybody instruct you that was one of your

22   duties in preparation for your deposition?

23   A.   (By Mr. Lyons) No, sir.

24   Q.   So when you went out and looked at storage

25   and display requirements, you are complaining in this

MSJ – EXHIBIT A

Jeffrey Lyons AND Patsy Smith

1   lawsuit for the same things that Mr. Laza got a

2   not guilty in criminal court in the City of Palestine;

3   is that correct?

4       A.   (By Mr. Lyons) Yes, sir.

5       Q.   Why are you prosecuting him again for a not

6   guilty plea?

7       A.   (By Mr. Lyons) The direction of the city

8   manager.

9       Q.   Sir?

10      A.   (By Mr. Lyons) Under the direction of the city

11  manager.

12      Q.   Did the city manager get a resolution or

13  ordinance --

14      A.   (By Mr. Lyons) No.

15      Q.   -- authorizing -- you've got to wait.

16      A.   (By Mr. Lyons) Sorry.

17      Q.   I know exactly how you feel, too.  Authorizing

18  him to hire Mr. Stutes to file a lawsuit against

19  Mr. Laza?

20              MR. STUTES:  Objection, form.

21      A.   (By Mr. Lyons) No, sir.

22      Q.   What else under 16.13 did you notice while you

23  were inspecting the property?

24      A.   (By Mr. Lyons) Setbacks in front of the primary

25  building.  I'm sorry.  Storage in front of the primary

DepoTexas, Inc.

DEFS0205

MSJ – EXHIBIT A

1      A.    (By Ms. Smith) No, sir, I did not.

2      Q.    Mr. Lyons, do you instruct the staff and the

3  people that work for you, code enforcement that works

4  for you, right?

5      A.    (By Mr. Lyons) No longer, no, sir.

6      Q.    Did they previously?

7      A.    (By Mr. Lyons) Yes, sir.

8      Q.    When did they work for you previously?

9      A.    (By Mr. Lyons) Let's see.  Code enforcement

10  left my department, let's say, a year ago.

11     Q.    A year ago?

12     A.    (By Mr. Lyons) Prior to that, when I was hired

13  as the director, so let's say four years.

14     Q.    For four years they worked for you?

15     A.    (By Mr. Lyons) Roughly, yes, sir.

16     Q.    Did you instruct them to enforce the city

17  ordinances impartially?

18     A.    (By Mr. Lyons) No, sir.

19     Q.    Never?

20     A.    (By Mr. Lyons) No, sir.

21     Q.    Did anybody at the city instruct them to

22  enforce the ordinance impartially?

23     A.    (By Mr. Lyons) Not to my knowledge.

24     Q.    So you can just decide to pick on one person

25  and you don't enforce them against other people?

MSJ – EXHIBIT A

Jeffrey Lyons AND Patsy Smith                                                              75

1        A.    (By Mr. Lyons) That's not the way it's --

2   that's not the way it happens even though it may look

3   like that.  No, sir.

4        Q.    How does it happen?

5        A.    (By Mr. Lyons) With the limited staff we have,

6   we rely on a lot of complaints from other citizens.  We

7   try to patrol the areas in the city the best we can.  So

8   it's certainly not consistent, but that's just simply

9   because of lack of manpower or employees to really cover

10  the entire city.

11       Q.    So who decides when you are going to file one

12  of these lawsuits like you filed against Mr. Laza?

13       A.    (By Mr. Lyons) I can't say exactly what the

14  trigger is other than the nature of it, how big of a

15  violation it is.  You know, like someone with just a

16  small yard that's overgrown, we probably wouldn't file a

17  lawsuit on that.  We'd just probably go mow it and send

18  them a bill for it.  It just depends on the severity of

19  it, I guess you would say.

20       Q.    The severity.  So what makes Mr. Laza's

21  condition so severe?  What is it you are complaining

22  about?

23       A.    (By Mr. Lyons) I guess just the amount of

24  visible outdoor storage on a major highway, you know.

25            MR. MOSSER:  What's the major highway?

MSJ – EXHIBIT A

1           MR. MOSSER:  What?

2               MR. STUTES:  I didn't say anything.  I

3      didn't even intend to make an expression.

4       Q.   All right.  Well, fine.  You can just set that

5      back up in the middle, if you would.  Push.  I can't

6      reach --

7       A.   (By Mr. Lyons) I didn't know if you wanted to

8      leave it there.

9       Q.   I'm too short and too fat.  I can't reach that

10     far.

11           Do you still have Exhibit 1 or do I still have

12     it?  I think I still have it.  I'll get back to it.

13           So, Mr. Lyons, did the City of Palestine

14     prosecute Mr. Laza as a junkyard previously?

15      A.   (By Mr. Lyons) Yes.

16      Q.   Did he get a not guilty verdict from the jury?

17      A.   (By Mr. Lyons) Yes.

18      Q.   Did Mr. Laza get accused of maintaining

19     livestock illegally previously by the City of Palestine?

20      A.   (By Mr. Lyons) I can't specifically say I sent

21     a notice out.  It may have been by another code

22     enforcement officer that --

23      Q.   Did you review those records?

24      A.   (By Mr. Lyons) I didn't see any per se that was

25     directly to that in the past.

1      Q.   Didn't see any, did you?

2      A.   (By Ms. Smith) No, sir.

3      Q.   In your experience have you ever seen the City

4  of Palestine file a civil lawsuit instead of sending a

5  notice of code violation or prosecuting in municipal

6  court?

7      A.   (By Ms. Smith) In my experience?

8      Q.   Yes, sir.

9      A.   (By Ms. Smith) No, sir.

10     Q.   Mr. Lyons?

11     A.   (By Mr. Lyons) No, sir, I haven't.

12     Q.   You have not?

13     A.   (By Mr. Lyons) No, sir.

14     Q.   So we're making history.

15          You complained about Mr. Laza keeping horses on

16  his property?

17     A.   (By Mr. Lyons) Horses, yes, sir.

18     Q.   Is that right?

19     A.   (By Mr. Lyons) Yes, sir.

20     Q.   Is that against the law?

21     A.   (By Mr. Lyons) It's -- yes, sir, it could be

22  depending on the situation.

23     Q.   Could be?

24     A.   (By Mr. Lyons) Could be.

25     Q.   So why is it against the law for Mr. Laza to

DEFS0300
MSJ – EXHIBIT A

1    disclose that to me.

2         Q.    And then did you ever talk to him again about

3    this?

4         A.    (By Ms. Smith) Not really, no, sir.

5         Q.    So he overruled your suggestion of issuing

6    citations?

7         A.    (By Ms. Smith) Yes, sir.

8         Q.    And you don't know why?

9         A.    (By Ms. Smith) No, sir.

10        Q.    Have you discussed that issue with him again?

11        A.    (By Ms. Smith) No, sir, I have not.

12        Q.    Do you talk to him very often?

13        A.    (By Ms. Smith) Not in regards to this case, no,

14    sir.

15        Q.    Did you talk to him about filing one of these

16    lawsuits against anybody else?

17        A.    (By Ms. Smith) I have asked about the old

18    Memorial Hospital.

19        Q.    And what did he say about that?

20        A.    (By Ms. Smith) He said that would be a

21    discussion for a later date.

22        Q.    How long ago did you discuss it with him?

23        A.    (By Ms. Smith) After this was discussed to file

24    on Mr. Laza.

25        Q.    And why do you think Memorial Hospital is so

DEFS0346

MSJ – EXHIBIT A

1    egregious?

2        A.    (By Ms. Smith) It's a building that's run down.

3    We've had numerous complaints.  We've had to maintain

4    that property just about -- actually, every year that

5    I've been in this position, code enforcement.  And I

6    think that since we've had to be maintaining it, it's --

7    we need to be able to go after the folks that own it.

8        Q.    And you made that recommendation?

9        A.    (By Ms. Smith) Yes, sir.

10       Q.    Have you issued the citations to that property?

11       A.    (By Ms. Smith) I have done Notice of

12   Violations, but I don't have an actual person to be able

13   to write a citation to, so I have to have an actual

14   person to be able to do that with to go to municipal

15   court.

16       Q.    Really?  Do you know who owns the property?

17       A.    (By Ms. Smith) DVAR Institute out of New York.

18       Q.    Is it a corporation?

19       A.    (By Ms. Smith) Yes, sir.  It's a non-profit.

20       Q.    And you don't know how to serve a non-profit

21   entity?

22       A.    (By Ms. Smith) No, sir.  I've only been able to

23   do the --

24       Q.    Well, don't feel bad.  Most people don't.

25       A.    (By Ms. Smith) I've only been able to do the

1    certified letter.

2        Q.   Have you sent them a certified letter?

3        A.   (By Ms. Smith) Yes, sir, I have.

4        Q.   With the document attached?

5        A.   (By Ms. Smith) Yes, sir.

6        Q.   And did you get any response?

7        A.   (By Ms. Smith) No, sir, unclaimed, sent back.

8        Q.   I wonder why he didn't go ahead and take it

9    over?

10       A.   (By Ms. Smith) (No response).

11            (Exhibit D-3 marked.)

12       Q.   Mr. Lyons, I'm going to show you Deposition

13   Exhibit No. 3.  Have you ever seen that document or that

14   real estate before?

15       A.   (By Mr. Lyons) Yes, sir.

16       Q.   Where is it?

17       A.   (By Mr. Lyons) That would be, if you're facing

18   Mr. Laza's property, further to the east before -- just

19   before the intersection of Spring and West Oak.

20       Q.   Who owns that property that you're looking at?

21       A.   (By Mr. Lyons) Some of that is railroad

22   right-of-way and TxDOT right-of-way.

23       Q.   So do you complain to railroad people or the

24   TxDOT people?

25       A.   (By Mr. Lyons) Yes, sir.

1      Q.   And why don't you do something about it?

2      A.   (By Mr. Lyons) Well, we have talked to them in

3   the past and they have their own schedule of mowing

4   whenever they do that.

5      Q.   Are they allowed to ignore your city ordinance?

6      A.   (By Mr. Lyons) They shouldn't, but they do.

7      Q.   The question is:  Are they allowed to do that?

8      A.   (By Mr. Lyons) From what I've been told, we

9   don't have the authority to enforce that against the

10   railroad and TxDOT.  Now, that's just what I've been

11   told.

12      Q.   Really?

13      A.   (By Mr. Lyons) Yes, sir.

14      Q.   Did your lawyer tell you that?

15      A.   (By Mr. Lyons) No.

16      Q.   I didn't think so.

17      A.   (By Mr. Lyons) He never specifically told me

18   that.

19      Q.   Did he tell you that you couldn't do that?

20      A.   (By Mr. Lyons) No, sir.

21      Q.   Hand it down to Ms. Smith.

22      A.   (By Mr. Lyons) (Witness complied).

23              (Exhibit D-4 marked.)

24      Q.   I'm going to hand you what's been marked as

25   Defendant's Exhibit No. 4.  Have you ever seen that

```
 1   before?  Do you know that real estate?

 2       A.   (By Mr. Lyons) It's a little bit further to the

 3   east than that picture, I believe.

 4       Q.   But it's still owned by the railroad or the

 5   State?

 6       A.   (By Mr. Lyons) I think it's the railroad.

 7       Q.   You don't know?

 8       A.   (By Mr. Lyons) I can't say a hundred percent

 9   for sure.

10       Q.   Have you ever inquired?

11       A.   (By Mr. Lyons) This particular location?

12       Q.   Yes, sir.

13       A.   (By Mr. Lyons) Yes.  I believe I have asked the

14   health officer --

15       Q.   What did the health officer say?

16       A.   (By Mr. Lyons) -- Brenda Murray.  That it was

17   owned by the railroad.

18       Q.   And is it likely to be a rat harborage?

19       A.   (By Mr. Lyons) It certainly could be, yes, sir.

20       Q.   How about a mosquito trap location?

21       A.   (By Mr. Lyons) It's very possible there might

22   be standing water somewhere in there and -- sure.

23       Q.   Hand that down, please.

24       A.   (By Mr. Lyons) (Witness complied).

25       A.   (By Ms. Smith) This is over by the feed store.
```

1      Q.    What?

2      A.    (By Ms. Smith) This is over by the feed store.

3      A.    (By Mr. Lyons) The feed store.

4      Q.    Probably a rat harborage.  You just hold on to

5  those.  We're going to get to you.

6                  MR. STUTES:  Wait until he asks you a

7  question.

8                  MS. SMITH:  Oh, I'm sorry.

9                  (Exhibit D-5 marked.)

10     Q.    So have you seen that location before?

11     A.    (By Mr. Lyons) I believe so, yes, sir.

12     Q.    Do you think that's in violation of the

13  Palestine city ordinances?

14     A.    (By Mr. Lyons) It is.

15     Q.    Have you prosecuted those people?

16     A.    (By Mr. Lyons) This particular one, no, sir.

17     Q.    Why not?  That's Deposition Exhibit No. 5.

18     A.    (By Mr. Lyons) Yes, sir.

19     Q.    Why not?

20     A.    (By Mr. Lyons) This is one of many that we

21  have.

22     Q.    That's not my question.  Why haven't you?

23     A.    (By Mr. Lyons) Lack of manpower.

24     Q.    Lack of manpower.

25     A.    (By Mr. Lyons) Yes, sir.

DEFS0351
MSJ – EXHIBIT A

1      A.     (By Mr. Lyons) They were, yes, sir.

2      Q.     They are not anymore?

3      A.     (By Mr. Lyons) To my knowledge, they are not.

4      Q.     Have you inspected the deed records?

5      A.     (By Mr. Lyons) No, sir, I haven't.

6      Q.     So you don't know who owns it?

7      A.     (By Mr. Lyons) No, I do.  I just can't recall

8    the name.  I did have the name, not right now.

9      Q.     Pass them down to Ms. Smith, please.

10     A.     (By Mr. Lyons) (Witness complied).

11            (Exhibit D-8 marked.)

12     Q.     I'm going to hand you Deposition Exhibit No. 8.

13   Have you seen that before?

14     A.     (By Mr. Lyons) It looks like the city barn in

15   the background.

16     Q.     It looks like a junkyard to me, but I'm just

17   saying.

18            MR. STUTES:  Objection, form.

19            MR. MOSSER:  It wasn't a question.  It was

20   a statement.

21            MR. STUTES:  Well, my objection is to

22   interrupting the witness.

23     Q.     I'm sorry.  I apologize for interpreting you,

24   sir.

25            Mr. Lyons, can you identify that photograph,

1    Deposition Exhibit No. 8?

2         A.   (By Mr. Lyons) Not the picture right here, no,

3    sir.

4         Q.   You can't?

5         A.   (By Mr. Lyons) I can't.

6         Q.   So can you describe the vehicles?  Do they look

7    like they are all operable vehicles or antique vehicles?

8         A.   (By Mr. Lyons) They don't look like they would

9    be -- no, I can't say they are not operable just because

10   there is grass growing around there.

11        Q.   My question is:  Do they look like it?

12        A.   (By Mr. Lyons) The car looks like it may not

13   be.

14        Q.   So how tall do you think -- what's your guess

15   on how tall the weeds and the grass are there in

16   Deposition Exhibit No. 8?

17        A.   (By Mr. Lyons) Looking at the fence line, I

18   would say at least a foot.

19        Q.   A foot?

20        A.   (By Mr. Lyons) At least, yes, sir.

21        Q.   Probably more, huh?

22        A.   (By Mr. Lyons) Probably.

23        Q.   In violation of the City of Palestine

24   ordinance?

25        A.   (By Mr. Lyons) Yes, sir.

DEFS0356

MSJ – EXHIBIT A

```
1        Q.   Let me show you -- oh, what about out front,

2   what is that, does it look like?

3        A.   (By Mr. Lyons) Here?

4        Q.   Yes.

5        A.   (By Mr. Lyons) Metal storage bins maybe and

6   something --

7        Q.   Could it be a metal storage bucket of some

8   kind?  Could it be --

9        A.   (By Mr. Lyons) Uh-huh.  A wheelbarrow, yes,

10  sir.

11       Q.   Yeah.  It could accumulate water?

12       A.   (By Mr. Lyons) It certainly could.

13       Q.   It could be a place for mosquitoes to breed?

14       A.   (By Mr. Lyons) Absolutely.

15                 (Exhibit D-9 marked.)

16       Q.   And Exhibit No. 9, do you recognize that one?

17       A.   (By Mr. Lyons) It's close to that location.  I

18  cannot remember physically seeing this spot here, no,

19  sir.

20       Q.   Does it look like the grass is too high?

21       A.   (By Mr. Lyons) Sure.

22       Q.   Does it look like the cars were operable?

23       A.   (By Mr. Lyons) From this picture, no, sir, they

24  don't.

25       Q.   They don't?  I don't think they do, either.
```

DEFS0357

MSJ – EXHIBIT A

Jeffrey Lyons AND Patsy Smith

```
 1        A.   (By Mr. Lyons) They don't look like it.

 2        Q.   Do you know if they have a junkyard permit?

 3        A.   (By Mr. Lyons) No, sir.

 4                  (Exhibit D-10 marked.)

 5        Q.   Let me show you Exhibit No. 10 and I want you

 6   to focus on the vehicle in -- just in the middle to the

 7   right.  Look at that.  Can you identify that location?

 8        A.   (By Mr. Lyons) I don't know where at on the

 9   warehouse grounds, but it looks like the city warehouse.

10        Q.   The city warehouse.  You think that's on city

11   warehouse grounds?

12        A.   (By Mr. Lyons) It appears to be, yes, sir.  I

13   can't tell which portion of --

14        Q.   I've got to tell you.  It's a pretty junky

15   looking place.

16        A.   (By Mr. Lyons) Yeah, I agree.

17        Q.   And how about that vehicle in the middle right

18   with no doors on it?  Does it look like an operable

19   vehicle?

20        A.   (By Mr. Lyons) I would certainly hope not, so,

21   no, I would say it's not operable.

22                  (Exhibit D-11 marked.)

23        Q.   So then I'm going to show you what's been

24   marked as Exhibit No. 11.  Can you identify that

25   picture?
```

DEFS0358

MSJ – EXHIBIT A

1       A.   (By Mr. Lyons) The same location, yes, sir.

2       Q.   The city?

3       A.   (By Mr. Lyons) City, yes, sir.

4       Q.   City warehouse, storage, junkyard?

5       A.   (By Mr. Lyons) City warehouse property, yes,

6   sir.

7       Q.   Would it be a junkyard under your definition of

8   junkyard?

9       A.   (By Mr. Lyons) I don't know if it would fall

10  under the definition of a junkyard.

11      Q.   Really?

12      A.   (By Mr. Lyons) Well, I don't know that they are

13  buying and selling parts off of these.  It is junk, yes,

14  sir.

15      Q.   It is.

16      A.   (By Mr. Lyons) Those barrels and --

17      Q.   And trash?

18      A.   (By Mr. Lyons) And trash.

19      Q.   And what do you think those barrels are there

20  for?

21      A.   (By Mr. Lyons) Probably leftover barrels

22  from --

23      Q.   The next coming?

24      A.   (By Mr. Lyons) -- hydraulic fluid or something

25  like that.  I'm just guessing.  I don't know.

DEFS0359

MSJ – EXHIBIT A

1       Q.   Can they store water?

2       A.   (By Mr. Lyons) Sure.

3       Q.   Can they accumulate water?

4       A.   (By Mr. Lyons) They can.

5       Q.   That would be a pretty good rat harborage, too,

6   wouldn't it?

7       A.   (By Mr. Lyons) Yes, sir.

8       Q.   In those open cars and vehicles that are just

9   junk cars, right?

10      A.   (By Mr. Lyons) Yes, sir.

11      Q.   And that's all on city property, right?

12      A.   (By Mr. Lyons) It appears to be, yes, sir.

13              (Exhibit D-13 marked.)

14      Q.   I'm going to show you Exhibit No. 13.  Can you

15  identify that?

16      A.   (By Mr. Lyons) No, sir.  I can't identify the

17  location.

18      Q.   Do you see a horse on there?

19      A.   (By Mr. Lyons) I do see it.

20      Q.   Do you go out there and tell those people they

21  are not allowed to keep horses?

22      A.   (By Mr. Lyons) No, sir.

23      Q.   Do you think it's in the City of Palestine?

24      A.   (By Mr. Lyons) I can't say from here, no, sir.

25      Q.   Okay.  If I told you that was on Debard Street,

1   Exhibit No. 13, would you agree with me on that?

2        A.    (By Mr. Lyons) I couldn't disagree.

3        Q.    So, on Debard Street, is there any

4   agriculturally zoned land?

5        A.    (By Mr. Lyons) No, sir.

6        Q.    I didn't think so.

7        A.    (By Mr. Lyons) No, sir.

8                (Exhibit D-14 marked.)

9        Q.    Well, let's look at Exhibit No. 14.  Can you

10   identify that one?

11        A.    (By Mr. Lyons) No, sir, I can't.

12        Q.    If I told you it was on Kentucky Street, would

13   you --

14        A.    (By Mr. Lyons) Kentucky, I would believe that,

15   yes, sir.

16        Q.    You would believe that.  Is there any

17   agriculturally zoned land on Kentucky?

18        A.    (By Mr. Lyons) No, sir, not to my knowledge.

19        Q.    Well, you are the City of Palestine, so you

20   would know.

21        A.    (By Mr. Lyons) No, there's not.  No, sir,

22   there's not.

23        Q.    I appreciate that.  And on 14, do you see that

24   pile of brush?

25        A.    (By Mr. Lyons) I do, yes, sir.

DEFS0361

MSJ – EXHIBIT A

1      Q.    Do you call that trash?

2      A.    (By Mr. Lyons) Trash?

3      Q.    Did you ever live on a ranch?

4      A.    (By Mr. Lyons) No, sir, I haven't.

5      Q.    Have you ever lived on a big farm?

6      A.    (By Mr. Lyons) I've been on one, but not lived

7   on one.

8      Q.    Do you understand that people push brush like

9   that up together and, I don't know, hopefully the rats

10  will come and they can burn them all at once?

11     A.    (By Mr. Lyons) I believe that, yes, sir.

12     Q.    You understand that's a brush pile, right?

13     A.    (By Mr. Lyons) It is a brush pile.

14     Q.    Would you call that a trash pile?

15     A.    (By Mr. Lyons) I don't know if I would call it

16  trash.  It's just a brush pile.

17     Q.    All right.  But -- and do they have horses on

18  there, sir?  That brown thing over there, do you see it?

19     A.    (By Mr. Lyons) I don't see it.

20     Q.    Okay.  Do you see any vehicles?

21     A.    (By Mr. Lyons) I do.

22     Q.    Are they junk vehicles?

23     A.    (By Mr. Lyons) I would have to say they are.

24     Q.    Is that a junkyard?

25     A.    (By Mr. Lyons) Is this a junkyard?

DEFS0362

MSJ – EXHIBIT A

1        Q     According to your definition, not mine.

2        A.    (By Mr. Lyons) No, sir.

3        Q.    It's not?

4        A.    (By Mr. Lyons) They are just storing junk

5   vehicles.

6        Q.    They are storing junk?

7        A.    (By Mr. Lyons) Junk vehicles, yes, sir.

8        Q.    They can do that in the City of Palestine or

9   they are not allowed to?

10       A.    (By Mr. Lyons) Not allowed to.

11       Q.    So, under your definition, that would be a

12  junkyard?

13             MR. STUTES:  Objection, form.

14       Q.    Isn't that right?

15       A.    (By Mr. Lyons) No, sir.

16       Q.    Well, why am I confused about this?  What's

17  your definition of a junkyard?

18       A.    (By Mr. Lyons) I'll open to it.  An open area

19  where waste used or secondhand materials are bought,

20  sold, exchanged, stored, baled, packed, disassembled or

21  handled, including, but not limited to, scrap iron and

22  other metals, cloths, paper rag, plumbing, fixtures,

23  rubber tires, bottles, used appliances, and inoperative

24  vehicles.

25       Q.    So do you think the inoperative vehicles there

DEFS0363
MSJ – EXHIBIT A

1    are being stored, on that line?

2        A.    (By Mr. Lyons) Yes, sir.

3        Q.    That's Exhibit No. 14?

4        A.    (By Mr. Lyons) Yes, sir.

5        Q.    So that falls within the definition of your

6    junkyard, doesn't it?

7        A.    (By Mr. Lyons) But not limited to, yes, sir.

8        Q.    All right.  So we agree on that, right?

9        A.    (By Mr. Lyons) Yes, sir.

10       Q.    All right.  Pass that one down.

11       A.    (By Mr. Lyons) (Witness complied).

12                   (Exhibit D-15 marked.)

13       Q.    How about this one, Exhibit No. 15?  Have you

14   ever seen that before?

15       A.    (By Mr. Lyons) Yes, sir.

16       Q.    Where is that?

17       A.    (By Mr. Lyons) I believe that is on Kentucky

18   Street or in the vicinity of Kentucky Street.

19       Q.    You are doing good.  Kentucky Street.  We've

20   already ascertained there's no agriculturally zoned land

21   on Kentucky?

22       A.    (By Mr. Lyons) That is correct.

23       Q.    So what's that there?

24       A.    (By Mr. Lyons) Two horses.

25       Q.    Two horses?  Oh, my.

DEFS0364
MSJ – EXHIBIT A

```
 1        A.    (By Mr. Lyons) A mule -- horse.

 2        Q.    Probably horse.  It looks like horses to me.

 3   So have you ever written them a ticket for horses?

 4        A.    (By Mr. Lyons) I have not myself, no, sir.

 5        Q.    Has anybody in your city department written

 6   those tickets?

 7        A.    (By Mr. Lyons) No.  To my knowledge, they have

 8   not.

 9        Q.    All right.  Did you go and investigate to see

10   if they've ever written a ticket for that land?

11        A.    (By Mr. Lyons) No, sir.

12        Q.    Do you know who the owner is?

13        A.    (By Mr. Lyons) I do not.

14        Q.    Have you tried to find out?

15        A.    (By Mr. Lyons) No, sir.

16        Q.    You recognize the land?

17        A.    (By Mr. Lyons) But I have never tried to find

18   out.

19        Q.    You believe it's in violation of city

20   ordinances, don't you?

21        A.    (By Mr. Lyons) Yes, sir.

22        Q.    Have you sued them?

23        A.    (By Mr. Lyons) No, sir.

24        Q.    Pass that one down.

25        A.    (By Mr. Lyons) (Witness complied).
```

DEFS0365

MSJ – EXHIBIT A

```
 1                        (Exhibit D-16 marked.)

 2        Q.   Exhibit No. 16, do you recognize that

 3   photograph?

 4        A.   (By Mr. Lyons) (Witness nods head).

 5        Q.   The same thing?

 6        A.   (By Mr. Lyons) Yes, sir.

 7                        (Exhibit D-17 marked.)

 8        Q.   And 17, do you recognize that photograph?

 9        A.   (By Mr. Lyons) Yes, sir.

10        Q.   Do you know where that -- those locations are?

11        A.   (By Mr. Lyons) That is off of maybe South Royal

12   Street behind Wal-Mart or Lowe's.

13        Q.   Behind Lowe's.  If I told you it was behind

14   Lowe's, would you believe that?

15        A.   (By Mr. Lyons) Yes, sir.

16        Q.   Is that in the city limits?

17        A.   (By Mr. Lyons) It is in the city limits.

18        Q.   Is it zoned ag?

19        A.   (By Mr. Lyons) It is not zoned agriculture or

20   residential.

21        Q.   Have you gone and inspected that property for

22   heights of the grass and the weeds or mosquitoes and

23   rats in the water?

24        A.   (By Mr. Lyons) No, sir.

25        Q.   Or skinny dippers or anything?
```

1     A.   (By Mr. Lyons) No, sir.

2     Q.   You never checked that?

3     A.   (By Mr. Lyons) No, sir.

4     Q.   Do you know who owns it?

5     A.   (By Mr. Lyons) No, sir, I do not.

6                (Exhibit D-18 marked.)

7     Q.   All right.  This is Exhibit 18.  Do you

8  recognize that?

9     A.  (By Mr. Lyons) (Witness nods head).

10    Q.   The same thing?

11    A.   (By Mr. Lyons) (Witness nods head).

12                (Exhibits D-19 through D-21 marked.)

13    Q.   19, 20, 21, do you recognize those?

14    A.   (By Mr. Lyons) I believe that is --

15    Q.   Do you, Ms. Smith?

16                MR. STUTES:  I am going to object.

17    Q.   Where is that located?

18                MR. STUTES:  Hang on.  Let him finish

19  before you ask --

20                MR. MOSSER:  She knows the answer.

21    A.   (By Mr. Lyons) Yes, sir.

22    Q.   Where is it?

23    A.   (By Mr. Lyons) On Coffee Street.

24    Q.   Coffee Street?

25    A.   (By Mr. Lyons) Uh-huh.

DEFS0367

MSJ – EXHIBIT A

```
 1          Q.   Is that what you were going to say?

 2          A.   (By Ms. Smith) Yes, sir.

 3          Q.   I want to give you credit for it first.

 4          A.   (By Mr. Lyons) I knew she would know where it

 5  was.

 6          Q.   So it's on Coffee Street.  You know that

 7  location, right?

 8          A.   (By Mr. Lyons) Yes, sir.

 9          Q.   It's beautiful, isn't it?

10          A.   (By Mr. Lyons) No, it's not.

11          Q.   Is it trash?

12          A.   (By Mr. Lyons) It is trash.

13          Q.   Is it zoned agricultural?

14          A.   (By Mr. Lyons) No, sir.

15          Q.   What's it zoned?

16          A.   (By Mr. Lyons) Probably single family.

17          Q.   Single family?

18          A.   (By Mr. Lyons) Yes, sir.

19          Q.   So it can't be a junkyard, either?

20          A.   (By Mr. Lyons) No, sir, it should not be.

21          Q.   It can't be a trash dump, either?

22          A.   (By Mr. Lyons) No, sir, it shouldn't.

23          Q.   Do you know who owns that property?

24          A.   (By Mr. Lyons) There's multiple owners in here.

25  It's a place where commonly people dump.  We have been
```

DEFS0368

MSJ – EXHIBIT A

```
 1   after them -- actually, the other code enforcement
 2   officer has time and time again taken them to court, dug
 3   through trash, found items.  It's just a continuous
 4   place where they have -- and we have tried to gate it
 5   off, but due to the --
 6        Q.   When is the last time you took them to court?
 7        A.   (By Mr. Lyons) I never have, myself.
 8        Q.   Oh, not in four years?
 9        A.   (By Mr. Lyons) No, sir.
10        Q.   Do you know anybody at the city that has?
11        A.   (By Mr. Lyons) I'm going to say maybe Greg
12   Hearn.
13        Q.   How long ago was that?
14        A.   (By Mr. Lyons) I cannot say.
15        Q.   I mean, not in the last four years?
16        A.   (By Mr. Lyons) I can't say the exact date.
17        Q.   Have you filed a lawsuit against them?
18        A.   (By Mr. Lyons) No, I have not.
19        Q.   Do you know who the people are that owns it?
20        A.   (By Mr. Lyons) Not personally, no, sir.
21        Q.   Do you know -- you're the City of Palestine.
22   Do you know who owns it?
23        A.   (By Mr. Lyons) No.  I don't know all these
24   properties.
25        Q.   Yeah.  You can pass them down.
```

DEFS0369

MSJ – EXHIBIT A

```
 1                  MR. STUTES:  She might know more than --

 2                  MR. MOSSER:  She will get her opportunity.

 3   Trust me.

 4                  (Exhibits D-23 through D-26 marked.)

 5        Q.   So I'm going to hand you 23, 24, 25, and 26

 6   deposition exhibits.  Do you recognize that property?

 7        A.   (By Mr. Lyons) Yes, sir.

 8        Q.   You know who owns that property, don't you?

 9        A.   (By Mr. Lyons) I do, yes, sir.

10        Q.   And the City of Palestine knows who owns it?

11        A.   (By Mr. Lyons) Yes, sir.

12        Q.   How come you haven't gone out and mowed that

13   grass to make it safer for the citizens?

14        A.   (By Mr. Lyons) We've mowed it in the past.  I

15   want to say that code enforcement right now has not

16   gotten to this one yet.

17        Q.   What is that property called?

18        A.   (By Mr. Lyons) Old Memorial Hospital.

19        Q.   23, 24, 25, 26, they are all the same exhibit

20   numbers and photographs?

21        A.   (By Mr. Lyons) Yes, sir.

22        Q.   Old Memorial Hospital?

23        A.   (By Mr. Lyons) That one --

24        Q.   Look to your right.

25        A.   (By Mr. Lyons) I don't know if that's the
```

DEFS0370

MSJ – EXHIBIT A

1    same --

2        Q.    Are you having trouble identifying one of the

3    buildings?

4        A.    (By Mr. Lyons) I just don't recognize that

5    wooden structure there.  No, that's not the --

6        Q.    Look far right look.  Look far to your right,

7    Mr. Lyons.  To your right.  Look way down there.  Watch

8    her.

9            Is that all Old Memorial?

10       A.    (By Ms. Smith) It is.

11       Q.    There you go.

12               MR. LYONS:  I didn't recognize that little

13   wooden --

14               MS. SMITH:  That's that little building in

15   that little covey.

16               MR. LYONS:  Okay.

17       Q.    So the only reason you haven't sued them is

18   because they are a non-profit?

19       A.    (By Mr. Lyons) No, sir.

20       Q.    Oh, what's the reason?

21       A.    (By Mr. Lyons) This one has been filed on

22   through Notice of Violation time and time over the

23   years.

24       Q.    In municipal court?

25       A.    (By Mr. Lyons) I don't know if it has ever went

1    to municipal court, but I did ask the prosecutor, Brenda

2    Cobble, what we could do about it due to them being, you

3    know, off in New York and how do you get somebody -- I

4    was trying to understand the process of how do we get

5    somebody down to be held accountable for.  And I was

6    told the best we could do is, if we were able to

7    identify someone that took responsibility for it, that

8    if they issued a warrant, it would just go on their

9    driver's license and -- I'm telling you what I heard.

10        Q.   Someone really told you all that?

11        A.   (By Mr. Lyons) Yes, sir.  I asked.

12        Q.   I believe you.

13        A.   (By Mr. Lyons) Because I wanted to see what we

14   could do.  The story I got was, they live out of town

15   and we can't do anything.

16        Q.   What do you want to do to that property?

17        A.   (By Mr. Lyons) Tear it down.

18        Q.   How long have you wanted to do that?

19        A.   (By Mr. Lyons) Ever since I've been in my

20   position.

21        Q.   How long is that?

22        A.   (By Mr. Lyons) Since 2011.

23        Q.   And you haven't been able to figure out how to

24   do it?

25        A.   (By Mr. Lyons) I have figured it out.  It's

1    just we don't have the funds to do it.

2         Q.   I'll take it on contingency.  I keep 50 percent

3    of the value, you keep 50 percent.  Just ask Mr. Stutes

4    if that's fair.

5         A.   (By Mr. Lyons) All right.

6         Q.   Maybe he'll take it on contingency.  I don't

7    know.

8              Do you know where Fort Street it is?

9         A.   (By Mr. Lyons) Yes, sir.

10                  (Exhibits D-27 through D-29 marked.)

11        Q.   Exhibits 27, 28, and 29.  Do you recognize this

12   building?

13        A.   (By Mr. Lyons) Yes, sir.

14        Q.   All those, 27, 28, and 29?  They are all the

15   same place, just different views?

16        A.   (By Mr. Lyons) Yes, sir.

17        Q.   Do you know where that building is located?

18        A.   (By Mr. Lyons) I think if you are going down

19   Fort Street, it's on the right.

20        Q.   Where is it from Mr. Laza's property?

21        A.   (By Mr. Lyons) Just to the north, I believe.

22        Q.   Right across the street?

23        A.   (By Mr. Lyons) Across the street, yes, sir.

24        Q.   Do you think rats could come from there?

25        A.   (By Mr. Lyons) It certainly looks like they

DEFS0373

MSJ – EXHIBIT A

1    could, yes, sir.

2       Q.   So do you know who owns that property?

3       A.   (By Mr. Lyons) No, sir, not offhand, I do not

4    know.  I can't say a name.

5       Q.   Why haven't you mowed that one down?

6       A.   (By Mr. Lyons) I do not know.

7       Q.   Have you prosecuted them for violation of city

8    code?

9       A.   (By Mr. Lyons) Not to my knowledge.

10      Q.   Is it in violation of city code?

11      A.   (By Mr. Lyons) It certainly appears to be, yes,

12    sir.

13      Q.   Why haven't you sued them?

14      A.   (By Mr. Lyons) I don't know.

15      Q.   Pass them down to Ms. Smith.

16      A.  (By Mr. Lyons) (Witness complied).

17      Q.   Thank you.  I'm going to hand you -- oh, look.

18    I've got piles more.  I had no idea.

19          (Exhibit D-30 marked.)

20      Q.   I'm going to hand you another one at 414.

21    That's Deposition Exhibit No. 30.

22      A.   (By Mr. Lyons) Yes, sir.

23      Q.   So where is that property?  Oh, it's on Fort

24    Street.  How far is it from Mr. Laza's?

25      A.   (By Mr. Lyons) 414 address.  I guess it would

 1   have to be in the same block.

 2      Q.   Yeah.  And it's probably across the street from

 3   Mr. San Miguel?

 4      A.   (By Mr. Lyons) Yes, sir.

 5      Q.   Or close to it?

 6      A.   (By Mr. Lyons) Yes, sir.

 7      Q.   So rats could conceivably go from that

 8   location, or 410 Fort Street, over to Mr. San Miguel's

 9   location, right?

10      A.   (By Mr. Lyons) Yes, sir.

11      Q.   Was that last one 30?

12      A.   (By Ms. Smith) Yes.

13              (Exhibits D-31 through D-34 marked.)

14      Q.   I'm going to show you 31 through 34 and ask you

15   if you recognize the location.

16      A.   (By Mr. Lyons) I don't recognize it, no, sir,

17   not from these pictures.

18      Q.   If that were in the City of Palestine in a

19   residential district, would that be in violation of city

20   ordinance?

21      A.   (By Mr. Lyons) If these vehicles are considered

22   junk vehicles, yes, sir.

23      Q.   What's the last one in that series?

24      A.   (By Mr. Lyons) 34.

25      Q.   So you think those are -- that is in violation

DEFS0375

MSJ – EXHIBIT A

1   of city ordinance?

2               MR. STUTES:  Objection, form.

3       Q.   I know I've already asked you.  I want you to

4   clarify.

5       A.   (By Mr. Lyons) Yes, sir.  It appears to be,

6   yes, sir.

7       Q.   All right.  Have you issued citations?

8       A.   (By Mr. Lyons) No, sir.

9       Q.   Why not?

10      A.   (By Mr. Lyons) I have no answer to that.  I

11  just have not done it.

12      Q.   Pass that down.

13      A.   (By Mr. Lyons) (Witness complied).

14      Q.   Don't mind me.  I just scribble sometimes.

15               (Exhibits D-35 and D-36 marked.)

16      Q.   I'm going to hand you two more photographs,

17  Exhibits 35 and 36.  Can you identify that?

18      A.   (By Mr. Lyons) Yes, sir.

19      Q.   You know where that is?

20      A.   (By Mr. Lyons) Hardin and Eilenstein.

21      Q.   That is?  And who owns that property?

22      A.   (By Mr. Lyons) I do not know.

23      Q.   You don't know?

24      A.   (By Mr. Lyons) I do not know.

25      Q.   All right.  That's amazing.  Do you think

DEFS0376

MSJ – EXHIBIT A

 1    that's -- if it's in a residential district -- is that

 2    in a residential district for the City of Palestine?

 3         A.    (By Mr. Lyons) I would say it is, yes, sir.

 4         Q.    Well, you know the address, sir.

 5         A.    (By Mr. Lyons) (Witness nods head).

 6         Q.    Would you say that was in violation of city

 7    ordinances?

 8         A.    (By Mr. Lyons) Yes, sir.

 9              MR. MOSSER:  I'm just going to go down,

10    sit across from her, and do the same thing.

11              MR. STUTES:  Do you want those exhibits

12    back?

13              MR. MOSSER:  Yes.  I'm sorry.  I only have

14    one set because I'm cheap.

15         Q.    Ms. Smith, do you recognize those photographs?

16         A.    (By Ms. Smith) Yes, sir.  They are from the

17    Iron Gate Feed Store.

18         Q.    And that's Exhibits 3 and 4?

19         A.    (By Ms. Smith) Yes, sir.

20         Q.    And have you written citations to the owners of

21    those properties?

22         A.    (By Ms. Smith) No, sir, I have not.

23         Q.    Why not?

24         A.    (By Ms. Smith) I have no reason.  There's not

25    been any complaints.

DEFS0377

MSJ – EXHIBIT A

1        Q.    Are they in compliance with city ordinance?

2        A.    (By Ms. Smith) No, sir, they are not.

3        Q.    So do you have to have a complaint before you

4    write a violation?

5        A.    (By Ms. Smith) I used to work just on

6    complaints only, yes, sir.

7        Q.    But --

8        A.    (By Ms. Smith) But having visual, this would be

9    something that we would go in and start working on.

10       Q.    But they are in violation of city ordinance?

11       A.    (By Ms. Smith) Yes, sir, they are.

12       Q.    And you guys do know who owns that, don't you?

13       A.    (By Ms. Smith) That's going to be in the state

14   right-of-way, so it's either going to be the Railroad or

15   it's going to be TxDOT, one of the two.

16       Q.    Exhibit No. 5, do you recognize that property?

17       A.    (By Ms. Smith) I'm not sure where this is at.

18       Q.    Is it in violation of city code?

19       A.    (By Ms. Smith) Yes, sir.  It's got tall weeds.

20       Q.    What about the structure?

21       A.    (By Ms. Smith) The structure would be

22   considered substandard, so the building official would

23   have to go in there and red tag it.

24       Q.    And what happens when he red tags it?

25       A.    (By Ms. Smith) Typically, the building

DEFS0378
MSJ – EXHIBIT A

1   inspector has to go in there and put a red tag on it and

2   then they do their proceedings from there.

3       Q.   Do you know if that's been done on that

4   property?

5       A.   (By Ms. Smith) I don't see a red tag on it.

6   Typically there would be a red tag up around the door,

7   up around the front part of the house where they would

8   red tag it.

9       Q.   So is there anything that looks as bad as that

10  on Mr. Laza's property?

11      A.   (By Ms. Smith) He's got taller weeds on the

12  outside of his fence.

13      Q.   Other than tall weeds?

14      A.   (By Ms. Smith) No, sir.

15      Q.   All right.  Let me show you Exhibits 6 and 7.

16      A.   (By Ms. Smith) I'm not a hundred percent sure,

17  but this might possibly be that house on West Oak Street

18  facing the railroad.

19      Q.   I don't know.  Does it violate city code?

20      A.   (By Ms. Smith) Yes, sir.

21      Q.   Have you written a citation for that?

22      A.   (By Ms. Smith) No, sir, I have not.

23      Q.   Have you -- do you know if the City has filed a

24  lawsuit?

25      A.   (By Ms. Smith) No, sir.

1      Q.   Do you know who owns the property?

2      A.   (By Ms. Smith) No, sir, I do not.

3      Q.   Have you tried to find out?

4      A.   (By Ms. Smith) No, sir, but if it's that

5   property, I do recall talking to Mark Myers telling him

6   about at that roof.

7      Q.   And what did he say?

8      A.   (By Ms. Smith) He was working on that.

9      Q.   I'm going to show you Exhibits 8, 9, 10, and

10   11.  Do you recognize that property?

11      A.   (By Ms. Smith) That is the P.D. impound yard

12   where those vehicles are at.

13      Q.   The City of Palestine's Police Department's

14   impound yard?

15      A.   (By Ms. Smith) Yes, sir.

16      Q.   All of those vehicles are in there?

17      A.   (By Ms. Smith) The ones that are behind the

18   chain link with the razor wire on top, yes, sir.

19      Q.   How about the rest of those photographs?

20      A.   (By Ms. Smith) That's the P.D. impound yard.

21   This is the City of Palestine yard because there's one

22   of the old P.D. units that was involved in a fire, Unit

23   No. 4.  Then you've got other vehicles from the city

24   that --

25      Q.   Junk vehicles, right?

DEFS0380
MSJ – EXHIBIT A

1        A.      (By Ms. Smith) Yes, sir.  There's one that has

2    been wrecked out.  And then these are barrels --

3        Q.      Trash?

4        A.      (By Ms. Smith) -- from I don't know what.

5        Q.      Trash, aren't they?

6        A.      (By Ms. Smith) Yes, sir.

7        Q.      So why is the City -- you recognize all those

8    locations.  Why does the City maintain and keep those

9    things that are a hazard to the health and well being of

10   the citizens of Palestine?

11       A.      (By Ms. Smith) I do not know, sir.

12       Q.      If it were a regular human being and not the

13   City, would it violate city code -- city ordinance?

14       A.      (By Ms. Smith) Yes, sir.

15       Q.      Every one of those photographs would be in

16   violation of city ordinance?

17       A.      (By Ms. Smith) Yes, sir.

18       Q.      Let me show you 13, 14, 15.  Do you recognize

19   those photographs?

20       A.      (By Ms. Smith) No, sir.

21       Q.      If I tell you they are on Kentucky, would you

22   agree with me on that?

23               MR. STUTES:  Objection, form.

24       A.      (By Ms. Smith) No, sir.

25       Q.      If they were in a residential zoning area,

```
 1    would they be in violation of city code?

 2        A.    (By Ms. Smith) Yes, sir.

 3        Q.    City ordinance?

 4        A.    (By Ms. Smith) (Witness nods head).

 5        Q.    Is there any non-residential property on

 6    Kentucky?

 7        A.    (By Ms. Smith) Is there any non-residential?

 8        Q.    Yes.

 9        A.    (By Ms. Smith) There's a non-residential area

10    in there.

11        Q.    Is that one of them?

12        A.    (By Ms. Smith) It would be, yes, sir.

13        Q.    Non-residential?

14        A.    (By Ms. Smith) Oh, no.  No, sir.  No, sir.

15    Sorry.

16        Q.    I was getting confused.  All right.  Let me

17    show you 16 and 17.  Have you seen that property before?

18        A.    (By Ms. Smith) Yes, sir.

19        Q.    And it's located behind Lowe's?

20        A.    (By Ms. Smith) Yes, sir.

21        Q.    And it's not commercial?

22        A.    (By Ms. Smith) No, sir.

23        Q.    It's residential; is that correct?

24        A.    (By Ms. Smith) Yes, sir.

25        Q.    Is it in violation of Palestine City Code?
```

DEFS0382

MSJ – EXHIBIT A

1      A.    (By Ms. Smith) I believe so.

2      Q.    Have you checked the pond there for mosquitoes?

3      A.    (By Ms. Smith) No, sir, I have not.

4      Q.    By the way, what kind of mosquitoes carry Zika?

5      A.    (By Ms. Smith) That would be what they call the

6   tiger mosquito.  It's a female mosquito that bites.

7   They are the only ones that bite and they are the most

8   aggressive.

9      Q.    Is that your professional opinion?

10      A.    (By Ms. Smith) No, sir.  I went to a vector

11   control class.

12      Q.    I'm going to show you 18, 19, 20, 21.  See if

13   you recognize the location of that.

14      A.    (By Ms. Smith) Yes, sir.  This is Coffee Street

15   off of -- right around Greens Park.

16      Q.    How long has it been like that?

17      A.    (By Ms. Smith) This has been like this for a

18   while.

19      Q.    More than a year?

20      A.    (By Ms. Smith) It has grown, yes, sir.

21      Q.    More than two years?

22      A.    (By Ms. Smith) It's been like this for a

23   good --

24      Q.    Years?

25      A.    (By Ms. Smith) No, I wouldn't say years.

DEFS0383

MSJ – EXHIBIT A

1        Q.    More than two years?

2        A.    (By Ms. Smith) Yeah.   It's been probably about

3    a year and a half.

4        Q.    All right.  Almost two years.  A year and a

5    half.  Have you written any citations related to this

6    property?

7        A.    (By Ms. Smith) We have current -- we are

8    waiting on municipal court cases right now for illegal

9    dumping.

10       Q.    How about have you written any citations to the

11   property owners?

12       A.    (By Ms. Smith) To the property owners, no, sir.

13       Q.    Do you know who the property owners are?

14       A.    (By Ms. Smith) No, sir.  I know that the City

15   of Palestine owns property -- if you are on Coffee

16   Street, the property to the left is actually the City of

17   Palestine property.

18       Q.    So some of that property could be the City of

19   Palestine's?

20       A.    (By Ms. Smith) Yes, sir.

21       Q.    Why doesn't the City of Palestine go out and

22   clean up their illegal dumping?

23       A.    (By Ms. Smith) We are actually in the process

24   of doing that.

25       Q.    But you haven't yet?

DEFS0384

MSJ – EXHIBIT A

1          A.    (By Ms. Smith) They are starting that today.

2          Q.    And if you were Mr. Laza and maintained a lot

3     like that, you would be in violation of city ordinance,

4     wouldn't you?

5          A.    (By Ms. Smith) Yes, sir.

6          Q.    And you wouldn't tolerate that, would you?

7          A.    (By Ms. Smith) No, sir.

8          Q.    I am going to show you Exhibits 23, 24, 25, and

9     26 and ask you if you can identify that location.

10         A.    (By Ms. Smith) That is old Memorial Hospital.

11         Q.    Is it in violation of city code?

12         A.    (By Ms. Smith) Yes, it is.

13         Q.    And you've actually sent citations and things

14    to the owners of that property?

15         A.    (By Ms. Smith) We have sent Notice of

16    Violations.

17         Q.    Notice of Violations?

18         A.    (By Ms. Smith) Yes, sir.

19         Q.    Have they responded?

20         A.    (By Ms. Smith) No, sir.

21         Q.    Have you sued them?

22         A.    (By Ms. Smith) No, sir.

23         Q.    Why not?

24         A.    (By Ms. Smith) It was a discussion for a later

25    date.

1     Q.    Mr. Alexander said he didn't want to bother

2   with this, he was focusing on Mr. Laza?

3                 MR. STUTES:  Objection, form.

4     A.    (By Ms. Smith) We have a current letter going

5   out to these individuals once again.

6     Q.    Another one?

7     A.    (By Ms. Smith) Yes, sir.

8     Q.    How many have you sent already?

9     A.    (By Ms. Smith) Every year we deal with them.

10  I've dealt with them for the last two years and I have

11  another code enforcement officer working on a case with

12  them right now.

13    Q.    I'm going to show you 27, 28, and 29 and ask

14  you if you recognize these locations.

15    A.    (By Ms. Smith) This is the house that's across

16  the street.  It's on the east side across from Mr. Laza.

17    Q.    And is it close to Mr. San Miguel's location?

18    A.    (By Ms. Smith) Yes.  It's across the street,

19  cattycorner.

20    Q.    Could the rats have come from there?

21    A.    (By Ms. Smith) Potentially, yes, sir.

22    Q.    Did you go over and inspect that house when you

23  were looking at Mr. San Miguel's complaint?

24    A.    (By Ms. Smith) This house was actually one that

25  we received a complaint on and code enforcement is

DEFS0386

MSJ – EXHIBIT A

1   currently working it.

2      Q.   Did you go and inspect that house when you were

3   reviewing Mr. San Miguel's complaint?

4      A.   (By Ms. Smith) No, sir, I did not.

5      Q.   Did you set any rat traps out there?

6      A.   (By Ms. Smith) No, sir, I did not.

7      Q.   Any mousetraps?

8      A.   (By Ms. Smith) No, sir.

9      Q.   It's logical that rats could come from there

10  across the street to Mr. San Miguel's house, isn't it?

11              MR. STUTES:  Objection, form.

12              THE REPORTER:  Can you repeat that

13  question?

14      Q.   It's logical -- I'm sorry.  I was being

15  dramatic.  I'm sorry.

16              It's logical, Ms. Smith, that the rats could

17  have come from there crossing the street to Mr. San

18  Miguel's house, isn't it?

19              MR. STUTES:  Objection, form.

20      A.   (By Ms. Smith) Yes.

21      Q.   Exhibit No. 30, do you recognize that house?

22      A.   (By Ms. Smith) I think this is further north.

23  I think this one is further north.

24      Q.   Okay.  Close to Mr. San Miguel's house?

25      A.   (By Ms. Smith) I believe so, yes, sir.

Jeffrey Lyons AND Patsy Smith

234

1 Q. Is it occupied or not?

2 A. (By Ms. Smith) I don't believe this house is

3 occupied.

4 Q. Does it violate city ordinances?

5 A. (By Ms. Smith) Yes, sir.

6 Q. Have you issued citations on that house?

7 A. (By Ms. Smith) I have not, no, sir.

8 Q. Anyone that you know of?

9 A. (By Ms. Smith) A Notice of Violation was issued

10 on this house once before, but I don't know that there's

11 any current ones now.

12 Q. And have you sued the owners of that house?

13 A. (By Ms. Smith) No, sir.

14 Q. What exhibit number is that?

15 A. (By Ms. Smith) No. 30.

16 Q. 30.  I'm going to show you 31, 32, 33, 34 and

17 ask you if you can identify this property.

18 A. (By Ms. Smith) I do not know where this is at.

19 Q. Don't know?

20 A. (By Ms. Smith) No, sir.

21 Q. If we're in the City of Palestine on a

22 residential zone lot, would it be in violation of the

23 City of Palestine ordinances?

24 A. (By Ms. Smith) Yes, sir, it would.

25 Q. If I told you that was Mr. San Miguel's house,

DEFS0388

MSJ – EXHIBIT A

1    what would you think then?

2         A.    (By Ms. Smith) He's got violations.

3         Q.    Did you ever issue him any violations?

4         A.    (By Ms. Smith) No, sir, I did not.

5         Q.    And I'm going to hand you Exhibits No. 35 and

6    36.  Do you recognize that property?

7         A.    (By Ms. Smith) Yes, sir.  This is the corner

8    properties at Hardin and Eilenstein.

9         Q.    Who owns that?

10        A.    (By Ms. Smith) I can't remember their names off

11   the top of my head because there's multiple properties

12   in there.  They are smaller lots.  I know that several

13   of them are deceased.  And we had open cases on them

14   last year and had to have them mowed by a contractor.

15        Q.    And who was the contractor?

16        A.    (By Ms. Smith) The City of Palestine.

17        Q.    Oh, so the City of --

18        A.    (By Ms. Smith) And the streets guys were the

19   ones who went out there and mowed those.

20        Q.    So you actually took care of getting that

21   accomplished?

22        A.    (By Ms. Smith) Yes, sir.

23        Q.    And when was that?

24        A.    (By Ms. Smith) That was in 2016 and I would

25   have to go back and look at the records.

DEFS0389

MSJ – EXHIBIT A

1     Q.   So that's been more than 30 days ago?

2     A.   (By Ms. Smith) Oh, yes, sir.

3     Q.   Is it in violation?

4     A.   (By Ms. Smith) Yes, sir.  It's tall.

5     Q.   It's in violation of city code now?

6     A.   (By Ms. Smith) Yes, sir.

7     Q.   Have you gone out there and issued any new

8   citations?

9     A.   (By Ms. Smith) No, sir, I have not.

10    Q.   Why is that?

11    A.   (By Ms. Smith) I have been busy with other

12  things and have not gone.

13    Q.   Does the City of Palestine own that lot?

14    A.   (By Ms. Smith) No, sir, not to my knowledge.

15    Q.   None of them?

16    A.   (By Ms. Smith) (Witness shakes head.)

17    Q.   Why haven't you foreclosed on it?

18    A.   (By Ms. Smith) That, I have no -- I don't know.

19            MR. MOSSER:  I'm going to go a little

20  longer than 3:00 o'clock.  I am just sharing.  I don't

21  want to, but I am.  So if anybody wants to take a break

22  now, it's a good time.  I'm switching horses.

23            MR. STUTES:  How much longer have you got?

24            MR. MOSSER:  I don't -- my questions are

25  about these things (indicating), but each page only

DEFS0390
MSJ – EXHIBIT A

# EXHIBIT B

0-17-98

## AN ORDINANCE GRANTING A SPECIFIC USE PERMIT
### FOR THE HEREINAFTER DESCRIBED PROPERTY

WHEREAS, a public hearing was held before the Planning and Zoning Commission of the a City of Palestine, Texas, on the 3rd day of June, 1998, at 1:00 o'clock P.M., and a public hearing was held before the City Council of the City of Palestine, Texas, on the 22nd day of June, 1998, at 5:30 o'clock P.M., where all interested persons were provided with an opportunity to be heard on a proposed application for a Specific Use Permit for Outside Storage in a C-3 General Commercial Zoning  District as provided in the Comprehensive Zoning Ordinance of the City of Palestine, Texas, said hearing being held at City Hall, with all notices being given as required by law; and

WHEREAS, pursuant thereto, the Planning and Zoning Commission gave written notice of such hearing to all real property owners within two hundred (200) feet of the hereinafter described territory as reflected by the last approved tax roll for the City of Palestine, and notice being given more than ten (10) days prior to the date of said hearing by mailing the same, properly addressed to said owners; and

WHEREAS, the Planning and Zoning Commission, at said public hearing held on the 3rd day of June, 1998, considered all of the testimony and all persons present were given an opportunity to be heard, and said Planning and Zoning Commission did make its final report in writing to the City Council; and

WHEREAS, the City Council, at said public hearing held on the 22nd day of June, 1998, considered all of the testimony and all persons present were given an opportunity to be heard; and

WHEREAS, the City Council is of the opinion that the following Ordinance should be passed and that the same is in the public interest and necessary for the promotion of health, safety, morals and general welfare of the City.

NOW, THEREFORE, BE IT ORDAINED BY THE CITY COUNCIL OF THE CITY OF PALESTINE, TEXAS:

That a Specific Use Permit be and the same is hereby granted for the purpose of Outside Storage in a C-3 General Commercial Zoning District  as provided in the Comprehensive Zoning Ordinance of the City of Palestine, Texas, and that said property be subject to and governed by the terms of the aforesaid Ordinance; the property or territory herein involved being described as follows, to-wit:

BEING Lots 24A, 25A, & 26A of Block B-5, Texas Land Company, 1101 West Oak Street

PASSED, APPROVED and ADOPTED this the 22nd day of June, 1998.

THE CITY OF PALESTINE, TEXAS

R.E. McKELVEY, MAYOR

APPROVED AS TO FORM:

ATTEST:

ANN PESCE, CITY SECRETARY

RICHARD W. CURRIE, JR., CITY ATTORNEY

# EXHIBIT C

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF TEXAS**
**TYLER DIVISION**

|  |  |  |
|---|---|---|
| **JERRY LAZA,** | § | |
| *Plaintiff,* | § | |
| | § | **Civil Action No.6:17-** |
| *v.* | § | **CV-00533-JDK** |
| | § | |
| **CITY OF PALESTINE,** | § | **JURY DEMANDED** |
| **MIKE ALEXANDER, RONALD STUTES,DOUG** | § | |
| **SMITH, WILL BRULE, STEVE PRESLEY,** | § | |
| **MITCHELL JORDAN, VICKEY CHIVERS,** | § | |
| **LARISSA LOVELESS, JOE BAXTER, DANA** | § | |
| **GOOLSBY, AND ANN CONNER,** | § | |
| *Defendants.* | | |

**DEFENDANT RONALD STUTES'S ANSWERS, RESPONSES AND**
**OBJECTIONS TO PLAINTIFF'S WRITTEN DISCOVERY**

COMES NOW, Ronald Stutes, one of the Defendants herein, and serves this his Answers,

Responses and Objections to Plaintiff's Written Discovery, and would respectfully submit the

following:

Respectfully submitted,

**BOON CALK ECHOLS COLEMAN & GOOLSBY, P.L.L.C.**
1800 N.W. Loop 281, Suite 303
Longview, Texas 75604
(903) 759-2200-telephone
(903) 759-3306-facsimile

BY:   *Darren K. Coleman*
      DARREN K. COLEMAN
      Attorney-in-Charge
      State Bar No. 04558570
      darren.coleman@boonlaw.com

**ATTORNEYS FOR DEFENDANT**
**RONALD STUTES**

1

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that a true and correct copy of the foregoing instrument has been served upon all counsel of record by electronic mail on this the 7th day of December 2021.

<u>*Darren K. Coleman*</u>
DARREN K. COLEMAN

2

**GENERAL OBJECTIONS:**

1.       Defendant objects to these written discovery requests as a whole to the extent they purport to impose discovery obligations greater than those imposed by the Federal Rules of Civil Procedure and applicable law.  Defendant will comply with its obligations as defined by those rules and applicable law.

2.       Defendant reserves its right to supplement these written discovery requests in accordance with the Federal Rules of Civil Procedure.

3.       Defendant objects to these written discovery requests as a whole to the extent they purport to require disclosure of information protected from discovery by the attorney/client privilege, attorney work/product doctrine, any other applicable privilege or exemption.

<u>**RESPONSES TO REQUESTS FOR ADMISSIONS**</u>

**RFA NO. 1:**       In 1995, the City began enforcing City ordinances against Plaintiff's property located at 302 E Crawford St.

**RESPONSE:**       Defendant is unable to admit or deny this Request for Admission for the reason that Defendant was not the City of Palestine's City Attorney in 1995.

**RFA NO. 2:**       The enforcement against Plaintiff was motivated by the City's effort to comply with a Historic Preservation Program.

**RESPONSE:**       Denied.

**RFA NO. 3:**       In 1998, Plaintiff moved his business to 1101 W. Oak St. from his original property at 302 E. Crawford St.

**RESPONSE:**       Defendant is unable to admit or deny this Request for Admission for the reason that Defendant was not the City of Palestine's City Attorney in 1998.

**RFA NO. 4:**       Plaintiff's 1101 W. Oak St. property lies outside the bounds of the Main Street Initiative.

**RESPONSE:**       Defendant is without sufficient information or knowledge to admit or deny this Request for Admission.

**RFA NO. 5:**       Plaintiff's 1101 W. Oak St. property lies in a C-3 General Commercial Zoning District.

**RESPONSE:**       Denied.

**RFA NO. 6:**       On June 22, 1998, the City passed an ordinance granting Plaintiff a Specific Use Permit to have outside storage on his at 1101 W. Oak St.

**RESPONSE:**       Defendant admits that a Specific Use Permit was granted, but Defendant is

3

unable to admit or deny the date for the reason that Defendant was not the City of Palestine's City Attorney in 1998.

**RFA NO. 7:**     The Specific Use Permit covered lot 24A, of Block B-5, 1101 West Oak Street, Palestine, TX 75801.

**RESPONSE:**     Admitted.

**RFA NO. 8:**   The Specific Use Permit covered lot 25A, of Block B-5, 1101 West Oak Street, Palestine, TX 75801.

**RESPONSE:**     Admitted.

**RFA NO. 9:**   The Specific Use Permit covered lot 26A of Block B-5, 1101 West Oak Street, Palestine, TX 75801.

**RESPONSE:**     Admitted.

**RFA NO. 10:**     The City granted the Specific Use Permit to Plaintiff with the knowledge that Plaintiff would continue to use the Land as he had in the past.

**RESPONSE:**     Defendant is unable to admit or deny this Request for Admission for the reason that Defendant was not the City of Palestine's City Attorney in 1998.

**RFA NO. 11:**  On April 6, 2016, the City sent Plaintiff a Notice of Violation, informing him that the following lots were in violation of the City Code:

a. 1101 West Oak Street – Lots 24A, 25A, and 26A of Block B-5, Texas Land Company, Palestine, Texas;
b. 1216 West Debard Street – Lots 29A and 30A of Block B-5, Texas Land Company, Palestine, Texas;
c. 1218 West Debard Street – Lots 38C and 39C of Block B-5, Texas Land Company, Palestine Texas;
d. 402 Texas Avenue – Lot 40 of Block B-5, Texas Land Company, Palestine,Texas;
e. 307 Fort Street – Lots 27A and 28A of Block B-5, Texas Land Company,Palestine, Texas;
f. 412 Texas Avenue – Lot 38D of Block B-5, Texas Land Company, Palestine,Texas;
g. 1019 West Oak – Lots 20B and 20C of Block B-4, Texas Land Company,Palestine, Texas.

**RESPONSE:**     Defendant admits that the Notice of Violation is dated April 6, 2016 for the above listed properties.

**RFA NO. 12:**     The violations listed in the Notice of Violation concerned property conditions that existed for multiple years prior to the issuance of the Notice of Violation.

**RESPONSE:**     Defendant admits that the violations were in existence for a period of time prior to the issuance of the April 6, 2016 Notice of Violation, but is without sufficient knowledge or information to admit or deny the length of time.

4

**RFA NO. 13:**          The violations listed in the Notice of Violation concerned property conditions that the City had been aware of since 1998.

**RESPONSE:**          Defendant is unable to admit or deny this Request for Admission for the reason that Defendant was not the City of Palestine's City Attorney in 1998.   However, as stated in the response to RFA No. 12, Defendant admits that the violations were in existence for a period of time prior to the issuance of the April 6, 2016, Notice of Violation.

**RFA NO. 14:**          On June 9, 2016, you filed a Lawsuit against Plaintiff.

**RESPONSE:**          Defendant admits that, on June 9, 2016, he was counsel of record for the City of Palestine's lawsuit against Plaintiff.

**RFA NO. 15:**          You filed the Lawsuit against Plaintiff on behalf of the City.

**RESPONSE:**          Defendant admits that he was counsel of record for the City of Palestine's lawsuit against Plaintiff.

**RFA NO. 16:**          You received no authorization from the City Council to file the Lawsuit.

**RESPONSE:**          Denied.

**RFA NO. 17:**          At no time did the City Council publish a public meeting notice in Anderson County concerning the Lawsuit.

**RESPONSE:**          Denied.

**RFA NO. 18:**          On October 21, 2016, agents of the City entered Plaintiff's Property to perform a search.

**RESPONSE:**          Denied as stated.  Defendant admits that on or about October 21, 2016, an agreed inspection pursuant to civil discovery was conducted on Plaintiff's subject property.

**RFA NO. 19:**          The October 21, 2016 search was completed without a warrant.

**RESPONSE:**          Denied as stated.  Defendant admits that on or about October 21, 2016, an agreed inspection pursuant to civil discovery was conducted on Plaintiff's subject property.

**RFA NO. 20:**          The October 21, 2016 search was completed without Plaintiff's consent.

**RESPONSE:**          Denied as stated.  Defendant admits that on or about October 21, 2016, an agreed inspection pursuant to civil discovery was conducted on Plaintiff's subject property.

5

MSJ – EXHIBIT C

## RESPONSES AND OBJECTIONS TO REQUESTS FOR PRODUCTION

**RFP NO.1:**        Produce all documents or records related to the enforcement of City Ordinances against Plaintiff.

**RESPONSE:**        Defendant objects to this request to the extent it seeks to discover documents protected by the attorney-client privilege and attorney work product doctrine.  Subject to these objections, see those documents produced by Defendants in this civil action.

**RFP NO.2:**        Produce all communications between the City or its agents to Plaintiff regarding the enforcement of City Ordinances against Plaintiff.

**RESPONSE:**        See documents previously disclosed in this civil action.

**RFP NO.3:**        Produce all Notices of Violations sent to Plaintiff regarding enforcement of City Ordinances.

**RESPONSE:**        See documents previously disclosed in this civil action.

**RFP NO.4:**        Produce all certified minutes of Palestine City Council meetings that discuss any lawsuit against Plaintiff on or before June 9, 2016.

**RESPONSE:**        None to Defendant's knowledge.

**RFP NO.5:**        Produce all certified minutes of Palestine City Council meetings that discuss any lawsuit against Plaintiff after June 9, 2016.

**RESPONSE:**        Defendant does not have "certified" minutes.  However, minutes printed from the City of Palestine's public website will be produced.

**RFP NO.6:**        Produce all records, photographs, or other documents related to all searches of any of Plaintiff's properties.

**RESPONSE:**        See documents previously disclosed in this civil action.  Further, Defendant will produce additional photographs.

**RFP NO.7:**        Produce any Ordinances that the City adopted between the years 1998 and 2016 that would change the permissible use of Plaintiff's property.

**RESPONSE:**        None in this Defendant's possession.

**RFP NO.8:**        Produce all City Ordinances or rules related to the storage of vehicles, machinery, mechanical devices, or other merchandise.

**RESPONSE:**        None in this Defendant's possession, other than those previously disclosed in this civil action.

**RFP NO.9:**        Produce all City Ordinances or rules related to the City's definition of "junkyard."

**RESPONSE:**          None in this Defendant's possession, other than those previously disclosed in this civil action.

**RFP NO.10:**          Produce all City Ordinances or rules related to the City's definition of "rat harborage."

**RESPONSE:**          None in this Defendant's possession, other than those previously disclosed in this civil action.

**RFP NO.11:**          Produce all records related to any compensation you have received from the City of Palestine, whether as an employee, contractor, or other paying relationship, including but not limited to, all contracts, emails, job descriptions, minutes of city meetings, and presentations.

**RESPONSE:**          Defendant objects to this request to the extent it seeks to discover documents protected by the attorney-client privilege and attorney work product doctrine.  Subject to these objections, none in Defendant's possession.

**RFP NO.12:**          To the extent not already produced, produce all records of meetings between City employees or agents and Plaintiff, including recordings, minutes, andagendas.

**RESPONSE:**          See documents previously disclosed in this civil action.

MSJ – EXHIBIT C

## ANSWERS AND OBJECTIONS TO REQUESTS FOR INTERROGATORIES

**Interrogatory 1:**    Describe the process the City underwent to grant Plaintiff a Specific Use Permit for outside storage on his property on or about June 22, 1998.

**ANSWER:**    I was not the City Attorney in 1998 and I do not know the "process" the City of Palestine followed in that year.

**Interrogatory 2:**    Describe all efforts by the City to enforce Ordinances against Plaintiff between 1998 and 2016.

**ANSWER:**    I am not privy to "all" efforts by the City of Palestine to enforce the ordinances against Plaintiff from 1998 to 2016.  I was not City Attorney for Palestine until approximately 2005.  I know that the City of Palestine brought a criminal action against Mr. Laza sometime between 2005 and 2016.  I also know that the City of Palestine issued a Notice of Violation on or around April 6, 2016, and that a suit was subsequently filed against Mr. Laza in Anderson County District Court which led to a jury verdict in favor of the City of Palestine.

**Interrogatory 3:**    Describe the process which led to the Notice of Violation that the City sent to Plaintiff on April 6, 2016.

**ANSWER:**    I am not privy to the entire process.  However, I know there was a meeting sometime in early 2016 between me, Jeffrey Lyons, Patsy Smith, Assistant City Manager Larry Pannell, and others whose names I cannot presently recall.   It was determined to issue a Notice of Violation due to Plaintiff's continuing violations of numerous City of Palestine Ordinance.

**Interrogatory 4:**    Regarding the Notices of Violation that the City sent to Plaintiff, list the Ordinances Plaintiff violated and the nature of Plaintiff's violations.

**ANSWER:**    Pursuant to Rule 33(d) of the Federal Rules of Civil Procedure, please see the Notice of Violation, dated April 6, 2016, that has previously been disclosed in this civil action.  The Notice of Violation lists the City of Palestine Ordinances Plaintiff violated and the nature of Plaintiff's violations.

**Interrogatory 5:**    Describe the process the City employs to discover City Ordinance violations.

**ANSWER:**    I cannot answer for the City of Palestine.  Further, I am currently not the City Attorney, so I do not know the "process" the City of Palestine currently employs to discover City Ordinance violations.  However, during the time that I was City Attorney, City Ordinance violations could have been discovered a number of ways including, but not limited to, a citizen reporting a violation, a citizen making a complaint, code enforcement officials conducting inspections, and City of Palestine employees reporting a violation.

**Interrogatory 6:**    Describe the process the City employs to notify citizens of Ordinance violations and bring them into compliance, including references to the specific rules which govern those processes.

**ANSWER:**    I cannot answer for the City of Palestine.  Further, I am currently not the

City Attorney, so I do not know the "process" the City of Palestine currently employs to notify citizens of Ordinance violations and bring them into compliance.  However, during the time that I was City Attorney, notices of violations could be done in a written Notice of Violation, verbally or by citation.

**Interrogatory 7:**  Describe the process the City employs to authorize lawsuits commenced by the City.

**ANSWER:**        I cannot answer for the City of Palestine.  Further, I am currently not the City Attorney, so I do not know the "process" the City of Palestine currently employs to authorize lawsuits by the City of Palestine.  However, during the time that I was City Attorney, the facts of each individual circumstance would be reviewed by and with appropriate City of Palestine officials.  Pursuant to the authority granted the City Attorney by the City of Palestine and its officials, a lawsuit would be filed if supported by both the law and the facts.

**Interrogatory 8:**   Describe the process that led to the City authorizing and filing the Lawsuit against Plaintiff on June 9, 2016.

**ANSWER:**        There was a meeting sometime in early 2016 between me, Jeffrey Lyons, Patsy Smith, Assistant City Manager Larry Pannell, and others whose names I cannot presently recall.   It was determined that a Notice of Violation would be issued to Plaintiff due to his continuing violations of numerous City of Palestine Ordinances.  If Plaintiff did not comply with the Ordinances, then it was determined that a lawsuit would be filed to enforce the Ordinances.  Plaintiff did not comply with the City of Palestine Ordinances.  Pursuant to the authority granted the City Attorney by the City of Palestine, and with the approval of City of Palestine officials, a lawsuit was filed against Plaintiff to enforce the Ordinances.

**Interrogatory 9:**   Identify the time and place of the meeting during which the City Council authorized you to file the Lawsuit against Plaintiff on June 9, 2016.

**ANSWER:**        There was no City Council meeting prior to June 9, 2016, during which the filing of the subject lawsuit was discussed.  Appropriate City of Palestine officials and the City Attorney, pursuant to their lawful authority and responsibilities, determined to proceed with the lawsuit against Plaintiff.  Thereafter, the City of Palestine City Council was routinely appraised of the status of the litigation. A trial was held in Anderson County District Court and the Plaintiff was found liable to the City of Palestine.

MSJ – EXHIBIT C

## **VERIFICATION**

STATE OF TEXAS           §
                         §
COUNTY OF SMITH          §

BEFORE ME, the undersigned authority, on this day personally appeared Ronald Stutes, who being by me duly sworn on his oath deposed and stated that the answers contained in the preceding Interrogatories are within her personal knowledge and are true and correct.

_____
RONALD STUTES

SUBSCRIBED AND SWORN TO BEFORE ME on this the ___6th___ day of December, 2021, to certify which witness my hand and official seal.

_____
NOTARY PUBLIC, STATE OF TEXAS

RENDA REX
My Notary ID # 5442755
Expires May 21, 2024

10

MSJ – EXHIBIT C

# EXHIBIT D

COMPLAINT: __General__

No. CTC00021

MUNICIPAL COURT

STATE OF TEXAS

IN AND FOR THE

V.

CITY OF PALESTINE, TEXAS

Jerry Laza

## IN THE NAME AND BY AUTHORITY OF THE STATE OF TEXAS:

In the **STATE OF TEXAS, COUNTY OF ANDERSON, CITY OF PALESTINE**, personally appeared before me, the undersigned authority, the undersigned affiant, who, after being by me duly sworn, deposes and says he has good reason to believe, and does believe, that **Jerry Laza**, hereinafter called **DEFENDANT**, on or about the 18 day of September, 2006, and before the making and filing of this complaint in the **CITY OF PALESTINE, ANDERSON COUNTY, TEXAS**, did then and there unlawfully violate the City of Palestine Zoning Ordinance no. 0-20-92 Section 20.3 by use of the property at 1101 West Oak Street, in Palestine, Texas, in violation of the zoning laws of the City of Palestine, by using the property as a junkyard or salvage yard, which is not the use for which a certificate of occupancy was granted.

## AGAINST THE PEACE AND DIGNITY OF THE STATE.

AFFIANT – Mark Amaral

SUBSCRIBED AND SWORN TO BEFORE ME BY AFFIANT, this the 15 day of September 2006

NOTARY PUBLIC IN AND FOR THE

STATE OF TEXAS

My commission expires

SHEILA M KENNEDY
Notary Public, State of Texas
My Commission Expires
August 05, 2009

FILED:  THIS THE 15 DAY OF September, 2006.

MUNICIPAL COURT

CITY OF PALESTINE

MSJ – EXHIBIT D

No: CT000021

**Affadavit of Probable Cause**

**THE CITY OF PALESTINE**

**MUNICIPAL COURT**

**PALESTINE, TEXAS**

## IN THE NAME AND BY THE AUTHORITY OF THE STATE OF TEXAS:

I, Mark Amaral, being duly sworn upon my oath and based upon personal knowledge, state that on or about September 18, 2006 and before the making and filing of a complaint, within the limits of the City of Palestine, Anderson County, Texas:

### Jerry Laza:

Did then and there unlawfully violate the City of Palestine Zoning Ordinance no. 0-20-92 Section 20.3 by use of the property at 1101 West Oak Street, in Palestine, Texas, in violation of the zoning laws of the City of Palestine, by using the property as a junkyard or salvage yard, which is not the use for which a certificate of occupancy was granted

**Against the Peace and Dignity of the State**

_MARK AMARAL_ , Affiant

**Printed name of Affiant: Mark Amaral**

SUBSCRIBED AND SWORN to before me, this the ___15___ day of

_September_ , 20 _06_ A.D.

_Sheila M Kennedy_

**Notary Public in and for**

**THE STATE OF TEXAS**

SHEILA M KENNEDY
Notary Public, State of Texas
Typed or printed name of Notary
August 05, 2009
My commission Expires

MSJ – EXHIBIT D

*Sheri Bell*
*Sharon William*
*Edna Wright*

**COMPLAINT: General**

*end of may*

No. 60605-3000-0

**MUNICIPAL COURT**

**STATE OF TEXAS**

**IN AND FOR THE**

**CITY OF PALESTINE, TEXAS**

**V.**

**Jerry Laza, 1101 West Oak Street, Palestine, Texas 75801, DL. 10572883, Dob 8-5-1965**

**IN THE NAME AND BY AUTHORITY OF THE STATE OF TEXAS:**

In the **STATE OF TEXAS, COUNTY OF ANDERSON, CITY OF PALESTINE**, personally appeared before me, the undersigned authority, the undersigned affiant, who, after being by me duly sworn, deposes and says he has good reason to believe, and does believe, that **Jerry Laza, 1101 West Oak Street, Palestine, Texas 75801, DL.** ▮▮▮▮▮▮ **Dob 8-5-1965**, hereinafter called **DEFENDANT**, on or about the 3 day of June, 2005, and before the making and filing of this complaint in the **CITY OF PALESTINE, ANDERSON COUNTY, TEXAS**, did then and there unlawfully allow large black animal to run at large which is against city ordinance section 14-4 (animal running at large).

**AGAINST THE PEACE AND DIGNITY OF THE STATE.**

*Brenda Murray*

**AFFIANT – Brenda Murray**

**SUBSCRIBED AND SWORN TO BEFORE ME BY AFFIANT**, this the 6 day of June 2005

*Sheila M Boyd*

**NOTARY PUBLIC IN AND FOR THE STATE OF TEXAS**

My commission expires

SHEILA M. BOYD
Notary Public
STATE OF TEXAS
My Comm. Exp. 8-2-2005

**FILED: THIS THE** 6th **DAY OF** June, 20 05

*Helen Holland*

**MUNICIPAL COURT**
**CITY OF PALESTINE**

*199/*

MSJ – EXHIBIT D

**Affadavit of Probable Cause**

THE CITY OF PALESTINE

MUNICIPAL COURT

PALESTINE, TEXAS

## IN THE NAME AND BY THE AUTHORITY OF THE STATE OF TEXAS:

I, Brenda Murray, being duly sworn upon my oath and based upon personal knowledge, state that on or about June 3, 2005 and before the making and filing of a complaint, within the limits of the City of Palestine, Anderson County, Texas:

**Jerry Laza, 1101 West Oak Street, Palestine, Texas  75801, DL. ▓▓▓▓▓ Dob 8-5-1965:**

Did then and there unlawfully allow large black animal to run at large which is against city ordinance section 14-4 (animal running at large)

Against the Peace and Dignity of the State

_Brenda Murray_, Affiant

Printed name of Affiant: Brenda Murray

SUBSCRIBED AND SWORN to before me, this the ____6____ day of

__June__, 20 05 A.D.

_Sheila M Boyd_

Notary Public in and for

THE STATE OF TEXAS

SHEILA M. BOYD
Notary Public
STATE OF TEXAS
My Comm. Exp. 05-22-2006

Typed or printed name of Notary

My commission Expires

MSJ – EXHIBIT D

NO: _____

AFFIDAVIT OF PROBABLE CAUSE

IN THE CITY OF PALESTINE
MUNICIPAL COURT
PALESTINE, TEXAS

IN THE NAME AND BY AUTHORITY OF THE STATE OF TEXAS:

I, _____ , being duly sworn
upon my oath and based upon personal knowledge, state that on or
about day _26th_ month _august_ year _2003_
and before the making and filing of a complaint, within the
limits of the City of Palestine, Anderson County, Texas
_Jerry Raza_ , _1101 W. Oak St, Palestine, Tx 75801_
/(Name of Defendant)

[  ]   **Speeding offense.**  Did operate a motor vehicle upon
       a public street at a rate of speed of _____ miles
       per hour in a _____ mile per hour zone.

[  ]   **Traffic offense.**  Did drive and operate a motor
       vehicle upon _____
       a public street in the following manner to wit:

       _____
       _____

[ ✓ ]  **Other offense.**  Did commit the following offense:

       _____
       _____

       **How:** _allow weeds over 18 inches_
       **Where:** _1101 W. Oak St._
       **When:** _august 26, 2003_

Against the Peace and Dignity of the State

                    _Brenda Allen_ , Affiant
       Printed Name: _Brenda Allen_

SUBSCRIBED AND SWORN to before me, this the _27_ day of
_August_ , 19 _2003_ A.D.

                    _Sheila M Boyd_
       Notary Public in and for
       THE STATE OF TEXAS

                              SHEILA M. BOYD
                                Notary Public
       Typed or Printed Name of N STATE OF TEXAS
                              My Comm. Exp. 8-2-2005
       My Commission Exp                MSJ-EXHIBIT D

NO. 2524831

| STATE OF TEXAS | X | MUNICIPAL COURT |
| VS. | X | IN AND FOR THE |
| *Jerry Laza* | X | CITY OF PALESTINE, TEXAS |

IN THE NAME AND BY THE AUTHORITY OF THE STATE OF TEXAS:

IN THE STATE OF TEXAS, COUNTY OF ANDERSON, CITY OF PALESTINE, PERSONALLY APPEARED BEFORE ME, THE UNDERSIGNED AUTHORITY, THE UNDER-SIGNED AFFIANT WHO AFTER BEING BY ME DULY SWORN, DEPOSED AND SAYS HE HAS GOOD REASON TO BELIEVE, AND DOES BELIEVE, THAT *Jerry Laza, 1101 W. Oak St. Palestine Tx. 75801* HEREINAFTER CALLED DEFENDANT, ON OR ABOUT THE *26th* DAY OF *August* 19 *2003*, AND BEFORE THE MAKING AND FILING OF THIS COMPLAINT IN THE CITY OF PALESTINE, ANDERSON COUNTY, TEXAS, DID THEN AND THERE UNLAWFULLY *3265 Allow tall weeds On property over Eighteen inches*

TO-WIT, AT: *1101 W. Oak St.*
CONTRARY TO *Section 46-52 City code of Ordinance*

AGAINST THE PEACE AND DIGNITY OF THE STATE.

AFFIANT  *Brenda Allen*

SUBSCRIBED AND SWORN TO, BEFORE ME BY AFFIANT, THIS THE *27* DAY OF *August*, 19 *2003*.

SHEILA M. BOYD
Notary Public
STATE OF TEXAS
My Comm. Exp. 8-2-2005

NOTARY PUBLIC IN AND FOR
ANDERSON COUNTY, TEXAS

FILED: THIS THE _____ DAY OF _____, 19____

MUNICIPAL COURT
CITY OF PALESTINE

MSJ – EXHIBIT D

NO: _____

AFFIDAVIT OF PROBABLE CAUSE

IN THE CITY OF PALESTINE
MUNICIPAL COURT
PALESTINE, TEXAS

IN THE NAME AND BY AUTHORITY OF THE STATE OF TEXAS:

I, ___Steve Oldham___ , being duly sworn
upon my oath and based upon personal knowledge, state that on or
about day ___7___ month ___MAY___ year ___2003___
and before the making and filing of a complaint, within the
limits of the City of Palestine, Anderson County, Texas
___JERRY LAZA___ :
(Name of Defendant)

[  ]   **Speeding offense.** Did operate a motor vehicle upon
       a public street at a rate of speed of _____ miles
       per hour in a _____ mile per hour zone.

[  ]   **Traffic offense.** Did drive and operate a motor
       vehicle upon _____
       a public street in the following manner to wit:
       _____
       _____

[✓]   **Other offense.** Did commit the following offense:
       ___ZONING violAtioN  SectioN 15.17___

       **How:**  ___No ScreeNiNg FeNce___
       **Where:** ___1101 W. OAK St. / Palestine, TX 75801___
       **When:** ___5-7-03___

Against the Peace and Dignity of the State

___Steve Oldha___ , Affiant

       Printed Name: ___Steve Oldham___

SUBSCRIBED AND SWORN to before me, this the ___5___ day of

___May___ , 19 2003   A.D.

_____
Notary Public in and for
THE STATE OF TEXAS

SHEILA M. BOY~
Notary Pub~
STATE OF ~
~y Commissi~

Typed or Printed Name of Notary.
My Commission Expires _____

MSJ – EXHIBIT D

NO. _____

| | | |
|---|---|---|
| STATE OF TEXAS | X | MUNICIPAL COURT |
| VS. | X | IN AND FOR THE |
| _Jerry LAZA_ | X | CITY OF PALESTINE, TEXAS |

IN THE NAME AND BY THE AUTHORITY OF THE STATE OF TEXAS:

·IN THE STATE OF TEXAS, COUNTY OF ANDERSON, CITY OF PALESTINE, PERSONALLY APPEARED BEFORE ME, THE UNDERSIGNED AUTHORITY, THE UNDER-SIGNED AFFIANT WHO AFTER BEING BY ME DULY SWORN, DEPOSED AND SAYS HE HAS GOOD REASON TO BELIEVE, AND DOES BELIEVE, THAT _JERRY LAZA_

HEREINAFTER CALLED DEFENDANT, ON OR ABOUT THE __7__ DAY OF _MAY 2003_, AND BEFORE THE MAKING AND FILING OF THIS COMPLAINT IN THE CITY OF PALESTINE, ANDERSON COUNTY, TEXAS, DID THEN AND THERE UNLAWFULLY _ZONING Violation_ _15.17 - NO Screening Fence_

TO-WIT, AT: _1101 W. Oak Street_
CONTRARY TO _Section 15.17_

AGAINST THE PEACE AND DIGNITY OF THE STATE:

_____
AFFIANT

SUBSCRIBED AND SWORN TO, BEFORE ME BY AFFIANT, THIS THE __5__ DAY OF _May_, 2003.

SHEILA M. BO~
Notary Publi~
STATE OF ~
My Comm. Ex~

_____
NOTARY PUBLIC IN AND FOR
ANDERSON COUNTY, TEXAS

FILED: THIS THE _____ DAY OF _____, 19____.

MUNICIPAL COURT
CITY OF PALESTINE

MSJ – EXHIBIT D

**COMPLAINT:** <u>General</u>

No. CT000021

|  |  |
|---|---|
| **STATE OF TEXAS** | **MUNICIPAL COURT** |
| | **IN AND FOR THE** |
| **V.** | **CITY OF PALESTINE, TEXAS** |
| **Jerry Laza** | |

## IN THE NAME AND BY AUTHORITY OF THE STATE OF TEXAS:

In the **STATE OF TEXAS, COUNTY OF ANDERSON, CITY OF PALESTINE,** personally appeared before me, the undersigned authority, the undersigned affiant, who, after being by me duly sworn, deposes and says he has good reason to believe, and does believe, that **Jerry Laza**, hereinafter called **DEFENDANT**, on or about the 18 day of September, 2006, and before the making and filing of this complaint in the **CITY OF PALESTINE, ANDERSON COUNTY, TEXAS,** did then and there unlawfully violate the City Code of the City of Palestine Section 46-54, failure to keep the property at 1101 West Oak Street in Palestine, Texas, free from rubbish, trash, filth, and other impure or unwholesome matter.

## AGAINST THE PEACE AND DIGNITY OF THE STATE.

AFFIANT – Mark Amaral

SUBSCRIBED AND SWORN TO BEFORE ME BY AFFIANT, this the 15 day of September, 20 06

NOTARY PUBLIC IN AND FOR THE
STATE OF TEXAS
My commission expires

SHEILA M KENNEDY
Notary Public, State of Texas
My Commission Expires
August 05, 2009

FILED:   THIS THE 15 DAY OF September, 20 06.

MUNICIPAL COURT
CITY OF PALESTINE

MSJ – EXHIBIT D

COMPLAINT: <u>General</u>

No. CT000021

|                          | MUNICIPAL COURT              |
| STATE OF TEXAS           | IN AND FOR THE               |
| V.                       | CITY OF PALESTINE, TEXAS     |
| Jerry Laza               |                              |

**IN THE NAME AND BY AUTHORITY OF THE STATE OF TEXAS:**

In the **STATE OF TEXAS, COUNTY OF ANDERSON, CITY OF PALESTINE**, personally appeared before me, the undersigned authority, the undersigned affiant, who, after being by me duly sworn, deposes and says he has good reason to believe, and does believe, that **Jerry Laza**, hereinafter called **DEFENDANT**, on or about the 18 day of September, 2006, and before the making and filing of this complaint in the **CITY OF PALESTINE, ANDERSON COUNTY, TEXAS**, did then and there unlawfully violate the City of Palestine Zoning  Ordinance no. 0-20-92 Section 20.3 by use of the property at 1101 West Oak Street,in Palestine, Texas, in violation of the zoning laws of the City of Palestine, by using the property as a junkyard or salvage yard, which is not a permitted use in the zoning district in which 1101 West Oak Street is located..

**AGAINST THE PEACE AND DIGNITY OF THE STATE.**

AFFIANT – Mark Amaral

SUBSCRIBED AND SWORN TO BEFORE ME BY AFFIANT,  this the 15 day of September 20 06

NOTARY PUBLIC IN AND FOR THE
STATE OF TEXAS
My commission expires

SHEILA M KENNEDY
Notary Pub c, State of Texas
My Co mission Ex res
August 05, 2009

FILED:   THIS THE 15 DAY OF September, 20 06

MUNICIPAL COURT
CITY OF PALESTINE

MSJ – EXHIBIT D

**COMPLAINT: General**

No. CT000021

**MUNICIPAL COURT**

**STATE OF TEXAS**

**IN AND FOR THE**

**V.**

**CITY OF PALESTINE, TEXAS**

**Jerry Laza**

**IN THE NAME AND BY AUTHORITY OF THE STATE OF TEXAS:**

In the **STATE OF TEXAS, COUNTY OF ANDERSON, CITY OF PALESTINE,** personally appeared before me, the undersigned authority, the undersigned affiant, who, after being by me duly sworn, deposes and says he has good reason to believe, and does believe, that **Jerry Laza,** hereinafter called **DEFENDANT,** on or about the 18 day of September, 2006, and before the making and filing of this complaint in the **CITY OF PALESTINE, ANDERSON COUNTY, TEXAS,** did then and there unlawfully violate the City of Palestine Zoning Ordinance no. 0-20-92 Section 20.3 by use of the property at 1101 West Oak Street, in Palestine, Texas, in violation of the zoning laws of the City of Palestine, by using the property as a junkyard or salvage yard, which is not a permitted use in the zoning district in which 1101 West Oak Street is located..

**AGAINST THE PEACE AND DIGNITY OF THE STATE.**

AFFIANT – Mark Amaral

**SUBSCRIBED AND SWORN TO BEFORE ME BY AFFIANT,** this the 15 day of September 20 06.

NOTARY PUBLIC IN AND FOR THE
STATE OF TEXAS
My commission expires

SHEILA M. KENNEDY
Notary Public, State of Texas
My Commission Expires
Aug. 05, 2009

**FILED:** THIS THE 15 DAY OF September, 20 06.

**MUNICIPAL COURT**
**CITY OF PALESTINE**

MSJ – EXHIBIT D

No: CT000021

**Affadavit of Probable Cause**

**THE CITY OF PALESTINE**

**MUNICIPAL COURT**

**PALESTINE, TEXAS**

**IN THE NAME AND BY THE AUTHORITY OF THE STATE OF TEXAS:**

I, Mark Amaral, being duly sworn upon my oath and based upon personal knowledge, state that on or about September 18, 2006 and before the making and filing of a complaint, within the limits of the City of Palestine, Anderson County, Texas:

**Jerry Laza:**

Did then and there unlawfully violate the City of Palestine Zoning  Ordinance no. 0-20-92 Section 20.3 by use of the property at 1101 West Oak Street,in Palestine, Texas, in violation of the zoning laws of the City of Palestine, by using the property as a junkyard or salvage yard, which is not a permitted use in the zoning district in which 1101 West Oak Street is located.

**Against the Peace and Dignity of the State**

_MARK AMAZAC_ , Affiant

**Printed name of Affiant: Mark Amaral**

SUBSCRIBED AND SWORN to before me, this the ____ 15 ____ day of

_September_ , 20 06 A.D.

**Notary Public in and for**

**THE STATE OF TEXAS**

SHEILA M KENNEDY
Notary Public, State of Texas
Typed or printed name of Notary
August 05, 2009
My commission Expires

# EXHIBIT E

# CITY OF PALESTINE

## NOTICE OF VIOLATION

TO:   Jerry Laza                               Date of Notice:  April 6, 2016
      1101 West Oak Street
      Palestine, Texas 75801

### ADDRESSES OF VIOLATION:

| | |
|---|---|
| 1101 West Oak Street | Lots 24A, 25A, and 26A of Block B-5, Texas Land Company, Palestine, Texas |
| 1216 West Debard Street | Lots 29A, and 30A of Block B-5, Texas Land Company, Palestine, Texas |
| 1218 West Debard Street | Lots 38C, and 39C of Block B-5, Texas Land Company, Palestine, Texas |
| 402 Texas Avenue | Lot 40 of Block B-5, Texas Land Company, Palestine, Texas |
| 307 Fort Street | Lots 27A, and 28A of Block B-5, Texas Land Company, Palestine, Texas |
| 412 Texas Avenue | Lot 38D of Block B-5, Texas Land Company, Palestine, Texas |
| 1019 West Oak | Lots 20B and 20C of Block B-4, Texas Land Company, Palestine, Texas |

**You are hereby notified that the above referenced properties are in violation of the City Code of the City of Palestine.**

Specifically, these properties are in violation of **Section 46-52(a) and 46-52(b)**, which provide that the owner, occupier, or supervisor of property is responsible for mowing and maintaining the property so that all grasses and weeds are less than 12 inches high.

These properties are also in violation of **Section 46-54**, which provides that the owner, occupier, or supervisor of property shall keep the property free from "rubbish, trash, filth . . . or other impure or unwholesome matter." The huge mass of discarded lawnmowers on your property constitutes rubbish and trash, and you must, therefore, remove them from your property immediately.

These properties are also in violation of **Section 20.3** of the City's Zoning Ordinance, which prohibits the use of any land in the City of Palestine except in conformance with the zoning laws, in that the use that is occurring on the property is as a junkyard or salvage yard. A junkyard is defined as "an open area where

**NOTICE OF VIOLATION – Jerry Laza – Page 1**
{A47/06319/0030/W1391160.3 }

waste, used or secondhand materials are bought, sold, exchanged, stored, baled, packed, disassembled or handled . . ." The Certificate of Occupancy for your property is not for a junkyard, but for a lawnmower shop. In addition, a junkyard is not a permitted use in any of the zoning districts your property is in.

These properties are also in violation of the laws requiring the Planning and Zoning to approve a screening plan for the property; no such screening has been approved, therefore the property is in violation of **Section 15.11(2)** of Palestine's Zoning Ordinance.

These properties are also in violation of **Section 15.11(1)** of Palestine's Zoning Ordinance, as the portion of the property is closer to a federal highway and closer to a residential district than is permitted.

These properties are also in violation of S**ection 16.13(2)(c), (e), (f), and (g)**, as the storage or display of junked lawnmowers and other equipment is not properly screened, is on the street right-of-way, is not set back 10 feet from the curb, is on an unimproved surface, and is in front of the primary building.

These properties are also in violation of **Section 14-13,** as you are keeping livestock (defined to include horses and goats) on property that is not an agricultural area.

These properties are also in violation of **Section 46-186**, as there are junked motor vehicles (defined to include boats and personal watercraft) on the property that are defined by the ordinance as a public nuisance.

These properties are also in violation of **Section 86-6**, as the owner of the properties has shown, exhibited, and displayed goods, wares, and merchandise on the public sidewalk.

These properties are also in violation of **Section 82-4**, as the properties have not been kept clean, free, and clear of all garbage, trash, and rubbish, and the owner has failed to dispose of other articles and accumulations that have caused such properties to become insanitary and unsightly.

These properties are also in violation of **Section 82-26** as the owner of the properties has placed garbage, trash, or rubbish on streets, alleys, and sidewalks, and has failed to keep the alleys, streets, and sidewalks abutting the properties free and clear of all such garbage, trash, and rubbish.

You are also notified that future violations within one year of the date listed above may be addressed by posting a notice such as this one at the affected property.

You are notified that to comply with the provisions of the ordinances listed above, you are required to remove all inoperable lawn mowers, go-carts, all-terrain vehicles, motor vehicles, motorboats, personal watercraft, and other equipment, along with any other debris or trash (with

**NOTICE OF VIOLATION – Jerry Laza – Page 2**
{A47/06319/0030/W1391160.3 }

MSJ – EXHIBIT E

the exception of lawn mowers and other equipment you are in the process of repairing for a customer), and dispose of them in compliance with state law. You are not permitted to dispose of inoperable equipment on your property, or to store such equipment for more than a reasonable time (such as 10 days) pending disposal at some other location.

You are notified that if you do not remove all trash, rubbish, filth, and other impure or unwholesome matter from your property within 10 days after the date of this letter, the city may clean the property up itself, may charge the expenses of the cleanup to you, and may place a preferential lien on the property for such expenses.

If you claim that you are neither the owner nor the person in charge of one or more of these properties, please inform the City of that fact as soon as possible.

If you wish to challenge the determination of the Building Official of the City of Palestine in this regard, you may do so by filing an appeal to the Board of Adjustment within 10 days of this notice.

The City reserves all rights to choose other methods of enforcement, including a criminal complaint for violations of the City Code, enforcement by state environmental agencies, a civil action for nuisance abatement, or any other legally permissible method.

Code Enforcement Department
City of Palestine

**NOTICE OF VIOLATION – Jerry Laza – Page 3**
{A47/06319/0030/W1391160.3 }

## COMPLETE THIS SECTION ON DELIVERY

**A. Signature**

X

☐ Agent
☐ Addressee

**B. Received by** *(Printed Name)*

**C. Date of Delivery**

**D. Is delivery address different from item 1?** ☐ Yes
If YES, enter delivery address below: ☐ No

**3. Service Type**
☑ Certified Mail®
☐ Registered
☐ Insured Mail
☐ Priority Mail Express™
☐ Return Receipt for Merchandise
☐ Collect on Delivery

**4. Restricted Delivery?** *(Extra Fee)* ☐ Yes

## SENDER: COMPLETE THIS SECTION

- Complete items 1, 2, and 3. Also complete item 4 if Restricted Delivery is desired.
- Print your name and address on the reverse so that we can return the card to you.
- Attach this card to the back of the mailpiece, or on the front if space permits.

**1. Article Addressed to:**

Jerry Lara
1101 West Oak Street
Palestine, Tx. 75801

**2. Article Number**
*(Transfer from service label)*

7014 2870 0000 7459 7670

PS Form 3811, July 2013          Domestic Return Receipt

MSJ – EXHIBIT E

# EXHIBIT F

EXHIBIT 1

NO. <u>DCCV16-356-349</u>

| | | |
|---|---|---|
| CITY OF PALESTINE, TEXAS | § | IN THE 349TH JUDICIAL DISTRICT |
| PLAINTIFF, | § | |
| | § | |
| V. | § | COURT OF |
| | § | |
| JERRY LAZA, | § | |
| | § | ANDERSON COUNTY, TEXAS |
| DEFENDANT | § | |

<u>JUDGMENT</u>

On September 18, 2017, this cause came on to be heard and City of Palestine, Texas, the Plaintiff, appeared in person and by attorney and announced ready for trial and Jerry Laza, the defendant, appeared in person and by attorney of record and announced not ready for trial. A jury having been previously demanded, a jury consisting of 12 qualified jurors was duly empaneled and the case proceeded to trial.

At the conclusion of the evidence, the court submitted the questions of fact in the case to the jury. The charge of the court and the verdict of the jury are incorporated for all purposes by reference. Because it appears to the court that the verdict of the jury was for the Plaintiff, City of Palestine, Texas, and against the Defendant, Jerry Laza, judgment should be rendered on the verdict in favor of the Plaintiff, City of Palestine, Texas, against the Defendant, Jerry Laza.

**IT IS THEREFORE ORDERED** by the court that the City of Palestine, Texas have and recover from Jerry Laza as civil penalties the sum of One Hundred Sixty-Three Thousand One Hundred Fifty-Five Dollars ($163,155.00).

<u>JUDGMENT</u> – Page 1

The Court further finds that based on the jury's answers to jury questions 1, 2, 2C, 3, 4, 5, 6, 7, 8, 9, and 10 that the City of Palestine, Texas, Plaintiff is entitled to equitable relief against Jerry Laza, Defendant.

Having considered the evidence and arguments, and having received and accepted the verdict of the jury, the court finds and concludes that the Plaintiff, the City of Palestine, Texas is entitled to the relief hereinafter given.

**IT IS, THEREFORE, ORDERED** that the Defendant Jerry Laza be, and hereby is, commanded to cease and refrain from all the following:

- storing materials or merchandise on the Lot 40 of Block B-5, Texas Land Company, Palestine, Texas, also known as 402 Texas Avenue, Lots 27A and 28A of Block B-5, Texas Land Company, Palestine, Texas, also known as 307 North Fort, and Lot 26R of Block B-5, Texas Land Company, Palestine, Texas, (the "Residential Lots"), specifically;

  - storing more than two lawnmowers and one other piece of small-engine equipment (such as a four-wheeler, golf cart, or jet ski) on any residential lot.

  - storing more than two motor vehicles and one trailer on any residential lot;

- storing materials or merchandise within 10 feet of the right of way on the Lots 23B, 24A, 25A, and 26A of Block B-5, Texas Land Company, Palestine, Texas, also known as 1101 West Oak and Lots 20B and 20C of Block B-4, Texas Land

**JUDGMENT** – Page 2

Company, Palestine, Texas, also known as 1019 West Oak (the "Commercial Lots");

- storing materials or merchandise in front of the primary buildings located on the Commercial Lots. The "primary building on 1101 West Oak is defined as the masonry building that is located within 30 feet of the road surface of West Oak, and being the building on 1101 West Oak which is closest to the road surface of West Oak. The "front" of both buildings is defined at that part of the building facing West Oak;

- storing materials or merchandise on any unimproved surfaces, or on any surface that is not improved with materials such as concrete, asphalt, concrete pavers, or dust-free crushed rock, on the Commercial Lots (dirt, grass, and gravel are, for the purposes of this injunction, "unimproved surfaces");

- storing materials or merchandise on the Commercial Lots that is not screened from residential lots by a wooden fence (or other substantial type wall or fence material, supported by a frame or base constructed of concrete, metal, or other substantial material, and not readily subject to damage by operations within the enclosure or by the effects of winds or other weather elements);

- storing materials or merchandise on 1019 West Oak unless and until Mr. Laza obtains a certificate of occupancy for the operation of a lawnmower shop or any other commercial activity on 1019 West Oak;

- operating a junkyard or salvage yard on the Commercial Lots, specifically:

**JUDGMENT – Page 3**

o storing outside more than 50 pieces of small engine equipment (such as a lawnmower, four-wheeler, golf cart, chain saw, motorcycle, or jet ski) on 1101 West Oak;

o storing outside more than 20 pieces of small engine equipment (such as a lawnmower, four-wheeler, golf cart, chain saw, motorcycle, or jet ski) on 1019 West Oak, if a certificate of occupancy for a lawnmower repair shop is issued for 1019 West Oak; or

o storing outside scrap iron or other metals, appliances, or other used or secondhand materials and merchandise;

- on the Residential Lots or the Commercial Lots:

  o keeping of livestock, which is defined as any animal other than fowl raised for agricultural purposes, including horses, mules, donkeys, hogs, sheep, cattle, goats, emus, ostriches, and rheas;

  o keeping any inoperable motor vehicle;

  o allowing weeds to grow over 12 inches high; and

  o creating a rat harborage by allowing trash and rubbish – or anything other than lawnmowers and small engine equipment as allowed herein - to accumulate outdoors on the property.

**IT IS FURTHER ORDERED** that the Defendant Jerry Laza be, and hereby is, commanded to:

**JUDGMENT** – Page 4

- permit City of Palestine Code Enforcement personnel to enter the Property (outside any building) between the hours of 8 a.m and 5 p.m., Monday through Friday, no more frequently than once per calendar month, to determine compliance with this injunction;

- start and move any motor vehicle on the property to demonstrate that it is not inoperable upon request of City of Palestine Code Enforcement personnel; and

- comply completely with this order by no later than the 16th day of April, 2018.

**IT IS FURTHER ORDERED** that the total amount of the judgment here rendered will bear interest at the rate of five percent (5%) from the date of the judgment until paid.

All costs of court spent or incurred in this cause are adjudged against Jerry Laza, the Defendant.

All writs and processes for the enforcement and collection of this judgment or the costs of court may issue as necessary.

The clerk shall forthwith, when requested by the Plaintiff, City of Palestine, Texas, issue a writ of injunction and conform it with the law and the terms of this judgment.

**SIGNED** this _19th_ day of February, 2018.

JUDGE PRESIDING

**JUDGMENT** – Page 5

# EXHIBIT G

# NO. 12-17-00280-CV

# IN THE COURT OF APPEALS

# TWELFTH COURT OF APPEALS DISTRICT

# TYLER, TEXAS

| | | |
|---|---|---|
| *IN RE:* | § | |
| *JERRY LAZA,* | § | *ORIGINAL PROCEEDING* |
| *RELATOR* | § | |

### *MEMORANDUM OPINION*
### *PER CURIAM*

Jerry Laza filed this original proceeding to challenge the trial court's denial of his motion to show authority.[1]  In a subsequently filed motion for emergency stay, Laza stated that the City of Palestine filed a notice of removal to federal court on September 18, 2017.  Because of the removal to federal court, this Court took no action on the motion.  On December 15, we informed Laza that "[p]ursuant to 28 U.S.C. 1446(d) notice is hereby given that the petition, as indicated by the motion for stay, received in this proceeding does not show the jurisdiction of this Court, to-wit: the case has been removed to federal court and the federal court now has exclusive jurisdiction over the case."  We informed Laza that the petition would be dismissed unless amended on or before December 19 to show this Court's jurisdiction. That deadline has passed, and Laza has not responded to this Court's December 15 notice.

Once a notice of removal is filed, it "shall effect the removal and the State court shall proceed no further unless and until the case is remanded."  28 U.S.C. 1446(d); *see In re Sw. Bell Tel. Co., L.P.*, 235 S.W.3d 619, 624 (Tex. 2007) ("[f]rom the time the case was removed to federal court until it was remanded to state court, the state court was prohibited from taking further action[]").  "Following removal, the federal court has exclusive jurisdiction over the action."  *J.P. Morgan Chase Bank, N.A. v. Del Mar Properties, L.P.*, 443 S.W.3d 455, 460

---

[1] Respondent is the Honorable Dwight L. Phifer, assigned judge for the 349th Judicial District Court in Anderson County, Texas.  The Real Party in Interest is the City of Palestine.

(Tex. App.—El Paso 2014, no pet.).   Accordingly, the City's notice of removal effected the removal and vested the federal court with exclusive jurisdiction over the case.   *See* 28 U.S.C. 1446(d); *see also **In re Sw. Bell Tel. Co., L.P.***, 235 S.W.3d at 624; ***J.P. Morgan Chase Bank, N.A.***, 443 S.W.3d at 460.   Thus, we lack jurisdiction over this proceeding and Laza's petition for writ of mandamus is ***dismissed for want of jurisdiction***.

Opinion delivered January 3, 2018.
*Panel consisted of Worthen, C.J., Hoyle, J., and Neeley, J.*

(PUBLISH)

2



# COURT OF APPEALS

# TWELFTH COURT OF APPEALS DISTRICT OF TEXAS

# JUDGMENT

### JANUARY 3, 2018

### NO. 12-17-00280-CV

**JERRY LAZA,**
Relator
V.

**HON. DWIGHT L. PHIFER,**
Respondent

---

### ORIGINAL PROCEEDING

---

ON THIS DAY came to be heard the petition for writ of mandamus filed by Jerry Laza; who is the relator in Cause No. DCCV16-356-349, pending on the docket of the 349th Judicial District Court of Anderson County, Texas.  Said petition for writ of mandamus having been filed herein on September 18, 2017, and the same having been duly considered, because it is the opinion of this Court that it lacks jurisdiction, it is therefore CONSIDERED, ADJUDGED and ORDERED that the said petition for writ of mandamus be, and the same is, hereby **dismissed for want of jurisdiction**.

By *per curiam* opinion.
*Panel consisted of Worthen, C.J., Hoyle, J. and Neeley, J.*

3

# EXHIBIT H

ACCEPTED
12-17-00280-CV
TWELFTH COURT OF APPEALS
TYLER, TEXAS
9/18/2017 5:51 AM
Pam Estes
CLERK

No._____

IN THE

COURT OF APPEALS FOR

THE 12TH JUDICIAL DISTRICT OF TEXAS AT TYLER

In re Jerry Laza,

Relator

PETITION FOR WRIT OF MANDAMUS

James C. Mosser
Mosser Law PLLC
Texas Bar No. 00789784
Nicholas D. Mosser
Texas Bar No. 24075405
Email:CourtDocuments@MosserLaw.com
2805 Dallas Parkway
Suite 222
Plano, Texas 75093
Tel. (972) 733-3223
Fax. (972) 473-0600
ATTORNEYS FOR RELATOR

**RELATORS REQUEST ORAL ARGUMENT**

PETITION FOR WRIT OF MANDAMUS                                    Page 1

Copy from re:SearchTX

MSJ – EXHIBIT H

## PETITION FOR WRIT OF MANDAMUS

PLEADING IDENTIFIED. This is a petition requesting a writ of mandamus against the Honorable Dwight Phifer, Senior Judge of The 2nd District Court assigned to the 349th District Court of Anderson County, Texas, Cause Number DCCV16-356-349, styled City of Palestine v. Jerry Laza.

This petition is filed by Jerry Laza.

## IDENTITY OF THE PARTIES AND COUNSEL

The following is a complete list of the parties, the attorneys, and any other person who has an interest in the outcome of this lawsuit:

1.      Relator. The relator is Jerry Laza who is a resident of Anderson County, Texas.

2.      List of Interested Parties.

      a.      Relator: Jerry Laza 1101 W Oak St, Palestine, TX 75801.

      b.      Respondent: Honorable Dwight Phifer, Senior Judge of The 2nd District Court sitting by assignment to the 349th District Court of Anderson County, Texas, whose address is 349th District Court, 500 N. Church Street, Suite 30, Palestine, Texas 75801

      c.      Real Party in Interest: City of Palestine, Anderson County Texas, whose address is City of Palestine, 504 N. Queen Street Palestine, TX 75801.

3.      Relator Jerry Laza is represented by:
      James C. Mosser
      Attorney in Charge
      Mosser Law PLLC
      Texas Bar No. 00789784
      Nicholas D. Mosser
      Texas Bar No. 24075405

Copy from re:SearchTX

MSJ – EXHIBIT H

Email:CourtDocuments@MosserLaw.com
2805 Dallas Parkway
Suite 222
Plano, Texas 75093
Tel. (972) 733-3223
Fax. (972) 473-0600

Robert Hindman Esq.
5620 Old Bullard Road, Ste. 105
Tyler, Texas 75703
State Bar No. 09684500
E-Mail: attornev@tyler.net
Telephone: 903) 581-9960
Facsimile: 903) 534-0647

4.    Real Party in Interest City of Palestine Represented by:

James D. Hankins
606 E. CRAWFORD STREET
PALESTINE, TX 75802-2048
Tel. (903)729-2102
Fax. (903)731-4732
Email:jdh@jameshankinslaw.com

PETITION FOR WRIT OF MANDAMUS                                    Page 3

Copy from re:SearchTX

MSJ – EXHIBIT H

Table of Contents

PETITION FOR WRIT OF MANDAMUS. . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

**RELATORS REQUEST ORAL ARGUMENT**. . . . . . . . . . . . . . . . . . . . . . 1

PETITION FOR WRIT OF MANDAMUS. . . . . . . . . . . . . . . . . . . . . . . . . . . 2
    PLEADING IDENTIFIED. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2
    IDENTITY OF THE PARTIES AND COUNSEL. . . . . . . . . . . . . . . . 2

Relator. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2

List of Interested Parties. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2
    Relator: Jerry Laza . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2
    Respondent: Honorable Dwight Phifer. . . . . . . . . . . . . . . . . . . . . 2
    Real Party in Interest: City of Palestine. . . . . . . . . . . . . . . . . . . . 2

Relator Jerry Laza is represented by:
    James C. Mosser

    . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2

Real Party in Interest City of Palestine Represented by:
    James D. Hankins.. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3

Table of Contents. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4

Table of Authorities. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6
    CASES. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6
    STATE STATUTES. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7
    OTHER AUTHORITIES. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8

Statement of the Case. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10

Nature of the Underlying Proceeding. . . . . . . . . . . . . . . . . . . . . . . . . . 10

Respondent, is the Honorable Dwight Phifer. . . . . . . . . . . . . . . . . . . . 11

Relief Sought. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11

Copy from re:SearchTX

MSJ – EXHIBIT H

Statement of Jurisdiction.. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . [12](#)

Issue Presented. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . [12](#)
    When a Rule 12 motion challenges . . . . . . . . . . . . . . . . . . . . . . . [12](#)

Statement of Facts With Record References. . . . . . . . . . . . . . . . . . . . . [13](#)

Argument. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . [14](#)
    Standard of Review: Availability of Mandamus Relief.. . . . . . . . . . . [14](#)

Prayer: . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . [22](#)

CERTIFICATION. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . [23](#)

APPENDIX. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . [24](#)

Copy from re:SearchTX

MSJ – EXHIBIT H

Table of Authorities

CASES

*In re Columbia Med. Ctr. of Las Colinas,* 290 S.W.3d 204, 207 (Tex.2009) (orig.proceeding). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 15

*In re Dep't of Family & Protective Servs.,* 273 S.W.3d 637, 642–43 (Tex.2009) (orig.proceeding). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 15

*Walker v. Packer,* 827 S.W.2d 833, 840 (Tex.1992). . . . . . . . . . . . . . . . 15

*Central Power & Light Co. v. City of San Juan*, 962 S.W.2d 602 (Tex. App.-Corpus Christi 1998, rev. dism'd w.o.j.). . . . . . . . . . . . . . . . . . . . . . 20

*City of Brenham v. Brenham Water Co., 67 Tex. 542, 553, 554,4 S.W. 143* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 21

*City of Fort Worth v. Lillard* (Civ.App. 1925) 272 S.W. 577, error granted, affirmed 116 Tex. 509, 294 S.W. 831. . . . . . . . . . . . . . . . . . . . . . . . . . . . 19

*Crawford v. State*, 153 S.W.3d 497, 500 (Tex.App.-Amarillo 2004, no pet.) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 18

*Foster v. City of Waco, 113 Tex. 352, 255 S.W. 1104*. . . . . . . . . . . . . . 20

*Foster v. City of Waco*, 255 S.W. 1104, 1106 (Tex. 1923). . . . . . . . . . . 21

*In re Daredia*, 317 S.W.3d 247, 250 (Tex.2010) (orig.proceeding). . . . . 18

*In re McAllen Med. Ctr.*, Inc., 275 S.W.3d 458, 464 (Tex.2008) (orig.proceeding). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 15

*In re Prudential Ins. Co. of Am.*, 148 S.W.3d 124, 137 (Tex. 2004). . . . 17

*In re Salazar*, 315 S.W.3d 279, 287 (Tex. App.--Fort Worth 2010). . . . . 15

*In re Sassin*, 511 S.W.3d 121, 125 (Tex. App.--El Paso 2014). . . . . . . . 18

Copy from re:SearchTX

MSJ – EXHIBIT H

*In re Sw. Bell Tel. Co.*, 35 S.W.3d at 605; see *In re Dickason*, 987 S.W.2d 570, 571 (Tex.1998) (orig.proceeding) (per curiam). . . . . . . . . . . . . . . . [18](#)

Mapco, Inc. v. Forrest, 795 S.W.2d 700, 703 (Tex.1990) (providing that any judicial action by a court without jurisdiction is void). . . . . . . . . . . . . . . . [19](#)

*Parker Cty.'s Squaw Creek Downs, L.P. v. Watson*, 2-08-255-CV, 2009 WL 885941, at *3 (Tex. App.--Fort Worth Apr. 2, 2009). . . . . . . . . . . . . . . [19](#)

*Patton Children's Trust v. Hamlin, No. 07–07–0488–CV, 2008 WL 3863475* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . [18](#)

*Perry v. Ponder*, 604 S.W.2d 306, 322 (Tex.Civ.App.-Dallas 1980, no writ) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . [19](#)

*Spigener v. Wallis, 80 S.W.3d 174, 184 (Tex.App.-Waco 2002, no pet.)* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . [18](#)

*Stirman v. City of Tyler, 443 S.W.2d 354, 354 (Tex. Civ. App.-Tyler 1969, writ ref'd n.r.e.).* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 20[](#)

*The Citizens Bank v. The City of Terrell, 78 Tex. 456 [78 Tex. 456], 14 S.W. 1003.* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . [21](#)

*Zachry v. City of San Antonio*, 296 S.W.2d 299, 301 (Tex. Civ. App.--San Antonio 1956), writ granted, aff'd, 305 S.W.2d 558 (Tex. 1957). . . . . . . . [20](#)

*STATE RULES*

*Tex. R. Civ. P. 12.* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . *[10](#), [12](#)*

*STATE STATUTES*

*TEX. GOVT. CODE § 22.201.* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . *[12](#)*

*TEX. GOVT. CODE § 22.221.* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . *[12](#)*

*TEX. GOVT. CODE § 24.495.* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . *[12](#)*

Copy from re:SearchTX

MSJ – EXHIBIT H

*OTHER AUTHORITIES*

*52 Tex. Jur. 3d Municipal Corporations § 245.* . . . . . . . . . . . . . . . . . . . . *20*

*19 R.C.L., § 75.* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . *21*

*28 Cyc. p. 1533..* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . *21*

*I Dillon on Municipal Corporations, (5th ed), § 237.* . . . . . . . . . . . . . . . . *21*


PETITION FOR WRIT OF MANDAMUS                                            Page 8

Copy from re:SearchTX

MSJ – EXHIBIT H

## Statement of the Case

1.   This application for the Writ of Mandamus stems from the denial of a
     motion to show authority under Tex. R. Civ. P. 12[1], complaining, by
     sworn written motion stating that the City Attorney did not have the
     requisite authority from the City Council of the City of Palestine,
     Texas to prosecute the underlying lawsuit. At the Rule 12, hearing no
     evidence was produced demonstrating that the City Council had ever
     passed an ordinance or resolution by a majority vote authorizing the
     filing or prosecution of the underlying lawsuit, Cause Number
     DCCV16-356-349, styled City of Palestine v. Jerry Laza. Neither has
     the City Council ever passed an ordinance or resolution by a majority
     vote authorizing the City Attorney or the City Manager to sign "legal
     documents" related to this litigation. The testimony by the City
     Attorney, at the hearing clearly demonstrates that there is no such
     ordinance or resolution. Appx 1. P6L15-20, P7L8-18. Appx 3. Appx 8.

2.   **Nature of the Underlying Proceeding**:

     a.   The Plaintiff (Real Party in Interest) the City of Palestine sues

---

[1] Tex. R. Civ. P. 12 may be abbreviated herein as Rule 12.

Copy from re:SearchTX                                    MSJ – EXHIBIT H

the Defendant (Relator) seeking injunctive relief concerning claims by the Real Party in Interest alleging violations of city codes and ordinances. Appx 4. Page5. This lawsuit was filed on or about October 2016 and amended on June 6, 2017. Id.

b.    Relator has been conducting business in the same manner, at the same location for a period spanning 20 years of occupancy, since 1998. Appx 9. Page200 Line7-22.[2]

c.    Relator challenged the authority of the City Attorney to bring the subject lawsuit and the City's standing in the trial court. Appx 5 P1-3, Appx 7. P5 Paragraphs 9,-14.

d.    The Rule 12 Motion was denied. Appx. 6.

e.    The Relator requested a continuance on September 15, 2017, the motion was denied. Appx 9.

f.    The case is now set for trial on September 18, 2017. Id.

3.    **Respondent**, is the Honorable Dwight Phifer, Senior Judge of the 2nd Judicial District Court sitting by assignment to the 349th District Court of Anderson County, Texas, whose address is 349th District Court, 500 N. Church Street, Suite 30, Palestine, Texas 75801.

---

[2] Following herein, Page is denoted as P and Line as L.

PETITION FOR WRIT OF MANDAMUS                                        Page 10

Copy from re:SearchTX

4.  **Relief Sought**. Relator Laza, seeks relief from the order denying his Tex. R. Civ. P. 12, motion to show authority of Attorney Ronald Stutes and that Stutes is acting without due authority of the City of Palestine's, duly elected city council, and grant the Rule 12 and dismiss the case.

5.  **Statement of Jurisdiction**: This Court has jurisdiction to issue a writ of mandamus. TEX. GOVT. CODE § 22.221(b)(1). That section permits this Court to issue a writ of mandamus against a judge of a district court in the court of appeals district. Andersons County is within the 12th Court of Appeals District. TEX. GOVT. CODE § 22.201(m). The 349th Judicial District Court is in Anderson and Houstio County. TEX. GOVT. CODE § 24.495. Thus, the 349th Judicial District Court is within this Court's Appeals District.

6.  **Issue Presented**

    a.  When a Rule 12 motion challenges an attorney's authority to represent a Home Rule City, the attorney is required to prove the existence of an ordinance or resolution passed by a majority vote of the City Council authorizing the City Attorney or the City Manager to sign "legal documents" related to this

PETITION FOR WRIT OF MANDAMUS                                    Page 11

Copy from re:SearchTX

MSJ – EXHIBIT H

litigation.

7. **Statement of Facts With Record References**

a. The Plaintiff (Real Party in Interest) the City of Palestine sues the Defendant (Relator) seeking injunctive relief concerning claims by the Real Party in Interest alleging violations of city codes and ordinances. Appx 4. Page5.

b. This lawsuit was filed on or about October 2016 and amended on June 6, 2017. Id.

c. Relator has been conducting business in the same manner, at the same location for a period spanning 20 years of occupancy, since 1998. Appx 9. Page200 Line7-22.

d. Relator challenged the authority of the City Attorney to bring the subject lawsuit and the City's standing in the trial court. Appx 5 P1-3, Appx 7. P5 Paragraphs 9,-14.

e. The Rule 12 Motion was denied. Appx. 6.

f. The Relator requested a continuance on September 15, 2017, the motion was denied. Appx 9.

g. The case is now set for trial on September 18, 2017. Id.

h. During the Rule 12 hearing on June 2, 2017 the City Attorney

PETITION FOR WRIT OF MANDAMUS                                           Page 12

Copy from re:SearchTX

offered his sworn testimony and an incompetent hearsay

affidavit from the City Manager, which was objected to. Appx 1.

P9L17. The affidavit, Appx 2., was not offered or admitted

previously.

i.      The City Attorney testified as follows: Appx 1. P78-18.

> Q. (BY MR. MOSSER) Mr. Stutes, is
> there a city
> ordinance that allows you to file this
> lawsuit on behalf
> of the City of Palestine against Mr. Laza
> for injunctive
> relief?
> A. Not that I know of.
> Q. Is there any city resolution by
> majority of the
> city counsel of the City of Palestine?
> A. No.
> Q. Have you ever seen one?
> A. My testimony was there is not one,
> so that would indicate I have not seen
> one.

j.      There is no ordinance that permits the filing of this lawsuit, and

there is no ordinance that allows the City Manager to sign any

legal instrument related to this lawsuit. Appx 1. P78-18. See

Appx 3. Sec. 6.3.(e).

8.    Argument

PETITION FOR WRIT OF MANDAMUS                                    Page 13

Copy from re:SearchTX

a.   Standard of Review: Availability of Mandamus Relief.

Mandamus relief is proper only to correct a clear abuse of

discretion when there is no adequate remedy by appeal. *In re*

*Columbia Med. Ctr. of Las Colinas,* 290 S.W.3d 204, 207

(Tex.2009) (orig.proceeding). A trial court abuses its discretion

if it incorrectly interprets or improperly applies the law. *In re*

*Dep't of Family & Protective Servs.,* 273 S.W.3d 637, 642–43

(Tex.2009) (orig.proceeding); *Walker v. Packer,* 827 S.W.2d

833, 840 (Tex.1992).

   i.   "An appeal after final judgment would be inadequate

      because the time and money for trial as the parties are

      currently named and aligned would be wasted in enduring

      a proceeding that concludes without a binding judgment.4

      Therefore, we hold that Relators do not have an

      adequate remedy by appeal." *In re Salazar*, 315 S.W.3d

      279, 287 (Tex. App.--Fort Worth 2010).

b.   Whether a clear abuse of discretion can be adequately

remedied by appeal depends on a careful analysis of costs and

benefits of interlocutory review. *In re McAllen Med. Ctr.*, Inc.,

PETITION FOR WRIT OF MANDAMUS                                    Page 14

Copy from re:SearchTX

MSJ – EXHIBIT H

275 S.W.3d 458, 464 (Tex.2008) (orig.proceeding).

i.      If the City Attorney does not have authority to file and prosecute the present lawsuit, it is ultra vires conduct.

ii.     If the City Manager does not authority to sign legal instruments, then the City Attorney does not have authority to prosecute the lawsuit.

iii.    Consequently the City would not be liable to the defendant because any decision at trail or on appeal would be void, because the City Council did not authorize the conduct related to the lawsuit.

iv.     Significant expenses have already be undertaken because of this lawsuit and the unauthorized conduct of the City Attorney and the City Manager.

v.      In this case it is important to preserve the relator's substantive and procedural rights and allow the this appellate court to direction to the law that would otherwise probably not be available or more difficult on appeal the final judgment, and the continuing litigation related to the relator's counter-claims. Also, since this a

Copy from re:SearchTX

MSJ – EXHIBIT H

political subdivision of the state of Texas and a Home Rule Municipality the public time and money is involved as well as that of the Relator. If in fact the City Attorney or the City Manager have no authority and there is no ordinance from the City Council authorizing the subject conduct, the relator's time and the public time and money must be spared instead of being wasted through trial, and appeal. "Prudent mandamus relief is also preferable to legislative enlargement of interlocutory appeals. The unavailability of mandamus relief increases the pressure for expanded interlocutory appeals." *In re Prudential Ins. Co. of Am.*, 148 S.W.3d 124, 137 (Tex. 2004).

c.   The City Attorney was required to produce evidence of his authority to represent the City of Palestine, the Plaintiff. He produced no ordinance and no resolution of the City Council. The City of Palestine is ostensibly the client. He produced no affidavit authorize by a ordinance or resolution of the City Council. "Typically, a challenged attorney satisfies his burden if he produces an affidavit or testimony from his client indicating

PETITION FOR WRIT OF MANDAMUS                                        Page 16

Copy from re:SearchTX

the attorney was retained to provide representation in the case." *See Patton Children's Trust v. Hamlin,* No. 07–07–0488–CV, 2008 WL 3863475, at *4 (Tex.App.-Amarillo Aug. 20, 2008, no pet.); *Boudreau,* 115 S.W.3d at 742; *Spigener v. Wallis,* 80 S.W.3d 174, 184 (Tex.App.-Waco 2002, no pet.). *In re Sassin*, 511 S.W.3d 121, 125 (Tex. App.--El Paso 2014).

d.  Where the trial court has issued a void order, a relator need not show he lacks an adequate remedy by appeal, and mandamus relief is appropriate. *In re Sw. Bell Tel. Co.*, 35 S.W.3d at 605; see *In re Dickason*, 987 S.W.2d 570, 571 (Tex.1998) (orig.proceeding) (per curiam). Relief may be granted to set aside an order issued on the merits of a case after the trial court's plenary power expires. *In re Daredia*, 317 S.W.3d 247, 250 (Tex.2010) (orig.proceeding).

e.  If the City Attorney does not have the requisite authority to file the subject litigation the trial court never acquires subject matter jurisdiction. "It is fundamental that a court must have jurisdiction over the parties and the subject matter before it or

PETITION FOR WRIT OF MANDAMUS                                    Page 17

MSJ – EXHIBIT H

else any judgment it renders is void. *Crawford v. State*, 153 S.W.3d 497, 500 (Tex.App.-Amarillo 2004, no pet.); see also Mapco, Inc. v. Forrest, 795 S.W.2d 700, 703 (Tex.1990) (providing that any judicial action by a court without jurisdiction is void)." *Parker Cty.'s Squaw Creek Downs, L.P. v. Watson*, 2-08-255-CV, 2009 WL 885941, at *3 (Tex. App.--Fort Worth Apr. 2, 2009). "For a trial court to have jurisdiction over a party, the party must be properly before the court in the pending controversy as authorized by procedural statutes and rules." *Perry v. Ponder*, 604 S.W.2d 306, 322 (Tex.Civ.App.-Dallas 1980, no writ).

f.   The City of Palestine may act only by ordinance or resolution. "The power of a municipal corporation cannot exceed that conferred by charter, and all ordinances must be in subordination thereto; all acts done by municipal corporation beyond powers conferred on it by its charter are void; Fair and reasonable doubts concerning existence of power of municipal corporation are resolved against corporation and power denied." *City of Fort Worth v. Lillard* (Civ.App. 1925) 272 S.W.

PETITION FOR WRIT OF MANDAMUS                                    Page 18

Copy from re:SearchTX

577, error granted, affirmed 116 Tex. 509, 294 S.W. 831.

"Neither the municipality nor its officers may perform any act,

make any contract, nor incur any liability that is not authorized

by the charter or by some legislative act." See 52 Tex. Jur. 3d

Municipal Corporations § 245. "A city possesses powers not

denied by statute or constitution so long as the city has

incorporated those powers in its charter. Foster v. City of

Waco, 113 Tex. 352, 255 S.W. 1104. Stated negatively, a city's

failure to include in its charter a certain power, is a self-denial

of the power. *Zachry v. City of San Antonio*, 296 S.W.2d 299,

301 (Tex. Civ. App.--San Antonio 1956), writ granted, aff'd, 305

S.W.2d 558 (Tex. 1957).

g.   The governing body of a city is authorized to delegate by

resolution or ordinance the right to perform acts and duties

necessary for the day-to-day operation of the city. *Stirman v.

City of Tyler*, 443 S.W.2d 354, 354 (Tex. Civ. App.-Tyler 1969,

writ ref'd n.r.e.); *Central Power & Light Co. v. City of San Juan*,

962 S.W.2d 602 (Tex. App.-Corpus Christi 1998, rev. dism'd

w.o.j.). Therefore, the governing body could delegate the right

PETITION FOR WRIT OF MANDAMUS                                    Page 19

Copy from re:SearchTX

to file a lawsuit on behalf of the city to the mayor, a city
councilmember, or a city staff member. In the case of
delegation of authority, any action taken beyond what has been
authorized by the city council is void. *Foster v. City of Waco*,
255 S.W. 1104, 1106 (Tex. 1923).

h.    "Any fair, reasonable, substantial doubt concerning the
existence of power is resolved by the courts against the
corporation, and the power is denied. Of every municipal
corporation the charter or statute by which it is created is its
organic act. Neither the corporation nor its officers can do any
act, or make any contract, or incur any liability, not authorized
thereby, or by some legislative act applicable thereto. All acts
beyond the scope of the powers granted are void." I Dillon on
Municipal Corporations, (5th ed), § 237; 28 Cyc. p. 1533; 19
R.C.L., § 75; City of Brenham v. Brenham Water Co., 67 Tex.
542, 553, 554,4 S.W. 143; The Citizens Bank v. The City of
Terrell, 78 Tex. 456 [78 Tex. 456], 14 S.W. 1003.

i.    The City Attorney produced no ordinance or competent
evidence authorizing his conduct in the filing of this lawsuit.

PETITION FOR WRIT OF MANDAMUS                                   Page 20

Copy from re:SearchTX

Appx 1. P6L15-20, P7L8-18. Appx 3. Appx 8.

9.      **Prayer:** The City Attorney produced no evidence of his authority to

prosecute this litigation and lawsuit. The City Manager has no

authority to sign any legal instruments. The Relator asks that the

Court direct the trial court be orded to vacate it order dated Aug 18,

2017, and enter an order granting the relator's motion to show

authority, and to follow the mandates of Rule 12 and to strike the

pleadings filed by the City Attorney Ronald Stutes and James

Hankins on behalf of the the City of Palestine and and bar them from

appearing in the underlying cause as attorneys of record or

attorney's in charge for the City of Palestine, Texas.

Respectfully submitted, Mosser Law PLLC
/s/ James C. Mosser
James C. Mosser
Texas Bar No. 00789784
CourtDocuments@MosserLaw.com
2805 Dallas Parkway
Suite 222
Plano, Texas 75093
Telephone 972-733-3223
Facsimile 972-473-0600
Lawyer for RELATOR Jerry Laza

## CERTIFICATE OF SERVICE

I have conferred with Mr. James Hankins and he is opposed to this motion.
I certify that on September 18, 2017, a true and correct copy of the above
attached document was served on James Hankins attorney for the City of

PETITION FOR WRIT OF MANDAMUS                                    Page 21

Copy from re:SearchTX

MSJ – EXHIBIT H

Palestine electronically through the electronic filing manager under Tex. R. Civ. P. 21 and 21a.

/s/ James C. Mosser
_____

James C. Mosser


CERTIFICATION

I certify that I have reviewed the petition and conclude that every factual statement in the petition is supported by competent evidence included in the attached appendix or record and I certify that the documents attached in the appendix are true and correct copies of the originals.

/s/ James C. Mosser
_____

James C. Mosser


PETITION FOR WRIT OF MANDAMUS                                    Page 22

Copy from re:SearchTX

APPENDIX

Copys of Orders, Hearing Transcripts and Documents Complained of.

Appendix 1 Appx 1. Motion Rule 12 Hearing Transcript 2 Jun 2017 Page 24

Appendix 2 Appx 2.  Affidavit of Mike Alexander Page 81
Appendix 3 Appx 3. Sec 6.3. Powers and duties [of city manager] ALEXANDER Page 83
Appendix 4 Appx 4. City's 3rd Amended Petition and Request for Temporary and
Permanent Injunctions 7 June 2017 Page 84

Appendix 5 Appx 5. Motion to Show Authority and Request for Emergency filed on 22 May
2017 Page 92

Appendix 6 Appx 6. Order on Mot to Show Authority  21 AUG 17 Page 96

Appendix 7 Appx 7. Laza's Answer Fifth Amended Answer and Petition second amended
Counterclaims 21 Aug 2017-4 Page 97

Appendix 8 Appx 8. City Code Sec. 8.7 City Attorney STUTES Page 108

Appendix 9 Appx 9. Hearing Injunction Anderson_DCCV16_356346_RR VOL001 Page
110

Appendix 10 Appx 10. ORDER ON MOTION FOR CONTINUANCE  Denied 15 Sep
2017Page 329

PETITION FOR WRIT OF MANDAMUS                                     Page 23

Brandi Ray, CSR                    Appendix 1

1                    A P P E A R A N C E S

2          Mr. Ronald Stutts
           Attorney at Law
3

4     FOR THE PLAINTIFF

5
           Mr. James Mosser
6          Attorney at Law

7     FOR THE DEFENDANT

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

2

MSJ – EXHIBIT H

Brandi Ray, CSR

1                        **I N D E X**
                        **VOLUME 1**
2                       **(MOTIONS)**
                                        Page   Vol.
3      JUNE 2, 2017

4      Announcements.......................... 4     1

5
       Court Reporter's Certificate.......... 56    1
6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

3

Copy from re:SearchTX                      MSJ – EXHIBIT H

Brandi Ray, CSR

1                        **P R O C E E D I N G S**

2            THE COURT:  Mr. Stutts and Mr. Mosser, let's

3      talk about the motion to show authority first.

4      Basically, said you don't have any authority to bring

5      the lawsuit.  I've read the motion and I know that

6      you -- I'll let you speak, if we need to, but you tell

7      me what your response to that is.

8            MR. STUTTS:  Your Honor, and by him -- by him

9      filing the motion it is our burden to show authority.

10     And let me -- I would like this introduced into evidence

11     affidavit of Mike Alexander, and we would argue that the

12     cases show -- and Mr. Mosser, this case from Corpus

13     Christi Court of Appeals, that says that -- and I've

14     highlighted the language in there that says that

15     typically what is required is an affidavit from the

16     client, saying that they have been -- the attorney's

17     been authorized to file the lawsuit and testimony of the

18     attorney.  So, I'm prepared to do that.  Your Honor, I

19     think that in fact --

20           THE COURT:  Are you wanting to proffer some

21     testimony?

22           MR. STUTTS:  I will do so if -- before we forget

23     about it.

24           THE COURT:  All right.  (Mr. Stutts sworn)

25           MR. STUTTS:  I do.

4

Copy from re:SearchTX                                          MSJ – EXHIBIT H

```
 1              Your Honor, my name is Ronald Suttts, I'm an
 2    attorney, I've been licensed since 1985, and I am now a
 3    member of the law firm of Potter Minton in Tyler, Texas.
 4    Approximately 11 years ago, I think it was 2006, I was
 5    hired by the City of Palestine to be the city attorney
 6    for the City of Palestine, and I've been since 2006.
 7    The city charter says that the -- says that the city
 8    attorney is authorized to bring and defend all
 9    litigation on behalf of the City of Palestine.
10              I presume -- presented you the affidavit of Mike
11    Alexander, who's the city manager of the City of
12    Palestine and he states that I am the city attorney and
13    I am authorized to represent the city, and that he has
14    authorized the filing of this lawsuit.  That concludes
15    my testimony.
16              THE COURT:  Okay.  You have any cross?
17              MR. MOSSER:  Oh, yes, sir, I do.  May I proceed?
18              May it please the Court.  My name is James
19    Mosser, I represent Mr. Laza in this matter, and I would
20    like the Court to take judicial notice of the Palestine
21    Texas Code of Ordnances as they currently exist.
22              MR. STUTTS:  It's permitted, no objection.
23              MR. MOSSER:  Thank you, Judge.
24                        **RONALD STUTTS**,
25    having been first duly sworn, testified as follows:
```

Copy from re:SearchTX

MSJ – EXHIBIT H

1                          **CROSS EXAMINATION**

2      **BY MR. MOSSER:**

3      Q.      Mr. Stutts, you testified that Mike Alexander is

4      the city manager?

5      A.      That is correct.

6      Q.      Is he the acting city manager or the actual city

7      manager?

8      A.      He's the city manager.

9      Q.      When was he appointed?

10     A.      I don't recall that, within the last year.

11     Q.      And are you familiar with Palestine Texas Code

12     of Ordnances?

13     A.      I am familiar with it.  I can't say I can site

14     every section.

15     Q.      How many places in the code of ordnances does it

16     allow you or anybody for the city to file for injunctive

17     relief?

18     A.      I do not know.

19     Q.      And where in the code of ordnances does it allow

20     you to actually take the actions?

21             THE COURT:  Why don't we do this.  I've already

22     taken judicial notice --

23             MR. MOSSER:  Yes, Your Honor.

24             THE COURT:  -- of that.  You can argue what's in

25     there and what's not in there.  I suggest that it's

                                                              6

Copy from re:SearchTX                      MSJ – EXHIBIT H

1     really not necessary to question the witness about his

2     knowledge of what's in there.

3              MR. MOSSER:  Yes, Your Honor.

4              THE COURT:  I mean, I take judicial notice.

5     You've got the ordnances into evidence and you can argue

6     whatever you want to on it.

7              MR. MOSSER:  I understand, Judge.

8     Q.       (BY MR. MOSSER)  Mr. Suttts, is there a city

9     ordinance that allows you to file this lawsuit on behalf

10    of the City of Palestine against Mr. Laza for injunctive

11    relief?

12    A.       Not that I know of.

13    Q.       Is there any city resolution by majority of the

14    city counsel of the City of Palestine?

15    A.       No.

16    Q.       Have you ever seen one?

17    A.       My testimony was there is not one, so that would

18    indicate I have not seen one.

19    Q.       Thank you.  Have you discussed with -- the

20    requirement for such ordinance or resolution with the

21    city counsel?

22              MR. STUTTS:  I would object to that as calling

23    for attorney-client communications.

24              THE COURT:  It's sustained.

25              MR. MOSSER:  Pass the witness.

7

Copy from re:SearchTX

MSJ – EXHIBIT H

```
 1              MR. STUTTS:  I have no further testimony.
 2              THE COURT:  You have any further argument?
 3              MR. STUTTS:  I do, Your Honor.  And I -- I think
 4    that the point of Mr. Mosser's motion, because we've
 5    discussed this and I am going to speak for him here and
 6    he can dispute me if he wants to, is the city counsel
 7    has to pass a resolution to authorize this lawsuit.
 8    That to me is not properly in a Rule 12 motion for
 9    authority.  I'm authorized to be the lawyer for the City
10    of Palestine.  The City of Palestine has authorized me.
11    City of Palestine when they hired me, authorized me to
12    be their attorney.  So, that is, I think settled.  And I
13    think that there's no question about that.  I -- I am
14    not aware of any authority from any case or court that
15    says that a city counsel must pass a resolution in order
16    to file a lawsuit.  I've looked at the city charter.  I
17    advised a city charter review commission over the past
18    year and a half, two years, that looked through every
19    section of the city charter.  So I'm pretty familiar
20    with the city charter.  And I don't believe that
21    provision is in the city charter.  I don't know of any
22    case that says that.  I asked Mr. Mosser if he could
23    provide me with authority, I would certainly consider
24    it, but I didn't have that authority.  I've been in the
25    city attorney's office in Dallas.  I have been the city
```

Copy from re:SearchTX

MSJ – EXHIBIT H

```
 1   attorney for the City of Palestine, City of Canton for a
 2   short while, city of Gladewater, City of Coffee City,
 3   and City of Cuney.  To my knowledge, none of those
 4   cities have that requirement.  I had filed other
 5   lawsuits on behalf of the City of Palestine, where the
 6   city counselor was aware of my doing so.  I've never
 7   had, in the 11 years I've been city attorney, any
 8   council -- never sought a resolution from the city
 9   council authorizing me to file a lawsuit.  I don't
10   believe it's required and so I would ask this motion be
11   denied.
12           THE COURT:  Let me read the affidavit first.
13           MR. MOSSER:  We object to that affidavit, Judge,
14   in no capacity of the city manager to make that on
15   behalf of --
16           THE COURT:  It's already been offered and
17   admitted.
18           MR. MOSSER:  I didn't hear it be admitted,
19   Judge.
20           THE COURT:  Well, I think it was offered and
21   admitted.
22           MR. STUTTS:  I offered it.
23           THE COURT:  Did you offer it?
24           MR. STUTTS:  I certainly did.
25           THE COURT:  I'll admit it.
```

Copy from re:SearchTX

MSJ – EXHIBIT H

```
 1            Okay.  Mr. Mosser, I'll hear from you.
 2            MR. MOSSER:  Thank you, Judge.  May it please
 3    the Court.  The code of ordinances for the City of
 4    Palestine specifically states that the city manager is
 5    limited in his authority to have control and supervision
 6    of all departments of the city.  And shall have the
 7    power to make and enforce rules and regulations, as he
 8    may see fit.  Proper organization manager and
 9    authorization of all departments of the city.  And then
10    he is required to perform such duties that may be
11    prescribed by this charter or by ordinance or resolution
12    of the counsel.  You've heard from Mr. Suttts, there's
13    no ordinance or resolution authorizing the prosecution
14    of this particular lawsuit.  And frankly, it's not
15    relevant that he's done this 100 times or 500 times
16    before for any other city.  Just because you get away
17    with it, doesn't mean it's authorized and due.  And I
18    know that in his experience with the City of Dallas, he
19    knows and has told the Dallas city council, it's okay to
20    act against federal law in an unconstitutional fashion,
21    which he did give that advice to the Dallas city
22    council.
23            MR. STUTTS:  I will object to that.
24            THE COURT:  Wait, wait, wait.  What does that
25    have to do with this?
```

Copy from re:SearchTX

MSJ – EXHIBIT H

```
 1              MR. MOSSER:  Because that was his testimony a
 2    few moments ago, he had represented Dallas city council.
 3              THE COURT:  Now --
 4              MR. MOSSER:  And he never --
 5              THE COURT:  Counsel, listen to me.
 6              MR. MOSSER:  Yes, Your Honor?
 7              THE COURT:  That has no relevance to the motion
 8    before this Court.  And since it's not relevant, I am
 9    not going to allow an officer of this Court to make
10    comments about another officer of the Court during this
11    proceeding.
12              MR. MOSSER:  Yes, sir.
13              THE COURT:  I want to hear relevant argument and
14    only relevant argument.
15              MR. MOSSER:  In these code of ordinances from
16    the City of Palestine under ordinance 1868, they
17    specifically permit for the attorneys to file an
18    injunction or an action for injunctive relief as
19    provided.  That's one place.
20              THE COURT:  Can you provide it?
21              MR. MOSSER:  In the --
22              THE COURT:  Wait.  As provided by the airport
23    and zoning act?
24              MR. MOSSER:  Exactly.
25              THE COURT:  What is the airport -- does airport
```

11

Copy from re:SearchTX

MSJ – EXHIBIT H

1    zoning act have anything to do --

2         MR. MOSSER:  It's part of the -- it's part of

3    the code of ordinances for the City of Palestine.

4         THE COURT:  Well, I understand that, but does it

5    have anything to do with the lawsuit that we're talking

6    about?

7         MR. MOSSER:  No.  In some manner, but my point

8    to you is, in the argument, is that the code -- city

9    ordinances have airport zoning act issues and they are

10   allowed to seek injunctive relief in that matter.  And

11   if the Court will just indulge me, for water

12   emergencies, water usages during emergencies, which is

13   Code Sections 38 through 64, and there's a specific

14   reference in that water emergency section compliance

15   with this plan, may also be sought through injunctive

16   relief in the district court.  Would the Court like to

17   review that?

18        THE COURT:  I think I understand it.

19        MR. MOSSER:  And then, apparently, it's

20   customary, the enforcement remedies for individual waste

21   water discharge has a function for injunctive relief

22   when the user violated or continued to violate any

23   discharge permit, they can seek injunctive relief under

24   those circumstances under section 9829.  And then for

25   what I refer to as business ordinance, which is sections

Copy from re:SearchTX

MSJ – EXHIBIT H

```
 1    10-6 through 10-25, each titled prohibition and nudity
 2    or status concerning permitting the consumption of
 3    alcoholic beverage in this 10-29, provides specific
 4    authority for injunctive relief.  So, the city council
 5    knows how to provide specific authority for injunctive
 6    relief, and the city attorney is not authorized under
 7    the ordinances just to go file any lawsuit it chooses
 8    to.  He's not allowed to do that.  And I think Texas
 9    Supreme Court and every other court that I know of, rely
10    on the fact that city council, if they are going to come
11    out and conduct business in a community, and they file a
12    lawsuit, then unless they have an ordinance, giving
13    specific authority, then he is required to go get either
14    an ordinance or a specific resolution related to the
15    lawsuit.  And we know he hasn't had one, because we've
16    asked.  He said he denies he's had it, testified he
17    doesn't have it.  And I think that falls within the
18    ambit of he doesn't have authority to prosecute these
19    claims on behalf of the City of Palestine, because they
20    have not passed an ordinance or resolution authorizing
21    him to file this lawsuit.  I think that that is true in
22    all the case law that I've read.  So in -- under Corpus
23    Christi Court Central Power Light verses City of San
24    Juan, the Court held that the only way subdivision of
25    state can act true, it is fundamental that a municipal
```

13

Copy from re:SearchTX                                      MSJ – EXHIBIT H

1    court, the corporation presents no power that is not

2    conferred by the charter or by the general laws under

3    which it is formed.  It must respect the express

4    divisions of the charter and where they are applicable.

5    And the point of this is, is that when a government

6    knows how to write a rule or a law, as they do in this

7    case, and they write it specifically allowing injunctive

8    relief and putting it in their ordinances, when they

9    know how to do that, they've excluded other portions of

10   the injunctive relief and they have to have an ordinance

11   authorizing him to do that.

12        Supreme Court of Texas, City of San Benito Rio

13   Grand Valley which is 109 S.W. 3rd, 750, says cities can

14   express and find themselves only by way of a dually

15   assembled meeting.  A city's governing body may not

16   delegate the right affecting city business.  Texas

17   Supreme Court, and that was in 2003.  And then in Dallas

18   court, City of Coppell verse haves General Homes, 1988,

19   stands for essentially the same proposition, the only

20   way that a political subdivision of state can act is by

21   and through it's government body.  A city may not act

22   only in it's political capacity and statements by

23   individual members of city government are not binding.

24   A city's governing body may act only by resolution or

25   ordinance, and may not delegate the right to make

Copy from re:SearchTX

MSJ – EXHIBIT H

1   decision affecting the transaction of city business.

2        I can go on.  And if the Court would like to

3   review these.

4        THE COURT:  I want two or three that you think

5   are really on point that support your position.

6        MR. MOSSER:  He had no authority from the City

7   of Palestine.

8        THE COURT:  What I'm saying is, I want two or

9   three of the cases that you have there that you feel

10   like are the strongest cases.

11        MR. MOSSER:  May I approach?  I've highlighted,

12   and I think they are all on the last two or three pages.

13        MR. STUTTS:  Can I get citation for the Central

14   Power Line case?

15        THE COURT:  962 S.W. 2nd, 602.

16        Okay.  What I'm going to do -- well, let me ask

17   you this.  And Mr. -- I think pretty clearly what it

18   comes down to, and that is, the cases or the argument

19   that you're making, I think I understand it correctly,

20   the city charter specifically in certain types of cases,

21   says we've got the authority to seek injunctive relief

22   through the Courts, and since they have that in there

23   affirmatively those situations and not this situation

24   that that excludes them and they don't have authority.

25        Now, are you telling me that the city does not

15

Copy from re:SearchTX

MSJ – EXHIBIT H

1    have the inherent authority to enforce a zoning

2    ordinance by injunctive relief, unless it specifically

3    says so in their charter?

4         MR. MOSSER:  The issue we get into, and I think

5    you're close to that.  Now, some of these we're fighting

6    about are criminal penalties and criminal ordinances,

7    which they have in the books.  And then they have some

8    zoning issues also.  So, I think the Court has struck

9    upon the right analysis, so if a city government or any

10   government for that matter, includes in there statutes

11   or ordinances, in our case, the fact that okay this one

12   we picked out and we want to allow injunctive relief

13   here, here, and here.

14        THE COURT:  And my question is, is it your

15   position, that a city does not have the inherent

16   authority to enforce its ordinances by injunctive

17   relief?

18        MR. MOSSER:  They do not have that.  I think the

19   case law and I think the Supreme Court tells us that

20   clearly, that they take all of their laws from two

21   places, Texas Constitution, and for the city itself, the

22   ordinances and resolutions, and they say that time and

23   time again and that is the law in Texas.

24        MR. STUTTS:  May I just point out that under our

25   lawsuit, we are seeking injunctive relief under Texas

16

Copy from re:SearchTX

MSJ – EXHIBIT H

```
 1    statute that specifically empowers a municipality to

 2    enforce --

 3            THE COURT:  I thought there was something in the

 4    petition about that?

 5            MR. STUTTS:  It's specifically stated in the

 6    state law.  And so, that's another place that cities can

 7    get power is through the legislature, and so --

 8            MR. MOSSER:  Well, actually, only if they pass

 9    an ordinance saying that they take that.

10            MR. STUTTS:  And that's what I don't think any

11    of this case law's going to say.  But I haven't seen

12    those cases, so I'll have to look at them.

13            MR. MOSSER:  And --

14            THE COURT:  Actually -- actually, what you've

15    been arguing, is that the city has no authority to seek

16    injunctive relief.  Your motion to show authority deals

17    with Mr. Suttts having authority to file this particular

18    lawsuit.  So those are two different things.

19            MR. MOSSER:  Well, I think that the requirement

20    for Mr. Suttts to go forward and act on behalf of the

21    city, they have to have an ordinance or resolution

22    authorizing him to file this lawsuit under this basis.

23            THE COURT:  And that's the basis for your

24    motion.  That's what you're attacking, is his authority

25    to file this particular lawsuit?
```

Copy from re:SearchTX

MSJ – EXHIBIT H

```
 1              MR. MOSSER:  Yes.
 2              THE COURT:  He has no authority from the city is
 3    what you're alleging?
 4              MR. MOSSER:  Exactly.  And he also violated 682,
 5    Texas Rules of Civil Procedure, because he doesn't have
 6    a verified pleading.
 7              MR. STUTTS:  That's another matter.  I can
 8    answer that if you would like.  But Rule 682 is --
 9    provides that a writ of injunction shall not issue
10    unless there's a sworn affidavit or sworn petition on
11    file.  We did swear we do have an affidavit supporting
12    our original petition, but more importantly is the case
13    law that clearly and unambiguously says that a -- if you
14    have an evidentiary hearing, you don't have to have the
15    affidavit because you're now relying on testimony in
16    court, not on whatever was in that affidavit.  And
17    there's several cases -- this -- I have one from the
18    Corpus Christi Court of Appeals and one from Tyler Court
19    of Appeals.  And so they both say that.
20              THE COURT:  Here's what I'm going to do.  I'm
21    going to look over the affidavit.  I'm going to look
22    over the cases and figure out a non-jury docket and
23    we're not going to work through all this today.  But I
24    don't want y'all to waste your time.  Both of y'all have
25    motions in limine and go somewhere and sit down and go
```

18

Copy from re:SearchTX

MSJ – EXHIBIT H

```
 1    special exceptions is they can plead this so we can

 2    obtain the discovery necessary.  And you should just

 3    strike it.  He had his opportunity, he failed to do it.

 4         THE COURT:  When was this second amended

 5    petition filed?

 6         MR. MOSSER:  April 3rd.

 7         THE COURT:  Have you filed any special

 8    exceptions to the second amended?

 9         MR. STUTTS:  On May 15th.

10         THE COURT:  Pardon?

11         MR. STUTTS:  On May 15th is when he filed this

12    motion to strike paragraph 11.

13         THE COURT:  So assume what you're alleging is

14    that the amended pleadings do not cure the original

15    defect?

16         MR. MOSSER:  The order of the Court, they do

17    not.

18         THE COURT:  What did the order say?

19         MR. STUTTS:  Specific language of the order is

20    special exception is sustained.  Plaintiff is ordered to

21    replead with regard to paragraph 11, so as to plead with

22    some specificity who is affected by Defendant's actions

23    and what the dangers to those persons is.

24         THE COURT:  And if he pled the addresses and

25    what they claimed to be injury --
```

Copy from re:SearchTX

MSJ – EXHIBIT H

Cause No. DCCV16-356-349

| | | |
|---|---|---|
| CITY OF PALESTINE, TEXAS, | § | IN THE DISTRICT COURT |
| *Plaintiff,* | § | |
| | § | |
| VS. | § | ANDERSON COUNTY, TEXAS |
| | § | |
| JERRY LAZA, | § | |
| *Defendant.* | § | 349th JUDICIAL DISTRICT |

**STATE OF TEXAS** §
§
**COUNTY OF ANDERSON** §

## AFFIDAVIT OF MIKE ALEXANDER

Before me the undersigned Notary Public, on this day personally appeared Mike Alexander who after being by me first duly sworn, deposed and stated as follows:

1. "My name is Mike Alexander. I am over the age of 18 years and a resident of Anderson County, Texas. I am capable of making this affidavit and am fully competent to testify to the matters stated herein. I have personal knowledge of each of the matters stated herein.

2. "I am the City Manager for the City of Palestine, Texas.

3. "Ronald D. Stutes is the appointed City Attorney for the City of Palestine and has been the City Attorney since before I was employed by the City of Palestine.

4. "Under the City Charter of the City of Palestine, the City Attorney is authorized to "represent the city in all litigation and controversies.

5. "Mr. Stutes was authorized to file the lawsuit against Jerry Laza and is authorized to prosecute such suit.

**AFFIDAVIT OF MIKE ALEXANDER – Page 1**
{A47/06319/0008/W1501638.1 }



PLAINTIFF'S
EXHIBIT

6.      "The City Council of the City of Palestine has been made aware of this suit. No city councilmember has expressed any desire for prosecution of the suit to be discontinued.

"Further affiant sayeth not."



MIKE ALEXANDER

SUBSCRIBED AND SWORN TO BEFORE ME on this 22nd day of May, 2017.

Notary Public, State of Texas

DONNA S. THORNELL
Notary Public, State of Texas
My Commission Expires
August 27, 2017

**AFFIDAVIT OF MIKE ALEXANDER – Page 2**
{A47/06319/0008/W1501638.1 }

Copy from re:SearchTX

MSJ – EXHIBIT H

Appendix 3

Code of the City of Palestine

Sec. 6.3. - Powers and duties [of city manager].

The city manager shall be responsible to the council for the proper administration of all the affairs of the city. The powers and duties herein conferred upon the city manager shall include, but shall not be limited to, the following:

(a)

To appoint and remove any officer or employee of the city except those officers and employees whose appointment or election is otherwise provided for by law or by this charter.

(b)

Prepare the budget annually, submit it to the council, and be responsible for its administration after its adoption.

(c)

Keep the council informed of the financial condition of the city and make recommendations of current and future needs of the city as may seem desirable.

(d)

To attend all meetings of the council, with the right to take part in the discussion, but having no vote. He shall be entitled to notice of all special meetings.

(e)

**To execute deeds, deeds of trust, easements, releases, and all other legal instruments on behalf of the city when authorized by ordinance or resolution of the city council.**

(f)

To see to it that the city lives within its budget.

(g)

**To perform such other duties as may be prescribed by this charter or by ordinance or resolution of the council.**

MSJ – EXHIBIT H

JANICE STAPLES
District Clerk, Anderson County, TX
by_____ Dep.

NO. DCCV16-356346

| | | |
|---|---|---|
| CITY OF PALESTINE | § | IN THE DISTRICT COURT |
| Plaintiff, | § | |
| | § | |
| V. | § | 349TH JUDICIAL DISTRICT |
| | § | |
| JERRY LAZA | § | |
| Defendant. | § | OF ANDERSON COUNTY, TEXAS |

## MOTION TO SHOW AUTHORITY
## AND REQUEST FOR EMERGENCY HEARING

1.  Jerry Laza, Defendant herein, files this Motion to Show Authority complaining of Ron Stutes, alleged said attorney for CITY OF PALESTINE, and requests an emergency hearing on the matters presented.

2.  The parties in this action have not announced ready for trial. Therefore, this motion has been timely filed by Defendant.

3.  Attorney Ron Stutes a private attorney, specially employed by unknown persons does not have authority to act in this matter as presented by the current pleading in the above captioned and numbered lawsuit.

4.  Specifically, Attorney Ronald Stutes and Patsy Smith are acting without due authority of the City of Palestine's, duly elected city council.

5.  On information and belief, Attorney Stutes and in conspiracy with Patsy Smith, without authority filed the original petition of the CITY OF PALESTINE'S ORIGINAL PETITION, REQUEST FOR TEMPORARY AND PERMANENT INJUNCTIONS, AND REQUEST FOR DISCLOSURE, allegedly on behalf of the City of Palestine, on 9 June 2016 1:58:54 pm. Neither Stutes or Smith had been duly authorized to act on behalf of the City of Palestine in this manner, or in any of the matters pleaded in the subject petition on 9 June 2016. It appears that the verification filed by Patsy Smith and which was solicited by and written by Attorney Stutes was false on 9 June 2016, and is not true today.

6.  On information and belief the current live pleading CITY OF PALESTINE'S SECOND AMENDED ORIGINAL PETITION AND REQUEST FOR TEMPORARY AND PERMANENT INJUNCTIONS filed on 3 April 2017, signed by Attorney Stutes, suffers from the same infirmities as the Original Petition, and Attorney Stutes does not have the authority from the City of Palestine City Council to prosecutes its claims. It is clear that Attorney Stutes has no authority to prosecute the subject claims as to injunctive relief, because the subject pleading is not verified and does not contain an affidavit with a plain and intelligible statement of the grounds for such relief authorized by the City Council of the City of Palestine, as required by Tex. R. Civ P. 682. Simply, it appears that the City Council of the City of Palestine has never authorized the actions described in the Original or Amended petitions in this case. The Defendant has requested copies of the subject legislative action by the City of Palestine related to the subject

MOTION TO SHOW AUTHORITY
AND REQUEST FOR EMERGENCY HEARING

Page 1 of 5

MSJ – EXHIBIT H

lawsuits and none have been provided to date, and specifically as of 9 June 2016, defendant has been advised that no such actions had been authorized.

7.  Based upon these facts, Defendant believes that Ron Stutes is prosecuting this suit without the authority of CITY OF PALESTINE. Ron Stutes should be cited to appear before this court and show authority to act on behalf of CITY OF PALESTINE. Should Ron Stutes fail to show sufficient authority to prosecute this suit on behalf of CITY OF PALESTINE, then Ron Stutes should be banned from further appearing in this case and pleadings on behalf of CITY OF PALESTINE should be stricken.

8.  Jerry Laza, Defendant herein, respectfully requests that:

    a.  The court hold an emergency hearing on this motion at 10 am on 25 May 2017, in the 349th District Court courtroom in Palestine, Texas and that Ron Stutes will be cited to appear and to answer herein and to present to this court sufficient proof of authority from the City of Palestine to prosecute the pending suit on behalf of CITY OF PALESTINE.

    b.  Upon the failure of Ron Stutes to present such proof to the court, the court should order that Ron Stutes is no longer allowed to appear in this cause and to further order the pleadings filed by Ron Stutes be stricken from the record; and

    c.  For such other and further relief, in law or in equity, to which Jerry Laza, Defendant herein, may be justly entitled.

Respectfully submitted, MOSSER LAW PLLC
/s/James C. Mosser
James C. Mosser
Texas Bar No. 00789784
Email: CourtDocuments@MosserLaw.com
2805 Dallas Parkway
Suite 222
Plano, Texas 75093
Tel. (972) 733-3223
Fax. (972) 473-0600
Attorney for Defendant
Jerry Laza

## PROPOSED NOTICE OF EMERGENY HEARING

The above and foregoing Defendant's Motion to Show Authority to Act is REQUESTED

TO BE set for an EMERGENCY HEARING on May 25, 2017, at 10:00 AM, in the 349TH

Judicial District Court of Anderson County, Texas.

MOTION TO SHOW AUTHORITY
AND REQUEST FOR EMERGENCY HEARING

Page 2 of 5

Copy from re:SearchTX

MSJ – EXHIBIT H

VERIFICATION BY UNSWORN DECLARATION

"My name is Jerry Laza, and my address is 1101 West Oak Street, Palestine, Texas 75801, Anderson County United States of America. I declare under penalty of perjury that the statements made in the foregoing Motion to Show Authority to Act are true and correct."

Executed in Anderson County, State of Texas on May 20, 2017.

Jerry Laza

MOTION TO SHOW AUTHORITY
AND REQUEST FOR EMERGENCY HEARING

Copy from re:SearchTX

Page 3 of 5

MSJ – EXHIBIT H

Appendix 6

NO. <u>DCCV16-356-349</u>

| | | |
|---|---|---|
| **CITY OF PALESTINE, TEXAS** | § | **IN THE 349TH JUDICIAL DISTRICT** |
| **PLAINTIFF** | § | |
| | § | |
| **V.** | § | **COURT OF** |
| | § | |
| **JERRY LAZA,** | § | |
| **DEFENDANT** | § | **ANDERSON COUNTY, TEXAS** |

## ORDER ON MOTION TO SHOW AUTHORITY

On June 2, 2017, came on to be heard Defendant Jerry Laza's Motion to Show

Authority pursuant to Rule 12.  The parties appeared by and through their attorneys of

record.

Upon hearing the argument and evidence of the attorneys, the Court DENIES

Defendant's motion.

SIGNED on _Aug 21, 2017_ .

_____
JUDGE PRESIDING

APPROVED AS TO FORM:

LAW OFFICE OF JAMES D. HANKINS
606 East Crawford Street
Palestine, TX 75801
Tel: (903) 729-2102
Fax: (903) 731-4732
Email: jdh@jameshankinslaw.com

By:_____
JAMES D. HANKINS
State Bar No. 08912300
Attorney for Plaintiff
CITY OF PALESTINE

JANICE STAPLES
DISTRICT CLERK
ANDERSON COUNTY, TX
2017 AUG 21 PM 1:50
FILED FOR RECORD

MSJ – EXHIBIT H

# EXHIBIT I

# Declaration (28 U.S.C.S. § 1746)

"My name is Jerry Laza, and I declare under penalty of perjury under the laws of the United States of America that the following is true and correct."

1. In 1990, I purchased Halls Repair, a local small engine repair shop located at 302 E Crawford St, Palestine, Texas 75801 from Elizabeth Neal.

2. I operated the small engine repair shop from 1990-1994 without any difficulties. In 1995, the City of Palestine (the "City) began a campaign against me to drive me out of town using zoning regulations.

3. My property was compliant with all City regulations because I had grandfather clause exemptions. I had maintained since I purchased it after the death of the previous shop owner.

4. My property on Crawford St. fell into the Downtown Historic District, which the City intended to house boutiques, bakeries, and similar small-town attractions. Even though I had maintained compliance with City regulations, my lawnmower shop simply did not fit certain City leaders and bureaucrats' vision for that area.

5. Even though I had grandfather exemptions to the City's alleged violations, I attempted come into compliance with the allegedly violated ordinances, going to far as to allow constant inspection by the Palestine fire marshal. During one such inspection, I noticed the fire marshal writing down my vehicles' identification numbers. When I questioned him, the fire marshal responded by stating that my property would be condemned. He then ordered me to vacate. I emphatically refused to vacate the property because I had invested an immense amount time and money into the property not to mention complying with relevant City ordinances. In retaliation, the City cut off my gas, power, and water in an attempt to force me to leave.

6. To continue operations, I dug a functional well on my property and crafted a homemade diesel generator from mechanical parts in my shop. This allowed me to continue business as usual.

7. In 1998, I repaired a lawnmower the head of the Palestine Historical Preservation movement. He offered me his property at 1101 W. Oak St. in exchange for my property at 302 E. Crawford St.

8. As I was tired of fighting, I agreed to the trade, and acquired the property at 1101 W. Oak St., Palestine, Texas 75801 (the "Property"). At that time, the Property was underdeveloped land, unoccupied and suitable for my use of running a small motor repair business.

9.  As a resident of Palestine, I eventually became aware of the City's Historic District program and new "Main Street" initiative, which served largely the same purpose of economically revitalizing downtown Palestine. From my understanding, the City created a Main Street District within its larger Historic District through the Texas Historical Commission Main Street Program. This Main Street district was created about one block from my Property.

10. Shortly after acquiring the Property, I began setting up his business at my new location. The City immediately began threatening citations for ordinance violations related to outdoor storage of my inventory and equipment. I responded to these threats by discontinuing my move onto the Property and informing the City that I would simply end the property transaction and return to my previous business location at 302 E. Crawford St., Palestine, Texas 75801.

11. Shortly thereafter, the City provided me with an Ordinance Granting a Specific Use Permit for my Property ("Ordinance") on June 22, 1998. This ordinance granted me permission to use the Property for outside storage in the C-3 General Commercial Zoning District in which it is located as provided in the Comprehensive Zoning Ordinance of the City of Palestine, Texas.

12. In 2006, the City issued me new citations. Specifically, the violations included alleged noncompliant outdoor storage, lack of privacy fencing, and operation of a junkyard with improper zoning.

13. The City threatened to prosecute me criminally in the Palestine Municipal Court for alleged violation of its ordinances. At this point, I offered to settle things outside of the courtroom by building a privacy fence, moving his lawnmowers and other inventory to the inside of the fence, as well as adding hedges and shrubs for beautification purposes. The City was not content with these remedies, and instead insisted that Laza "clean up" his property to conform with its aesthetic standards.

14. The City filed suit in the municipal court ending with a jury verdict acquitting me of the alleged violations. The jury found that I had variances of outdoor storage dating back to the ordinance the City granted me in 1998, that a privacy fence was not required in the front of my business, and that I was operating a lawnmower shop instead of a junkyard.

15. In 2009, an animal control officer for the City of Palestine began writing me tickets for keeping a horse inside City limits. At the request of the Palestine Municipal Court judge, I applied for an agricultural designation and was granted such. The judge found that I met the requirements to keep goats and horses within City limits.

16. In 2016, Police Chief and interim City Manager Mike Alexander and attorney Ron Stutes, acting as the Palestine City Attorney, filed suit against me in state district court, captioned *City of Palestine, Texas v. Jerry Laza*, No. DCCV16-356-349. Two months prior to filing, the City's Code Enforcement department, under the direction of Alexander, presented me with 28 pages of alleged violations of city codes and ordinances in the form of a complaint.

Declaration of Jerry Laza                                                                 Page 2

MSJ – EXHIBIT I

These alleged ordinance violations were nearly identical to those alleged by the City in 2006 and 2009.

17. I contacted Alexander to see if we could come to a settlement agreement, saving both sides time and money. Alexander' categorically refused to make any deal settling the City's complaints out of court.

18. I am aware that lawsuits brought by the City of Palestine require the approval of the Palestine City Council through ordinance or resolution under the Palestine City Charter, No such approval was ever given prior to the filling of the suit against me. By the City's own admission, there was no discussion of the lawsuit by the City Council until June 27, 2016, 18 days after it was filed on June 9, 2016. Additionally, I initiated and facilitated the June 27th discussion, going before the City Council to ask if they could work something out that would save both sides time and attorney fees. The Palestine City Council had heard nothing about the lawsuit until I had contacted the members.

19. I am personally aware that a number of other businesses in the City of Palestine, including some large chains and smaller retail businesses, keep their property in a similar state to my Property. I am personally unaware of any action the City to issue or prosecute any alleged code violations by these other businesses.

20. On October 21, 2016, the City of Palestine, under the direction of police chief and interim city manager Mike Alexander, conducted a warrantless search of my Property using law enforcement and city personnel. They took pictures of serial numbers on my equipment and vehicles.

Executed on June 7, 2021.

_____
Jerry Laza

MSJ – EXHIBIT I