UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TEXAS - TYLER DIVISION

| | |
|---|---|
| JERRY LAZA, § | |
|    Plaintiff, § | |
| § | |
| v. § | CIVIL ACTION NO. 6:17-cv-00533-JDK |
| § | |
| CITY OF PALESTINE, TEXAS, et al., § | |
|    Defendants. § | |

**PLAINTIFF'S REPLY TO DEFENDANT STUTES'S RESPONSE
IN SUPPORT OF MOTION FOR SUMMARY JUDGMENT**

COMES NOW Plaintiff Jerry Laza ("Laza") and files this Reply to Defendant Stutes's response (ECF 92) to Laza's Motion for Summary Judgment (ECF 88).

Summarizing, Stutes's Response rests on a fundamental misstatement of material facts and mischaracterization of law. Defendant Stutes misrepresented the City of Palestine City Charter, as its plain language, together with the Texas Open Meetings Act, invalidates Stutes's claim for qualified immunity and shows that he indeed violated Laza's rights.

## I. ARGUMENTS AND AUTHORITIES

**A. Plaintiff's procedural due process and Open Meetings Act claims succeed.**

1. Laza's TOMA and Due Process claims are factually and legally intertwined, so Laza will analyze Stutes' response to them together.

2. Stutes Response at 13 argues that he did not deprive Laza of due process because his suit was authorized by the City Charter.

3. Procedural due process provides that government actors may not make decisions that deprive individuals of life, liberty, or property without due process of law mandated by the Fifth and Fourteenth Amendments. *Mathews v. Eldridge*, 424 U.S. 319, 332 (1976).

4. Defendant Ronald Stutes violated Laza's due process rights when he filed the 2016 lawsuit

against Laza without proper authorization from the City of Palestine's governing body—the Palestine City Council. For a complete analysis of Stutes's violation, see Section B.

5. As such, the pleadings show Defendant Stutes acted outside the scope of his authority, significantly depriving Laza of his property interest and violating his right to due process of law.

6. In Defendant Stutes's discovery responses, Stutes admits that he filed a lawsuit against Laza on June 9, 2016, on behalf of the City of Palestine, Texas:

> **RFA NO. 14:** On June 9, 2016, you filed a Lawsuit against Plaintiff.
>
> **RESPONSE:** Defendant admits that, on June 9, 2016, he was counsel of record for the City of Palestine's lawsuit against Plaintiff.
>
> **RFA NO. 15:** You filed the Lawsuit against Plaintiff on behalf of the City.
>
> **RESPONSE:** Defendant admits that he was counsel of record for the City of Palestine's lawsuit against Plaintiff.

Stutes's Resp. to Pl's RFA No. 14–14 (Ex. C).

7. Further, Stutes admits he had "no knowledge" of any Palestine City Council minutes discussing any lawsuit against Laza on or before the date the lawsuit was filed:

> **RFP NO.4:** Produce all certified minutes of Palestine City Council meetings that discuss any lawsuit against Plaintiff on or before June 9, 2016.
>
> **RESPONSE:** None to Defendant's knowledge.

Stutes's Resp. to Pl's RFP No. 4 (Ex. C).

8. Stutes's acknowledgment that there are no minutes from any City Council meeting authorizing the lawsuit against Laza is a clear admission that the suit was initiated in violation of TOMA and Laza's right to due process.

9. Next, Stutes admits the decision to file a lawsuit against Laza was made in a closed meeting between Stutes, Jeffrey Lyons, Patsy Smith, Ass't City Manager Pannell, and others:

> **Interrogatory 8:** Describe the process that led to the City authorizing and filing the Lawsuit against Plaintiff on June 9, 2016.
>
> **ANSWER:** There was a meeting sometime in early 2016 between me, Jeffrey Lyons, Patsy Smith, Assistant City Manager Larry Pannell, and others whose names I cannot presently recall. It was determined that a Notice of Violation would be issued to Plaintiff due to his continuing violations of numerous City of Palestine Ordinances. If Plaintiff did not comply with the Ordinances, then it was determined that a lawsuit would be filed to enforce the Ordinances. Plaintiff did not comply with the City of Palestine Ordinances. Pursuant to the authority granted the City Attorney by the City of Palestine, and with the approval of City of Palestine officials, a lawsuit was filed against Plaintiff to enforce the Ordinances.
>
> **Interrogatory 9:** Identify the time and place of the meeting during which the City Council authorized you to file the Lawsuit against Plaintiff on June 9, 2016.
>
> **ANSWER:** There was no City Council meeting prior to June 9, 2016, during which the filing of the subject lawsuit was discussed. Appropriate City of Palestine officials and the City Attorney, pursuant to their lawful authority and responsibilities, determined to proceed with the lawsuit against Plaintiff. Thereafter, the City of Palestine City Council was routinely appraised of the status of the litigation. A trial was held in Anderson County District Court and the Plaintiff was found liable to the City of Palestine.

Stutes's Resp. to Pl.'s Interrog. No. 8–9.

10. As discussed in the Second Amended Complaint, a city may only act through its governing body. Doc. No. 46, ¶ 49. Here, there is no evidence that the Palestine City Council ever voted or gave authority to Defendant Stutes to file suit against Laza in an open meeting.

11. Thus, the record shows Defendant Stutes acted outside the scope of his authority, in violation of the TOMA, razing a plausible issue of material fact and rendering Defendants' Motion for Summary Judgment on this matter inappropriate.

12. Stutes further alleged in his Response at 6 that "[t]he authority set forth in the City Charter, together with the request and approval of appropriate City of Palestine officials, was the authority for Defendant Stutes, as City Attorney, to file the lawsuit on behalf of the City of Palestine against Plaintiff Laza."

13. At 6 of his Response, Stutes cites the affidavits of Mike Alexander, the former City Manager, for the proposition that Stutes had the authority to prosecute suit against Laza. Nowhere

in the affidavit does Alexander confirm that the City Council voted to initiate the litigation. Nor do the minutes of the City Council, authenticated by the current City Manager, Teresa Herrera.

14. Laza does not deny, nor has he ever denied, that the City Council discussed the lawsuit against him in closed session, after the suit was initiated.

15. Laza complains that the City Council did not vote to initiate the lawsuit, or even discuss it, prior to its initiation by Stutes, rendering it invalid. Alternatively, the suit was discussed or approved by a vote at a session unrecorded in the minutes. Under both theories, the City violated TOMA though its agent Stutes.

16. Stutes contends that the City Charter authorized Stutes's suit without prior authorization from the City. (Stutes Motion at 13.) The City Charter reads in relevant part,

> attention. If the city council shall determine that said complaints are well founded, it shall be the city attorney's duty to take such actions as may be necessary, and in the event the offending corporation, firm or person, shall fail or refuse to conform to the orders of the council in respect thereto, it shall be the duty of the council to direct the city attorney to institute suit in the court having jurisdiction thereof against such corporation, firm or person, for a judgment of forfeiture of franchise or privilege, or any other judgment proper under the premises [sic]. It shall be the city attorney's duty to see that all penal ordinances of the city are impartially enforced. Whenever deemed expedient, the city council may employ other attorneys.

Defendant's Ex. D. §8.7.

17. Stutes cites, with emphasis, a prior line stating, "[t]he city attorney shall represent the city in all litigation and controversies."

18. Nothing in the text of the City Charter authorizes the city attorneys to file suits in violation of TOMA, without the City Council's approval. Note the operative language above, "[i]f the city council shall determine," "it shall be the duty of the council to direct the city attorney to institute suit," "the city council may employ other attorneys."

19. In sum, there is simply no plausible reading of § 8.7 that grants Stutes the authority to initiate suit against Mr. Laza without approval of the city council; approval that must come in the form of a vote, per TOMA.

20. Laza has never contended that Stutes did not represent the city when he brought suit. Laza complains that he did not have the requisite authority to initiate the suit without a determination by the Palestine City Council. Stutes's reliance on the line "[t]he city attorney shall represent the city in all litigation and controversies," treats the statute as a grant of authority rather than a designation. This is apparent when the following language, concerning the City's determination and direction, is taken into account.

21. Continuing his chain of loose reading, Stutes cites *San Antonio v. Aguilar* 670 S.W. 2d 681 (Tex. Civ. App. – San Antonio [4th Dist.]1984, no writ), as follows:

> Express authority exists where the principal has made it clear to the agent that he wants the act under scrutiny to be done. H. Reuschlein & W. Gregory, AGENCY AND PARTNERSHIP, § 14 (1979); implied authority exists where there is no proof of express authority, but appearances justify a finding that in some manner the agent was authorized to do what he did; in other words, there is circumstantial proof of actual authority. *Id.* at § 15.

Stutes's Response at 14.

22. Stutes neglects to cite the critical language in *Aguilar*:

> Where, as here, the city attorney has authority derived from the city charter to represent the city in all *legal proceedings*, the city council is not required to pass a resolution or an ordinance as a prerequisite to an appeal. We hold this is an internal administrative decision and not within the purview of the Open Meetings Act.

*Aguilar*, 670 S.W.2d at 681.

23. This Court will note that the facts in *Aguilar* center around an appeal of a suit where the city attorney of San Antonio had previously represented the city under color of proper authorization.

24. In the facts at bar, Laza complains that Defendant Stutes, in his capacity as city attorney, improperly initiated an *original proceeding* against Laza absent proper authorization from the City.

25.     Stutes admits he had "no knowledge" of any minutes discussing any lawsuit against Laza on or before the date the lawsuit was filed, and that the decision to file a lawsuit against Laza was made in a closed meeting between Stutes, Jeffrey Lyons, Patsy Smith, and Ass't City Manager Pannell, but no formal vote was taken. Stutes's Resp. to Pl.'s Interrog. No. 8–9.

26.     As discussed in the Second Amended Complaint, a city may only act through its governing body. (Doc. No. 46, ¶ 49.) Here, Defendants do not argue that the City Council ever voted or gave authority to Defendant Stutes to file suit against Laza in an open meeting. Accepting that council members knew of the action and did not act to stop or ratify the suit is no substitute under TOMA.

27.     The City also alleges that Stutes had authority to file suit against Laza without City Council approval under the City Charter, referring to § 8.7.[1] But as that section requires the affidavits of 10 creditable persons of a complaint, followed by a report, and only then,

> "If the city council shall determine that the complaints are well founded, it shall be the city attorney's duty to take such actions as may be necessary, and in the event the offending corporation, firm, or person shall fail or refuse to conform to the orders of the council, it shall be the duty of the council to direct the city attorney to institute suit in the court having jurisdiction against such corporation, firm, or person, for a judgment of forfeiture of franchise or privilege, or any other proper judgment.

Defendant's Ex. D. §8.7 (Doc. 87-4). No plausible reading of § 8.7 allows suit against Laza without the city council acting "to direct the city attorney to institute suit," especially when § 4.9 states:

> "A majority of the members of the city council shall constitute a quorum to do business and the affirmative vote of four members of the city council shall be necessary to adopt any ordinance, resolution, appointment or other official action and this provision shall control over any other provisions in the charter to the contrary."

*Id.*

---

[1] Defendants' Exhibit D, Doc. 87-4 in the docket. The Palestine City Charter is also located online at https://library.municode.com/tx/palestine/codes/code_of_ordinances?nodeId=PTICH_ARTIVTHCOORPO

28. Defendants' citation to *San Antonio v. Aguilar* 670 S.W. 2d 681 (Tex. Civ. App. – San Antonio [4th Dist.] 1984, no writ) does not help the City, as it concerns a city attorney's filing of appeal, and not a suit's initiation. Nor does *Aguilar* wrestle with the charter language shown above.

29. As state law allows for removal of city council members who support illegal actions (Tex. Loc. Gov't Code § 87), implied authority should not be assumed when a city attorney takes an arguably illegal action; courts must demand a vote so that liability is established.

30. Finally, Stutes argues that his meeting with Former City Administrator, Mike Alexander, conferred express authority for Stutes to sue. (Stutes Motion at 15.)

31. As noted above, Defendant Stutes admitted that he had no knowledge of any city council meeting authorizing suit. The obvious method of reconciling Stutes's testimony with Alexander's is to conclude that Stutes filed the suit against Laza without authorization, and once the City was notified *post hoc,* no objection was made. However, no record of any affirmative authorization of a lawsuit appears to have been made.

32. At a bare minimum, a genuine issue of material fact exists regarding the propriety of Stutes's suit against Laza in light of the City Charter and TOMA.

33. Defendant Stutes complains that Laza lacks a protected property interest at 11 of his Response. Laza's property interest is the ability to operate his repair shop while maintaining his inventory on the premises. Defendant Stutes's analysis on this point is not entirely clear, but he seems to be arguing that Laza has no protected interest in his property because he did not "identify a property interest."

34. On the contrary, the entire suit revolves around the City's interference in Laza's use of his property where his shop is located and which the City is attempting to regulate out of existence with its enforcement actions. Defendants Response cites *Schaper v. Huntsville*, 813 F.2d 709, 713

(5th Cir. 1987) "for the proposition that property interests are created and their dimensions are defined by existing rules or understandings that stem from independent sources such as state law." No one argues that Laza lacks valid title to the property at issue; the issue is the *use* of the property.

35.     At Stutes' Response at 18, Defendant correctly clarifies *Bonham v. Southwest Sanitation, Inc.,* 871 S.W.2d 765, 767. However, *Bonham* does not change the language of the Palestine City charter to authorize the City Attorney to initiate suits without the direction of the City Council.

36.     No plausible scenario exists that would give rise to a genuine issue of material fact regarding the propriety of Stutes's suit against Laza in light of the City Charter and TOMA.

   **B. Plaintiff's request for injunctive relief under the Open Meetings Act succeeds.**

37.     Stutes does not dispute that actions taken by a governmental body in violation of TOMA are voidable. Tex. Gov't Code § 551.141. As previously explained herein, Stutes and city officials discussed the state lawsuit against Laza in a closed meeting with city officials for the City of Palestine, violating the TOMA. See Doc. No. 46, at 14-15. This controversy is ongoing and live, as the Texas state court lawsuit is currently active on appeal (Jerry Laza v. City of Palestine, Texas, No. 06-18-00051-CV). This Court has already stated that if Laza is successful in proving his TOMA claim, he can obtain relief from this Court in the form of "voiding the state court judgment against him." Doc. No. 82, at 1.

## II.   PRAYER FOR RELIEF

Laza prays that this court grant Laza's Motion for Summary Judgment and grant all other relief to which he may be entitled.

Respectfully submitted,
NORRED LAW, PLLC

/s/ Warren V. Norred
Warren V. Norred, Texas Bar No. 24045094
warren@norredlaw.com
515 E. Border Street
Arlington, Texas 76010
Tel. (817) 704-3984; Fax. (817) 524-6686
Attorney for Laza

**CERTIFICATE OF SERVICE** - I certify that the above was served on all parties seeking service via the Court's e-file system on March 22, 2022 (replacing an earlier form of the same document with an incorrect title and opening sentence filed midnight on March 21, 2022).

/s/Warren V. Norred