## IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF TEXAS
## TYLER DIVISION

| | | |
|---|---|---|
| **JERRY LAZA,** | § | |
| | § | |
| **Plaintiff,** | § | **CIVIL ACTION NO.  6:17-CV-00533-JDL** |
| | § | |
| **v.** | § | |
| | § | |
| **CITY OF PALESTINE, TEXAS, MIKE** | § | |
| **ALEXANDER, JOHN OR JANE DOES 1-** | § | |
| **9, RONALD STUTES, DOUG SMITH,** | § | |
| **WILL BRULE, STEVE PRESLEY,** | § | |
| **MITCHELL JORDAN, VICKEY** | | |
| **CHIVERS, LARISSA LOVELESS, JOE** | | |
| **BAXTER, DANA GOOLSBY, ANN** | | |
| **CONNER,** | | |
| | | |
| **Defendants.** | | |

### MEMORANDUM OPINION AND ORDER

Before the court are the parties cross-motions for summary judgment. (Doc. Nos. 86, 87, 88.) The motions have been fully briefed. (Doc. Nos. 86, 87, 88, 92, 93, 96, 97, 98, 104, 105, 108, 109.) Upon consideration of the parties' motions, and as set forth herein, the court rules as follows: (1) Defendants the City of Palestine, Mike Alexander, Joe Baxter, Will Brule, Vickey Chivers, Ann Conner, Dana Goolsby, Mitchell Jordan, Larissa Loveless, Steve Presley, and Doug Smith's ("the City Defendants") motion for summary judgment (Doc. No. 87) is **GRANTED-IN-PART** and **DENIED-IN-PART**; (2) Defendant Ronald Stutes's motion for summary judgment (Doc. No. 86) is **GRANTED-IN-PART**; and (3) Plaintiff Jerry Laza's motion for summary judgment (Doc. No. 88) is **DENIED**.

# BACKGROUND

## I.      Procedural History

The instant action came before this court after the City of Palestine removed Cause No. DCCV16-356-349A from the 349th Judicial District Court, Anderson County, Texas, based upon allegations that invoked a federal question pursuant to 28 U.S.C. §1441(a).  (Doc. No. 1.) Pursuant to the notice of removal, the removed pleading was Plaintiff's "Fifth Amended Original Answer and Second Amended Counterclaim." (Doc. No. 3.) Upon removal, Plaintiff Jerry Laza immediately petitioned this court for an emergency hearing seeking clarity on what was removed to federal court. (Doc. No. 5.) The court found that Plaintiff's "Fifth Amended Original Answer and Second Amended Counterclaim" filed in state court included allegations that invoked federal question jurisdiction. (Doc. No. 11.) Nonetheless, certain related state court claims remained in state court about to go to trial. As a result, the court stayed this action, but ordered Plaintiff to file an amended complaint delineating the federal claims he intended to assert in this matter. *Id.* On December 15, 2017, Plaintiff filed an amended complaint in this matter. (Doc. No. 16.)

The case remained stayed before this court while the court received status reports from the parties on the state court action and the desire to proceed with the federal claims before this court. On January 25, 2019, Plaintiff filed a suggestion of bankruptcy in this case. (Doc. No. 30.) Plaintiff had filed a Chapter 7 Bankruptcy petition in the Bankruptcy Court for the Eastern District of Texas. *See In re Jerry D. Laza*, No. 18-60485 (Bankr. E.D. Tex. 2018). As a result, the claims asserted before this court became an asset of the bankruptcy estate and the trustee became the real party in interest. Accordingly, the court added trustee Michelle Chow to this case and administratively closed the action pending bankruptcy proceedings. (Doc. No. 32.) Ms. Chow continued to provide the court status updates on the bankruptcy proceedings. (Doc. Nos. 34, 37, 38.) On October 1, 2020, Ms. Chow informed the court that Plaintiff and Ms. Chow reached a settlement approved by

2

the United States Bankruptcy Court for the Eastern District of Texas whereby Ms. Chow abandoned the estate's interest in the case and Plaintiff's interest in the federal claims returned to him. (Doc. No. 38.)

On February 15, 2021, following an order for a status update on the case, Plaintiff informed the court that he had retained counsel and would proceed with claims under 42 U.S.C. § 1983 and the Texas Open Meetings Act ("TOMA"). (Doc. No. 43.) On the same day, the court ordered Plaintiff to file and serve his amended complaint within fourteen days. (Doc. No. 44.) On March 9, 2021, Plaintiff filed his amended complaint with six causes of action against previously named Defendants. (Doc. No. 46.) This amended complaint remains to be the live complaint in this action. *Id.* The court re-opened the case on May 19, 2021. (Doc. No. 61.)

Thereafter, on motion practice, the court dismissed the claims against Defendant Ronald Stutes in his individual capacity for violations of the Fifth Amendment takings clause, the Fourteenth Amendment equal protection clause, and the Fourth Amendment. (Doc. No. 82.) The remainder of Plaintiff's asserted claims are presently pending, and Defendants have all filed answers. (Doc. Nos. 60, 83.) The court has entered a scheduling order, a discovery order, an e-discovery order, and a protective order. (Doc. Nos. 74, 75, 76, 78.) The case has since been proceeding on a schedule in accordance with these orders. The current docket control order set forth a deadline for the parties to file dispositive motions by February 18, 2022. (Doc. No. 81.) Accordingly, on that date, the parties filed the instant motions for summary judgment.

## II.    Factual Background

Plaintiff Jerry Laza ("Plaintiff" or "Mr. Laza") is a 57-year-old male who resides in Palestine, Texas. (Doc. No. 46, at ¶ 11.) In 1990, Mr. Laza purchased a property in the City of Palestine, Texas ("the City") located at 302 E. Crawford St. to start a lawnmower business. *Id.* at ¶ 12. From 1990 to 1994, Plaintiff ran his business repairing lawnmowers, chainsaws, and small

engines for members of the community. *Id.* at ¶ 13. It appears that during this time, Mr. Laza's property became what the community and the City considered to be an "eye sore" or nuisance. *Id.* at ¶¶ 14–15. At the same time, the City was undertaking a historic preservation project, incentivizing tax breaks for certain property owners to increase tourism to the City and improve the City's aesthetic. *Id.* at ¶¶ 15–16. Plaintiff alleges that his property was protected by grandfather clauses that enabled him to maintain his lawnmower shop as he had been doing, but that the City began issuing him citations for violating city zoning ordinances. *Id.* at ¶ 14. Plaintiff alleges that he attempted to comply with the City's requests by allowing the fire marshal on his property for regular inspections. *Id.* at ¶ 17. Plaintiff alleges that the fire marshal attempted to condemn his property and that the City cut off his gas, power, and water. *Id.* As a result, Plaintiff contends that he made his property self-sufficient by digging a well and crafting a homemade diesel generator to continue operating his business. *Id.* at ¶ 18.

In 1998, Plaintiff was approached by a customer who happened to be the head of the Palestine historical preservation movement. *Id.* at ¶ 19. The customer offered Mr. Laza a trade for his property at 1101 W. Oak St. for Mr. Laza's property at 302 E. Crawford St. *Id.* Plaintiff alleges that he agreed to the trade in hopes that this more rural location would mean that he would be left alone. *Id.* at ¶ 20. However, Plaintiff contends that, at the same time, the City created a "Main Street District" within its larger historic district through the Texas Historical Commission Main Street Program, and that this "Main Street District" was created about one block from Plaintiff's new property. *Id.* at ¶ 21. As a result, Plaintiff contends that the City showed up to his new property and began threatening citations for ordinance violations related to the outdoor storage of his lawnmower equipment. *Id.* at ¶ 22. Plaintiff contends that he responded by discontinuing his move onto the new property and offering to move his business back to his old location at 302 E. Crawford

4

St. *Id.* On June 22, 1998, the City responded by granting Plaintiff a specific use permit for his new property, allowing outside storage in the C-3 general commercial zoning district in which the property was located. *Id.* at ¶ 23.

From 1998 until 2006, Plaintiff contends that he was more or less left alone by the City. *Id.* at ¶¶ 23, 24. However, in 2006, Plaintiff alleges that the City issued him a series of violations for noncompliant outdoor storage, lack of privacy fencing, and operation of a junkyard with improper zoning. *Id.* at ¶ 24. At this point, Plaintiff contends that the City threatened him with criminal prosecution and so he offered to settle things by building a privacy fence, moving his lawnmowers inside of the fence, and adding hedges and shrubs. *Id.* at ¶ 25. Ultimately, the City filed suit in Palestine Municipal Court and the jury acquitted Mr. Laza finding that he had variances of outdoor storage dating back to the specific use permit the City granted Mr. Laza in 1998, that a privacy fence was not required in the front of Mr. Laza's business, and that Mr. Laza was operating a lawnmower shop instead of a junkyard. *Id.* at ¶ 26.

Thereafter, again, there was peace between the City and Mr. Laza for a time. *Id.* at ¶¶ 26, 27. Three years later in 2009, the City issued Mr. Laza tickets for keeping a horse inside city limits. *Id.* at ¶ 27. Mr. Laza then applied for an agricultural designation and was granted a designation allowing him to keep goats and horses within city limits. *Id.* at ¶ 27.

Things remained quiet between Mr. Laza and the City for several more years. *Id.* at ¶¶ 27, 28. In 2016, under new city leadership, Mr. Laza was served with 28 pages of violations of city codes and ordinances. *Id.* at ¶ 28. Mr. Laza contends he attempted to resolve these ordinance violations, but that on June 9, 2016, the City brought suit against Mr. Laza in state district court— *City of Palestine, Texas v. Jerry Laza*, No. DCCV16-356-349. *Id.* at ¶¶ 31, 32. This suit resulted in a jury trial where the City prevailed. *Id.* at ¶ 32. Specifically, the jury found in favor of the City

and awarded damages in the amount of $163,155.00, and granted a permanent injunction against Mr. Laza. (Doc. No. 60, at 3.) That verdict remains on appeal. *Id.* at ¶ 33.

### a. Plaintiff's Claims

With this background, Plaintiff brings the following claims against the named Defendants: (1) "Violation of Takings Clause," (2) "Violation of Equal Protection Clause," (3) "Violation of Due Process," (4) "Unlawful Search," (5) "Violation of Texas Open Meetings Act," and (6) "Injunctive Relief." (Doc. No. 46, at 9–16.)

Specifically, Plaintiff brings several claims for constitutional violations pursuant to 42 U.S.C. § 1983. First, Plaintiff contends that the City's enforcement of ordinances against him when he was granted permission through a specific use permit constitutes a regulatory taking under the Fifth Amendment. *Id.* at ¶¶ 39–43. Plaintiff further brings a § 1983 claim against the City for violation of the equal protection clause pursuant to the Fourteenth Amendment for unequal enforcement of its ordinances against Plaintiff that has severely impeded the use of his property in a manner that others are able to enjoy. *Id.* at ¶¶ 44–47.  Next, Plaintiff alleges a Fourteenth Amendment procedural due process claim against Defendant Ronald Stutes and the City for initiating the 2016 state court lawsuit against Plaintiff without prior approval of the Palestine City Council, the City's governing body, as required by state law. *Id.* at ¶¶ 48–52. Lastly, Plaintiff brings a Fourth Amendment claim against the City for an unlawful search of his property that allegedly occurred on October 21, 2016, for investigative regulatory purposes and without a probable cause. *Id.* at ¶¶ 53–55.

Plaintiff's final claim against Defendants is for violation of the TOMA. Specifically, Plaintiff contends that Defendants heard and discussed the lawsuit against him at an unnoticed meeting whose agenda did not include the prosecution of a lawsuit against Plaintiff. *Id.* at ¶¶ 56–

64. Plaintiff seeks injunctive relief for this alleged violation that the court temporarily enjoin Defendants' enforcement actions to preserve the status quo prior to the conduct by Defendants in violation of TOMA. *Id.* at ¶¶ 65–69.

### b.   Defendants' Answers and Affirmative Defenses

The City Defendants filed an answer on May 18, 2021, asserting that the individual members of the Palestine City Council, Doug Smith, Will Brule, Steve Presley, Mitchell Jordan, Vickey Chivers, Larissa Loveless, Joe Baxter, Dana Goolsby, and Ann Conner, should be dismissed as Defendants from this action because they are each sued in their official capacity and the claims are identical to those of the claims against the City. (Doc. No. 60, at 2.)  The City Defendants also raised an argument that the claims should be dismissed for judicial estoppel and mootness based upon Mr. Laza's settlement with the bankruptcy court. *Id.* at 2–3. The City Defendants further raised the affirmative defenses of failure to state a claim, sovereign immunity, governmental immunity, statute of limitations, good faith, failure to mitigate, exhaustion, judicial estoppel, mootness, and all other defenses and immunities contained in Texas Civil Practice & Remedies Code §101.001, §101.057, § 101.106, and § 101.023. *Id.* at 13–16.  The City Defendants seek all costs and attorney's fees incurred in the defense of this matter pursuant to 42 U.S.C. § 1988. *Id.* at 16.

As discussed above, Defendant Ronald Stutes, the city attorney, first brought a motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6). (Doc. No. 59.) The court granted Defendant Stutes's motion to dismiss as to the claims against Defendant Stutes in his individual capacity for violations of the Fifth Amendment takings clause, the Fourteenth Amendment equal protection clause, and the Fourth Amendment, and dismissed those claims without prejudice as agreed. (Doc. No. 82.) The court made no ruling as to any official capacity claims as those claims

were not brought to question before the court on motion practice. *Id.* The court further found that Plaintiff's due process and TOMA claims against Defendant Stutes were not barred by the statute of limitations. *Id.* The court additionally found that Plaintiff's claims were not barred by the doctrine of judicial estoppel and that Plaintiff's TOMA claims were not moot. *Id.*

Thereafter, on July 15, 2021, Defendant Stutes filed an answer to Plaintiff's amended complaint. (Doc. No. 83.) Therein, Defendant Stutes pleaded the affirmative defenses of failure to state a claim, qualified and official immunities, statute of limitations, good faith, failure to mitigate, exhaustion, judicial estoppel, mootness, and all other defenses and immunities contained in Texas Civil Practice & Remedies Code § 101.106 and § 101.023. *Id.* at 12–15. Defendant Stutes seeks all costs and attorney's fees incurred in the defense of this matter pursuant to 42 U.S.C. § 1988. *Id.* at 15.

## III.     Summary Judgment Record

The parties have submitted several affidavits, documents, and deposition transcripts in support of their respective summary judgment motions.

### a.   Defendants' Summary Judgment Evidence

#### i.   Affidavit of Ronald Stutes

In support of their motions, Defendants have submitted an affidavit of Defendant Ronald Stutes. (Doc. No. 86-1; Doc. No. 87-1, hereinafter "Stutes Aff.") Of relevance, Mr. Stutes provides in his affidavit that he is the city attorney for the City of Palestine and that in early 2016 he had a meeting with several city officials, including Assistant City Manager Larry Pannel, Development Services Director Jeffery Lyons, and Code Enforcement Officer Patsy Smith to discuss city ordinance violations by Mr. Laza. Stutes Aff. at ¶¶ 3,4. Mr. Stutes states that it was decided at this meeting that a written notice of violation would be provided to Mr. Laza for his ordinance violations and that if Mr. Laza did not comply after written notice, that all attendees of the meeting

were in agreement that a lawsuit against Mr. Laza would be filed to enforce the ordinances. *Id.* at ¶ 4. Mr. Stutes states that because Mr. Laza did not comply, he drafted and filed *City of Palestine v. Jerry Laza*, Cause No. DCCV16-356-349, in the 349th Judicial District Court of Anderson County, Texas, pursuant to his authority as city attorney granted by the city charter, and at the request and approval of appropriate City of Palestine officials. *Id.* at ¶ 5. The City continued to have meetings during the pendency of the lawsuit regarding the status of litigation. *Id.* at ¶ 6.

Mr. Stutes also states that discovery was conducted during the course of this lawsuit and that two inspections of Mr. Laza's property were undertaken at the agreement of counsel and under the Texas Rules of Civil Procedure. *Id.* at ¶¶ 7–10. Mr. Stutes attaches an order authorizing the 2017 inspection. *Id.* at ¶ 11, Ex. A-4.

Mr. Stutes further states that during the course of the state litigation, Plaintiff's state court counsel filed a "Motion to Show Authority and Request for Emergency Hearing" that contended that Mr. Stutes did not have authority from the City to file suit against Plaintiff. *Id.* at ¶ 12, Ex. A-5. Mr. Stutes notes that the part of the evidence received by the state court was an affidavit of Mike Alexander, the then city manager of the City of Palestine, stating that Mr. Stutes had authority to file the suit. *Id.* at ¶ 12, Ex. A-6. Mr. Stutes states that the state court denied Plaintiff's motion and found that he had authority to file the lawsuit. *Id.* at ¶ 12.

Finally, Mr. Stutes provides that on September 18, 2017, a jury trial was held and the City prevailed on all issues wherein Plaintiff was found liable to the City for $163,155.00 in civil penalties and enjoined in numerous respects. *Id.* at ¶ 13.

### ii.  State Court Documents

Defendants also provide several state court documents as part of the summary judgment record. These include a number of discovery emails between state court counsel, including a

request for entry onto property stating counsel Robert Hindman did not object (Doc. No. 86-1, at 4–5); a motion for continuance filed by Plaintiff's lawyer that states an inspection of Mr. Laza's property was conducted on October 21, 2016 (*id.* at 6–8); an August 21, 2017 order authorizing entry on Mr. Laza's property (*id.*at 10–12); Plaintiff's motion to show authority (*id.* at 12–15); an affidavit of city manager Mike Alexander (*id.* at 16 –17); and the judgment of the state court against Mr. Laza (*id*. at 18–22).

### 1.   Affidavits of Mike Alexander

The declaration of Mike Alexander was also submitted separately in connection with Defendants' motions. (Doc. No. 86-2; Doc. No. 87-2, hereinafter "Alexander Aff."). Mr. Alexander states that he was the city manager for the City of Palestine, that Mr. Stutes was authorized to file the lawsuit and prosecute the lawsuit against Mr. Laza, and that the city council has been made aware of the lawsuit and no councilmember has expressed any desires to discontinue the lawsuit. *Id.* at ¶¶ 1–6. The City Defendants also include a new declaration from Mike Alexander stating that he was physically present for the inspection of Mr. Laza's property on October 16, 2016, and that he understood it to be by way of agreement between the lawyers, but that he did not step onto Mr. Laza's property or conduct any search on that date. (Doc. No. 87-9.)

### 2.   Additional Documents Submitted by the City Defendants

The City Defendants separately attach a complaint from the state court action (Doc. No. 87-8), as well as the state court judgment against Mr. Laza. (Doc. No. 87-11.) Additionally, the City Defendants attach an expert report of Jeffery Lyons from the state court proceeding discussing the conditions of Mr. Laza's property and the violations of city ordinances. (Doc. No. 87-5.) The City Defendants submit a similar expert report discussing the condition of the property and the

ordinance violations from the state court proceedings from Patsy Smith, City Code Enforcement Officer. (Doc. No. 87-6.) Lastly, the City Defendants include the written notice to Mr. Laza of his ordinance violations. (Doc. No. 87-7.)

### iii.  Affidavit of Teresa Herrera

Defendants also submit two affidavits of Teresa Herrera, the current city manager of the City of Palestine. (Doc. Nos. 86-3, 86-4, 87-3, 87-4, hereinafter "Herrera Affs."). The first affidavit provides copies of agendas and minutes for city council meetings from June 27, 2016 through October 8, 2018. (Doc. Nos. 86-3.) Ms. Herrera notes that the state court lawsuit against Mr. Laza was discussed by the city council in a closed session. *Id.* at ¶ 3. The second affidavit of Ms. Herrera attaches the City of Palestine City Charter ("City Charter"). (Doc. Nos. 86-4, 87-4.) The City Defendants also attach a third declaration of Ms. Herrera that contains copies of the reports prepared by city employees Jeffery Lyons and Patsy Smith showing photographs of the property owned by Mr. Laza. (Doc. No. 87-10.)

### b.  Plaintiff's Summary Judgment Evidence

In support of his summary judgment motion, Plaintiff submits a single attached exhibit containing exhibits labeled as Exhibit A through I therein. (Doc. No. 88-1.) Plaintiff's Exhibit A is the oral depositions of Jeffrey Lyons and Patsy Smith from June 5, 2017. *Id.* at 2–59 (hereinafter "Lyons and Smith Depo."). Plaintiff's Exhibit B is his specific use permit granted by the City of Palestine on June 22, 1998. *Id.* at 60–61. Plaintiff's Exhibit C is Defendant Stutes's Answer, Responses, and Objections to Plaintiff's written discovery. *Id.* at 63–72. Plaintiff's Exhibit D contains numerous complaints and affidavits from the early 2000s regarding Mr. Laza's alleged violations of city ordinances. *Id.* at 73–85. Plaintiff also includes his written notice of city ordinance violations from April 6, 2016 as Exhibit E (*id.* at 87–89), as well as the state court

judgment against him as Exhibit F (*id.* at 92–96). Plaintiff also includes his petition for writ of mandamus in state court (Exhibit H), as well as the Twelfth Court of Appeals' denial of his mandamus petition (Exhibit G), including the transcript from the hearing and the evidence presented. *Id.* at 98–149. Lastly, Plaintiff submits his own declaration in connection with this matter. *Id.* at 151–53 (hereinafter "Laza Aff.").

### i. Declaration of Jerry Laza

In his declaration, Plaintiff states that in 1990 he purchased Halls Repair, a local small engine repair shop located at 302 E. Crawford St, Palestine, Texas 75801 from Elizabeth Neal. *Id.* at ¶ 1. Plaintiff states that he operated a small engine repair shop at this location from 1990–1994 without any difficulty and that his property was compliant with city regulations. *Id.* at ¶¶ 2, 3. Mr. Laza states that in 1995 the City began a campaign against him to drive him out of town using zoning regulations because his property fell into the Downtown Historic District and it did not fit with certain city leaders' vision for the area. *Id.* at ¶¶ 2, 4. Mr. Laza contends that he attempted to comply with the alleged violated ordinances and had grandfathered exemptions to the violations, but that upon one visit the fire marshal threatened to have his property condemned and then the City cut off his gas, power, and water in retaliation. *Id.* at ¶ 5. Mr. Laza states that he dug a functional well and crafted a homemade diesel generator from mechanical parts in his shop in order to keep his business running. *Id.* at ¶ 6.

Thereafter, Plaintiff states that in 1998, tired of fighting with the City, he agreed to make a trade with a Palestine historical preservationist to acquire a property located at 1101 W. Oak St., Palestine, Texas 75801 that was located on underdeveloped land and more suitable for running his business. *Id.* at ¶¶ 7, 8. Plaintiff states that shortly after acquiring this property he began receiving threats for ordinance violations related to outdoor storage of his inventory and that he was aware

that the City was expanding a Main Street District that was created about one block from this new property. *Id.* at ¶¶ 9, 10. Plaintiff states that he offered to move back to his old location to resolve the threats and that shortly thereafter, on June 22, 1998, the City provided him a specific use permit for the property for outside storage in the C-3 General Commercial Zoning District in which the new property was located. *Id.* at ¶¶ 10, 11.

Plaintiff states that in 2006, the City issued him new citations including noncompliant outdoor storage, lack of privacy fencing, and operation of a junkyard with improper zoning, threatening to prosecute him criminally. *Id.* at ¶¶ 12, 13. Plaintiff states that he offered to settle the matter outside of the courtroom by building a privacy fence, moving lawnmowers and other inventory inside the fence, as well as adding hedges and shrubs, but that the City would not agree and prosecuted him instead. *Id.* Plaintiff states that jury acquitted him of all charges, finding that he had variances of outdoor storage dating back to the ordinance the City granted him in 1998, that a privacy fence was not required in the front of his business, and that he was operating a lawnmower shop instead of a junkyard. *Id.* at ¶ 14. Plaintiff further states that in 2009, an animal control officer for the City of Palestine began writing him tickets for keeping a horse inside city limits, but that at the request of the Palestine Municipal Court judge, he applied for an agricultural designation and was granted such. *Id.* at ¶ 15.

Next, in 2016, Plaintiff states that city manager Mike Alexander and city attorney Ronald Stutes filed suit against him in state district court—*City of Palestine, Texas v. Jerry Laza*, No. DCCV16-356-349. *Id.* at ¶ 16. Plaintiff states that two months prior to filing, the City's Code Enforcement department, under the direction of Mike Alexander, presented him with 28 pages of alleged violations of city codes and ordinances in the form of a complaint that were nearly identical to the violations cited by the City in 2006 and 2009. *Id.* Plaintiff states that he contacted Mike

13

Alexander and offered to settle the matter out of court. *Id.* at ¶ 17. Plaintiff asserts that he was aware of the approval process for filing a lawsuit brought by the City of Palestine and that no such approval was given prior to filing suit against him. *Id.* at ¶ 18. Plaintiff states that the uncontested record shows that the lawsuit was never discussed with the city council until June 27, 2016, 18 days after it was filed on June 9, 2016, and that the Palestine city council members had heard nothing about the lawsuit until he contacted them. *Id.* Plaintiff further states that he is personally aware of other businesses in the City of Palestine, including large chains and smaller retail businesses, that keep their property in a similar state to Plaintiff's property, but who have never been prosecuted by the City. *Id.* at ¶ 19.

Lastly, Plaintiff states that on October 21, 2016, the City of Palestine, under the direction of Mike Alexander, conducted a warrantless search of his property using law enforcement and city personnel. *Id.* at ¶ 20.

## LEGAL STANDARD

A motion for summary judgment should be granted if the record, taken as a whole, "together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed.R.Civ.P. 56; *Celotex Corp. v. Catrett*, 477 U.S. 317, 323–25 (1986); *Ragas v. Tennessee Gas Pipeline Co.*, 136 F.3d 455, 458 (5th Cir. 1998).  The Supreme Court has interpreted the plain language of Rule 56 as mandating "the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, on which that party will bear the burden of proof at trial." *Celotex*, 477 U.S. at 322.

The party moving for summary judgment "must 'demonstrate the absence of a genuine issue of material fact,' but need not negate the elements of the nonmovant's case." *Little v.*

*Liquid Air Corp.*, 37 F.3d 1069, 1075 (5th Cir. 1994) (en banc) (quoting *Celotex*, 477 U.S. at 323–25). A fact is material if it might affect the outcome of the suit under the governing law. *Merritt-Campbell, Inc. v. RxP Prods., Inc.*, 164 F.3d 957, 961 (5th Cir. 1999). Issues of material fact are "genuine" only if they require resolution by a trier of fact and if the evidence is such that a reasonable jury could return a verdict in favor of the nonmoving party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986); *Merritt-Campbell, Inc.*, 164 F.3d at 961. If the moving party "fails to meet this initial burden, the motion must be denied, regardless of the nonmovant's response." *Little*, 37 F.3d at 1075.

If the movant meets this burden, Rule 56 requires the opposing party to go beyond the pleadings and to show by affidavits, depositions, answers to interrogatories, admissions on file, or other admissible evidence that specific facts exist over which there is a genuine issue for trial. *EEOC v. Texas Instruments, Inc.*, 100 F.3d 1173, 1180 (5th Cir. 1996); *Wallace v. Texas Tech. Univ.*, 80 F.3d 1042, 1046–47 (5th Cir. 1996). The nonmovant's burden may not be satisfied by argument, conclusory allegations, unsubstantiated assertions, metaphysical doubt as to the facts, or a mere scintilla of evidence. *Matsushita Elec. Indus. Co. v. Zenith Radio*, 475 U.S. 574, 585 (1986); *Wallace*, 80 F.3d at 1047; *Little*, 37 F.3d at 1075.

When ruling on a motion for summary judgment, the Court is required to view all justifiable inferences drawn from the factual record in the light most favorable to the nonmoving party. *Matsushita*, 475 U.S. at 587; *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 158–59 (1970); *Merritt-Campbell, Inc.*, 164 F.3d at 961. However, the Court will not, "in the absence of any proof, assume that the nonmoving party could or would prove the necessary facts." *McCallum Highlands, Ltd. v. Washington Capital Dus, Inc.*, 66 F.3d 89, 92 (5th Cir. 1995), *as modified*, 70 F.3d  26 (5th Cir. 1995). Unless there is sufficient evidence for a reasonable jury to return a verdict

in  the opposing party's favor, there is no genuine issue for trial, and summary judgment must be granted.  *Celotex*, 477 U.S. at 322–23; *Anderson*, 477 U.S. at 249–51; *Texas Instruments*, 100 F.3d at 1179.

## DISCUSSION

The City Defendants move for summary judgment on all of Plaintiff's asserted claims: the Fifth Amendment takings claim; the Fourteenth Amendment equal protection claim; the Fourteenth Amendment procedural due process claim; the Fourth Amendment unlawful search claim; the TOMA claim; and Plaintiff's claim for injunctive relief. (Doc. No. 87.) The City Defendants also move for summary judgment on the defense of qualified immunity as to Defendant Mike Alexander. *Id*. Defendant Stutes moves for summary judgment on Plaintiff's Fourteenth Amendment procedural due process claim; Plaintiff's TOMA claim; and Plaintiff's claim for injunctive relief. (Doc. No. 86.) Defendant Stutes also moves for summary judgment on the defense of qualified immunity. *Id.* Plaintiff moves for summary judgment on his TOMA claim; his Fourteenth Amendment procedural due process claim; his Fourteenth Amendment equal protection claim; and his Fifth Amendment takings claim. (Doc. No. 88.) Plaintiff also contends the court should grant summary judgment on Defendant's Stutes's affirmative defenses because they were not adequately pleaded. *Id.* Plaintiff also notes that while he does not move for summary judgment on his Fourth Amendment claim, he will agree to dismissal of that claim to fully resolve the case if the court grants his motion. *Id.*

As all of these motions present overlapping claims, issues, and facts for the court's consideration, the court will consider each motion in turn, starting first with the City Defendants' motion.

I.      **The City Defendants' Motion for Summary Judgment (Doc. No. 87)**

      a.  **Individual Defendant City Council Members**

The City Defendants assert that in Plaintiff's amended complaint, he names several of the individual Palestine city council members as Defendants—Doug Smith, Will Brule, Steve Presley, Mitchell Jordan, Vickey Chivers, Larissa Loveless, Joe Baxter, Dana Goolsby, and Ann Conner ("City Council Defendants"). (Doc. No. 87, at 12.) The City Defendants contend that the claims against the city council members are identical to the claims against the City. *Id.* As a result, the City argues that this is simply a pleading against the entity of which these officers are agents, and because the City is already a defendant who would indemnify these individuals, the claims against these individuals should be dismissed on summary judgment. *Id.* Plaintiff contends that there is no basis to dismiss the individual defendants because they are being sued in their official capacities and the City simply claims "official immunity" without proffering any evidence that the individual defendants acted within the scope of their discretionary authority. (Doc. No. 96, at 7–8.)

As an initial matter, the City Defendants' argument for dismissal based on indemnification fails. The issue of indemnification is not a basis for dismissal in a § 1983 case, even in an official capacity case. Unlike the Texas Tort Claims Act, which contains an election-of-remedies immunity provision, §1983 contains no such provision to provide a basis for dismissal. *See Estate of Sorrels v. City of Dallas*, 45 F. App'x 325, 2002 WL 1899592, at *4 (5th Cir. July 10, 2002) (per curiam) (concluding that Section 101.106 of the Texas Tort Claims Act does not apply to a plaintiff's section 1983 claim); *Golden v. Austin Cty. Sheriff's Dep't*, No. CIV.A.H-09-817, 2009 WL 1835448, at *5 (S.D. Tex. June 26, 2009) (same); *Baker v. Sheriff Jim Bowles*, Civ. A. No. 3:05–cv–1118–L, 2005 WL 5773665 (N.D. Tex. Dec. 14, 2005) (election-of-remedies bar under Section 101.106 does not apply to section 1983 claim because it is not brought under the Texas

Tort Claims Act); *see also Rogers v. Bonnette*, No. Civ. A. SA04CA0118XR,  2005 WL 1593437, at *3 (W.D. Tex. July 5, 2005) (denying motion to dismiss section 1983 claims on the basis of Section 101.106 of the Texas Tort Claims Act). Neither the City nor the City Council Defendants argue any basis for official immunity. As such, the court finds no basis to grant summary judgment as to the City Council Defendants on these grounds.

However, the court agrees that Plaintiff's factual allegations asserted in his amended complaint do not identify any separate claims against the individual city council members. (Doc. No. 46.) Rather, as discussed, the claims are directed towards the actions of the City and the claims are therefore identical. *Id*. The court agrees that the asserted claims are those brought against the City Council Defendants in their official capacity, which renders the allegations to be against the entity itself—in this case, the City. *See Olibas v. Dodson*, 593 F. App'x 412, 413, n.1 (5th Cir. 2015) ("[I]t is well-settled that claims against a municipal official in his official capacity are claims against the county."). Indeed, in his response, Plaintiff does not contest that the claims are duplicative and concedes the claims against the City Council Defendants are official capacity claims. (Doc. No. 97, at 7.) While Plaintiff contends the City Council Defendants are necessary parties, the complaint contains absolutely no factual allegations as to these individuals. (Doc. No. 46.) As such, Plaintiff has failed to establish their necessity to this case and has failed to state a claim against them. Because the claims against the City Council Defendants are identical to the claims against the City, the court has discretion to dismiss those claims as duplicative. *See Graham v. Hodge*, 619 F. App'x 394, 395 (5th Cir. 2015) (affirming dismissal where the district court concluded that the claims against the county and the individual in his official capacity were duplicative); *Castro Romero v. Becken*, 256 F.3d 349, 355 (5th Cir. 2001) (concluding the district court was correct in dismissing the allegations against individuals in their official capacities, as

the allegations duplicated the claims against the respective governmental entities themselves). Having found the claims against the City Council Defendants to be duplicative of the claims against the City, the court agrees that they should be dismissed as duplicative.

For these reasons, the City Defendants' motion (Doc. No. 87) is therefore **GRANTED** as to dismissal of the City Council Defendants on the grounds of duplicity. The claims against Doug Smith, Will Brule, Steve Presley, Mitchell Jordan, Vickey Chivers, Larissa Loveless, Joe Baxter, Dana Goolsby, and Ann Conner are dismissed without prejudice.

### b.  Fifth Amendment Takings Claim

The City Defendants note that Plaintiff only seeks a claim establishing a regulatory taking as he does not claim his physical property was actually taken. (Doc. No. 87, at 13–14.) The City Defendants cite to various evidence indicating that Plaintiff was in violation of numerous city ordinances and zoning regulations designed to serve a valid public interest to further the health, safety, and welfare of its residents. *Id.* at 14, citing Exhibits E, F. The City Defendants note that these ordinances were applicable to all citizens and that a court may only interfere if an ordinance is unreasonable and arbitrary. *Id.* at 14–15. The City Defendants argues that Plaintiff has produced no evidence to show that reasonable minds may differ on the issue of public health and safety given the condition of his property. *Id* at 15. The City Defendants therefore argue that summary judgment is appropriate because the enactment and enforcement of its ordinances were a valid exercise of its police power and did not constitute a taking. *Id.* Further, the City Defendants argue that Plaintiff does not have a *Penn Central* takings claim as there is no evidence that the actions of the City destroyed all avenues of economically beneficial use of the property or that the enforcement of the city ordinances has negatively impacted the value of the property. *Id.* at 16. The City Defendants argue that imposing a financial hardship on a property owner to comply with

regulations is not a direct restriction on the use of the property and as such Plaintiff's takings claim fails. Plaintiff argues that the City's enforcement of ordinances against Mr. Laza constitutes a regulatory taking. (Doc. No. 96, at 9.) Specifically, Plaintiff argues that the City has impeded his ability to use his land for outside storage despite granting him a specific use permit and that enforcement of the ordinances will significantly impact his future use and economic interest in the land because he will no longer be able to operate it the way he has since 1998. *Id.* at 9–10. Plaintiff argues that the *Penn* factors preclude summary judgment and the facts show there is a material dispute where the City has essentially forced Mr. Laza into moving on account of its historical preservation agenda, subjected his property to inspections, and shut off his power, water, and gas. *Id.* at 10–12.

"The Fifth Amendment ... provides that 'private property' shall not 'be taken for public use, without just compensation.'" *Phillips v. Wash. Legal Found.*, 524 U.S. 156, 163–64 (1998) (quoting U.S. CONST. AMEND. V).[1] The purpose of the takings clause is to prevent the government from "forcing some people alone to bear public burdens, which, in all fairness and justice, should be borne by the public as a whole." *Eastern Enterprises v. Apfel*, 524 U.S. 498, 522 (1998) (quoting *Armstrong v. United States*, 364 U.S. 40, 49 (1960)). Under the clause, a taking may occur not only where the government directly appropriates private property, but also may arise from an economic regulation—a "public program adjusting the benefits and burdens of economic life to promote the common good." *Penn Central Transp. Co. v. New York City*, 438 U.S. 104, 124 (1978). "A regulatory restriction on use that does not entirely deprive an owner of property rights may not be a taking under *Penn Central*." *Horne v. Dep't of Agric.*, 576 U.S. 350, 364 (2015). In considering the existence of a Fifth Amendment regulatory taking, the court considers three

---

[1] The Fifth Amendment applies to the states through the Fourteenth Amendment. *Williamson County Regional Planning Comm'n v. Hamilton Bank of Johnson City*, 473 U.S. 172 (1985).

factors: "(1) the economic impact of the regulation on the claimant; (2) the extent to which the regulation has interfered with distinct investment-backed expectations; and (3) the character of the governmental action." *Murr v. Wisconsin*, ⸺ U.S. ⸺, 137 S. Ct. 1933, 1937 (2017); *Degan v. Bd. of Trustees of Dallas Police & Fire Pension Sys.*, 956 F.3d 813, 815 (5th Cir.), cert. denied, 141 S. Ct. 375, 208 L. Ed. 2d 97 (2020). A plaintiff bears a substantial burden in proving that government action inflicts an unconstitutional taking. *See United States v. Sperry Corp.*, 493 U.S. 52, 60 (1989); *U.S. Fid. & Guar. Co. v. McKeithen*, 226 F.3d 412, 416 (5th Cir. 2000).

Here, Plaintiff's Fifth Amendment claim is indisputably a regulatory taking claim based upon the City's enforcement of ordinances against him, which he contends has prevented him from using his property for outside storage. (Doc. No. 96, at 9.) Thus, the court's consideration of this claim turns on "(1) the economic impact of the regulation on the claimant; (2) the extent to which the regulation has interfered with distinct investment-backed expectations; and (3) the character of the governmental action." *Murr,* 137 S. Ct. at 1937. Despite making the claim for a regulatory taking, Plaintiff has failed to provide any evidence of the economic impact of such a taking on his property. For example, Plaintiff provides no business receipts, inventory documentation, tax filings, or any other documents that might provide insight into how the enforcement of the city ordinances depriving him of outdoor storage might have affected his property and the operation of his business. Nor has Plaintiff provided any expert testimony as to the economic impact of the alleged regulation on his property. Plaintiff has only provided his own suggestions via his declaration regarding any investment-backed expectations for the property. *See* Doc. No. 88-1, at 151–53. In addition, Plaintiff merely suggests that the City was involved in a general historical preservation effort. Without more, this preservation effort cannot be characterized as the City's acquisition of resources to permit or facilitate uniquely public functions.

The court finds that this evidence, even construed in the light most favorable to Plaintiff, does not meet Plaintiff's substantial burden in proving that the City's actions constituted an unconstitutional taking and ultimately fails to raise a genuine issue of material fact as to this claim. *See, e.g., Kelly v. City of Texas City*, No. CV G-10-326, 2011 WL 13340591, at *4 (S.D. Tex. May 9, 2011), report and recommendation adopted, No. CV G-10-326, 2011 WL 13340581 (S.D. Tex. June 8, 2011) (finding that the city's enforcement of a junk dealer ordinance did not deny plaintiff "all economically beneficial or productive use of the land," and was not a compensable regulatory taking).

For these reasons, the court **GRANTS** the City Defendants' motion for summary judgment (Doc. No. 87) as to Plaintiff's Fifth Amendment takings claim. Plaintiff's Fifth Amendment takings claim is therefore dismissed with prejudice.

### c.   Fourteenth Amendment Equal Protection Claim

The City Defendants argue that they are entitled to summary judgment on Plaintiff's equal protection claim because: (1) Plaintiff has not identified any individuals who are similarly situated; (2) Plaintiff has failed to identify evidence that the policy in question and the City's enforcement of ordinances actually targeted Plaintiff while other property owners were not held to the same scrutiny; and (3) there is no evidence that Plaintiff's alleged disparate treatment was the result of any personal animus or ill-will by City officials. (Doc. No. 87, at 18.) Plaintiff argues that the City's selective enforcement of ordinances against him constitutes discrimination in violation of the equal protection clause and cites to evidence where similarly situated properties were treated differently. (Doc. No. 96, at 12–14.) Plaintiff contends that the City has no rational basis for targeting Mr. Laza, not only by choosing to enforce its ordinances against him but by suing him

22

while other property owners simply ignore the ordinances. *Id.* at 15. Plaintiff argues that the decade long dispute between the parties is evidence of the City's discriminatory animus towards him. *Id.*

The equal protection clause of the Fourteenth Amendment to the Constitution of the United States guarantees, in pertinent part, that no state shall "deny to any person within its jurisdiction the equal protection of the laws." U.S. CONST. AMEND. XIV, § 1.  A plaintiff may bring a cause of action for violation of his right to equal protection under § 1983. *Southard v. Tex. Bd. of Criminal Justice*, 114 F.3d 539, 550 (5th Cir. 1997). The equal protection clause directs that "persons similarly situated should be treated alike." *Williams v. Bramer,* 180 F.3d 699, 705 (5th Cir. 1999). Class-of-one equal protection theory protects an individual from being "intentionally treated differently from others similarly situated" when there is "no rational basis for the difference in treatment." *Engquist v. Oregon Dep't of Agric.*, 553 U.S. 591, 601 (2008). The Fifth Circuit recognizes three different types of class-of-one claims: (1) "selective enforcement"; (2) adverse zoning permit decisions; and (3) "personal vindictiveness." *Mikeska v. City of Galveston*, 451 F.3d 376, 381, n. 4 (5th Cir. 2006). A Plaintiff must show that (1) he was intentionally treated differently from others similarly situated; and (2) there was no rational basis for the difference in treatment. *Lindquist v. City of Pasadena*, 669 F.3d 225, 233 (5th Cir. 2012).

Here, Plaintiff has clearly characterized his equal protection claim as one of selective enforcement.   (Doc. No. 96, at 12–13.) Cases involving a claim based on selective enforcement generally require a showing that the selective enforcement "was deliberately based upon an unjustifiable standard such as race, religion, or other arbitrary classification." *Allred's Produce v. U.S. Dep't of Agric.*, 178 F.3d 743, 748 (5th Cir. 1999) (quoting *Oyler v. Boles*, 368 U.S. 448, 456 (1962)). Plaintiff has failed to provide summary judgment evidence that the City's enforcement of ordinances against him was deliberately based upon an unjustifiable standard or that the City acted

with any ill will or illegitimate animus. Plaintiff's declaration describes the motive of the City in attempting to revitalize downtown through historical preservation. (Doc. No. 88-1, at 151–53.) While Plaintiff's testimony via declaration provides his suggestion that the City has targeted him for more than two decades, Plaintiff has failed to provide any direct evidence regarding the City's improper motive and selective enforcement against him. *See Horton v. City of Smithville*, 117 F. App'x 345, 348 (5th Cir. 2004) (affirming summary judgment of plaintiff's selective enforcement equal protection claim where plaintiff presented no proof that improper considerations motivated the city). In other words, Plaintiff's evidence of improper motive is solely that the City sought to enforce certain city ordinances over a lengthy period of time. But simply pointing to such conduct does not raise fact issues concerning whether the City acted with an improper movie.  Moreover, the Fifth Circuit has stated that "personal vindictiveness by itself is insufficient as an improper motive in the absence of some other class – or group-based discrimination." *Beeler v. Rounsavall*, 328 F.3d 813, 818 (5th Cir. 2003). As Plaintiff has asserted a "class of one" claim based upon selective enforcement, the court finds the evidence legally and factually insufficient to allow this claim to proceed to trial.

In addition, Plaintiff has not shown that he was intentionally treated differently from others similarly situated. Plaintiff cites to the 2017 deposition testimony of Jeffrey Lyons and Patsy Smith, taken in connection with the state court proceedings, as evidence that the City did not enforce the same ordinances against other property owners who were in violation. (Doc. No. 88, at 15.) Plaintiff points to several properties that he contends were similarly situated and treated differently: (1) property adjacent to Mr. Laza's owned by the railroad and TxDOT, where allegedly the grass is not mowed in compliance with a city ordinance (Doc. No. 88-1, at 194:17–195:13); (2) property owned by the railroad that might be a mosquito trap or rat harborage (*id.* at 195:25–

197:16, 223:15–224:15); (3) city warehouse properties that have overgrown grass, contains junk vehicles, outside storage bins, and trash, and is likely a rat and mosquito harborage (*id.* at 206:14–211:23, 227:18–228:15); (4) a property that appears to have tall grass and weeds and mosquitoes (*id.* at 212:2–213:5, 228:16–229:10); (5) a residential property that contains a dumping grounds that has not been zoned for such (*id.* at 213:7–215:18, 229:12–231:7); (6) an old hospital in violation of city code (*id.* at 231:8–232:12); other residential properties that have overgrown weeds and potentially rats (*id.* at 219:11–220:14, 232:13–233:20; 220:20–221:10, 233:21–234:14); (7) residential properties that contain junk vehicles or overgrown grass (*id.* at 221:14–222:11, 234:16–235:4; 222:16–223:8, 235:5–236:12).

The inquiry of whether Plaintiff's comparators are similarly situated is not a rigid one and requires the court to consider "the full variety of factors that an objectively reasonable ... decisionmaker would have found relevant in making the challenged decision." *Lindquist,* 669 F.3d at 234 (quoting *Griffin Indus., Inc. v. Irvin*, 496 F.3d 1189, 1203 (11th Cir. 2007)). Here, Plaintiff's citations to the depositions of Mr. Lyons and Ms. Smith do not provide any comparison to determine whether others were similarly situated. While Plaintiff string cites multiple portions of deposition testimony in his briefing, Plaintiff fails to elucidate any argument or evidence establishing facts that would enable a fact finder to determine similarities. Construing this evidence in the light most favorable to Plaintiff, it at best suggests that certain property owners were treated differently with respect to the enforcement of certain city ordinances, but fails to first establish the necessary showing that others were similarly situated. For example, Plaintiff does not point out who specifically owned the properties in question and some of the testimony suggests the properties were owned by the City, the railroad, or TxDOT—in other words, not residents similarly situated to Mr. Laza. Moreover, Plaintiff does not point out the location of the properties in

question and whether they are proximate to Mr. Laza's property or articulate which ordinances, specifically, the owners may have been in violation of. Moreover, it is not clear that any of the property owners were operating businesses similar to Mr. Laza's lawnmower repair shop or that they were granted a specific use permit such as the one granted to Mr. Laza. While Plaintiff need not make a showing that others were identically situated, there needs to be a showing sufficient for reasonable jurors to draw the conclusion that others were similarly situated. *See Vineyard Invs., L.L.C. v. The City Of Madison, Miss*, 440 F. App'x 310, 314 (5th Cir. 2011) (affirming summary judgment where Plaintiff failed to show others were similarly situated where there were no other open liquor stores within the same shopping center); *Lamb v. Edwards*, 48 F.3d 530, 530 (5th Cir. 1995) (finding plaintiff failed to produce evidence sufficient to permit rational jurors to find that other similarly situated persons were allowed to operate businesses at the airport without complying with a permit requirement). In this case, it appears that Plaintiff failed to conduct any discovery targeted at establishing others were similarly situated and has failed to carry his burden at the summary judgment stage.

For these reasons, the court **GRANTS** the City Defendants' motion for summary judgment (Doc. No. 87) as to Plaintiff's Fourteenth Amendment equal protection claim. Plaintiff's Fourteenth Amendment equal protection claim should therefore be dismissed with prejudice.

### d.  Fourteenth Amendment Procedural Due Process Claim

The City Defendants contend that Plaintiff has not asserted a procedural due process claim against the City as the amended complaint only lists Defendant Ronald Stutes as to this allegation. (Doc. No. 87, at 18.) However, the City Defendants contend that to the extent the court interprets the allegations to be against the City, they adopt the arguments set forth in Defendant Stutes's motion for summary judgment as to this claim. *Id.* at 18–19. Plaintiff contends that he has sued all

26

Defendants jointly and severally on this claim and that his due process claim is inextricably intertwined with this TOMA claim. (Doc. No. 96, at 15.) Specifically, Plaintiff argues that the failure to have an open meeting before suing Mr. Laza violates due process, and the failure to disclose information of a meeting subject to TOMA violates due process. *Id.* at 15–16. Thus, Plaintiff argues that the City violated his due process rights in failing to disclose and make record of the meeting where it was decided that Mr. Laza would be sued by the City. *Id.* at 16.

Because Plaintiff has intended to assert a claim against the City for violation of due process, the court will consider this claim first as it is alleged against the City. In his amended complaint, Plaintiff asserts that the City violated his due process rights by failing to comply with the city charter and ultimately failing to approve the filing of the lawsuit against him prior to the lawsuit being filed on June 9, 2016. (Doc. No. 46, at 8.) While the claim itself discusses primarily the actions of the city attorney, Defendant Stutes, with respect to the unauthorized filing of the lawsuit, the allegations clearly also implicate the actions of the city council by contending they did not discuss this lawsuit until after it was filed and never voted to ratify the decision by Defendant Stutes to file the suit. *Id.* at 12. As such, Plaintiff has alleged a violation of the city charter occurred in the approval of the lawsuit against Plaintiff and has indeed implicated municipal liability through his allegations. Thus, the court disagrees that the City was not alleged to have violated Plaintiff's due process rights.

However, there is no vicarious municipal liability under § 1983; rather, plaintiffs "must prove that 'action pursuant to official municipal policy' caused their injury." *Connick v. Thompson*, 563 U.S. 51, 60 (2011) (quoting *Monell v. Department of Social Services*, 436 U.S. 658, 691(1978)). Establishing municipal liability requires proof of (1) a policymaker who can be charged with actual or constructive knowledge of (2) an official policy or custom that (3) was the

moving force behind a constitutional violation. *See Zarnow v. City of Wichita Falls*, 614 F.3d 161, 166 (5th Cir. 2010); *Valle v. City of Houston*, 613 F.3d 536, 541–42 (5th Cir. 2010).

The court first turns to whether there is a genuine issue of material fact with respect to whether Plaintiff's procedural due process rights were violated. The Fourteenth Amendment to the Constitution of the United States guarantees, in pertinent part, that no state shall "deprive any person of life, liberty, or property, without due process of law." U.S. CONST. AMEND. XIV, § 1. The due process clause has procedural and substantive components. *See County of Sacramento v. Lewis*, 523 U.S. 833, 840 (1998). The procedural component requires states to provide a constitutionally adequate process before depriving an individual of life, liberty, or property. *Zinermon v. Burch*, 494 U.S. 113, 125 (1990) (internal quotations and citations omitted). Section 1983 provides a cause of action against an individual who, acting under color of state law, has deprived a person of a federally protected statutory or constitutional right. *Am. Mfrs. Mut. Ins. Co. v. Sullivan*, 426 U.S. 40, 49–50 (1999). To prevail on his procedural due process claim, Plaintiff must demonstrate that a state actor deprived him of life, liberty, or property without due process of law. *See Jordan v. Fisher*, 823 F.3d 805, 810 (5th Cir. 2016).

Plaintiff must first demonstrate that the City has deprived him of a protected property interest. Plaintiff contends that he has stated a protected property interest in his ability to operate his repair shop while maintaining his inventory on the premises. (Doc. No. 97, at 15.) The court finds the Fifth Circuit's reasoning in *Bowlby v. City of Aberdeen, Miss.*, 681 F.3d 215, 220 (5th Cir. 2012) instructive in this regard. In *Bowlby*, the court held that a business license or permit is a protected property interest for procedural due process because, once issued, a license or permit "may become essential in the pursuit of a livelihood." *Id.* (quoting *Bell v. Burson*, 402 U.S. 535, 539 (1971)). Here, Plaintiff has provided evidence of his specific use permit allowing outside

storage in the C-3 general commercial zoning district in which his property was located. (Doc. No. 88-1, at 60–61.) In no uncertain terms, Plaintiff has made clear that he was relying on this specific use permit to run his lawnmower business, which involves outdoor storage of lawnmowers and lawnmower parts. While the City did not expressly revoke Plaintiff's permit in this case, Plaintiff alleges that the City effectively nulled the permit by enforcing ordinance violations against him for his outdoor storage and ultimately filing a lawsuit against him. The court finds that the specific use permit granted to Plaintiff conferred a constitutionally protected property interest with respect to the maintenance and operation of his lawnmower business. Plaintiff has raised a genuine issue of material fact with respect to whether the enforcement of the city ordinances against him, and ultimately the lawsuit and judgment, deprived him of this protected property right.

Having found a constitutionally protected property interest, the court must next inquire whether Plaintiff was afforded due process. There are "three distinct factors for a court to weigh in considering whether the procedural due process provided is adequate: 'First, the private interest that will be affected by the official action; second, the risk of an erroneous deprivation of such interest through the procedures used, and the probable value, if any, of additional or substitute procedural safeguards; and finally, the Government's interest, including the function involved and the fiscal and administrative burdens that the additional or substitute procedural requirement would entail.'" *Meza v. Livingston*, 607 F.3d 392, 402 (5th Cir. 2010) (quoting *Mathews v. Eldridge*, 424 U.S. 319, 335 (1976)).

As discussed above, the protected property interest was in Plaintiff's ability to operate his business pursuant to his specific use permit, which is recognized by courts as an important right. *Bowlby*, 681 F.3d at 220. As to the second consideration, Plaintiff contends he was not afforded pre-deprivation safeguards when the City failed to provide written notice of a meeting or an open

meeting prior to the decision to file a lawsuit against him to enforce the city ordinances in question. While the City did provide Plaintiff notice of the ordinance violations prior to filing suit (Doc. No. 88-1, at 87–89), and the enforcement ultimately resulted in a state court jury trial rendering the risk of erroneous deprivation low, the additional safeguards of having provided written notice of the meeting regarding potential prosecution against Plaintiff and an opportunity to be heard prior to the filing of suit against him were de minimus. Indeed, as discussed *infra* in Section I.f., the TOMA may have in fact required such procedure to occur. Moreover, the administrative burden and cost to the City to have provided written notice of the meeting, held an open meeting, or provided Plaintiff an opportunity to be heard prior to filing suit is also insignificant. Afterall, the City ultimately held a closed meeting where the decision was made to file suit (Doc. No. 87-1, at ¶ 4), and the added procedure very well could have avoided the lengthy time and resources needed to complete a trial before the state court that is still being disputed on appeal. For these reasons, the court finds that Plaintiff has raised a genuine issue of material fact with respect to whether he was deprived due process prior to the deprivation of a protected property interest.

Nonetheless, as discussed, to implicate a claim against the City, Plaintiff still must show proof of (1) a policymaker who can be charged with actual or constructive knowledge of (2) an official policy or custom that (3) was the moving force behind a constitutional violation. *See Zarnow*, 614 F.3d at 166. Here, Plaintiff does not identify a single policymaker, but his allegations and contentions identify the city attorney, other city officials, the city manager, and the city council as policymakers who have actual knowledge of the custom to make decisions such as the decision to file suit behind closed doors. (Doc. No. 46; Doc. No. 96, at 22–25.) As the Fifth Circuit has held, policy need not be a formal written policy, but may include "conduct that has become a traditional way of carrying out policy and has acquired the force of law." *Bennett v. City of Slidell*,

728 F.2d 762, 768 (5th Cir. 1984). Although Plaintiff does not provide evidence of a pattern of this type of conduct by the City outside the context of his case, Plaintiff has shown the adoption of this practice in his particular case. Plaintiff cites to discovery responses where Defendants admitted the meeting wherein the decision to file suit was made was a private meeting between Defendant Stutes, Jeffrey Lyons, Patsy Smith, Larry Pannell, and others, and that there was no city council meeting prior to June 9, 2016 (the date of filing of the lawsuit) in which the filing of the lawsuit against Plaintiff was discussed. *Id.* at 22–23. Moreover, the summary judgment evidence includes the affidavit of Mike Alexander who states that he was the city manager for the City of Palestine at the time, that Mr. Stutes was authorized to file the lawsuit and prosecute the lawsuit against Mr. Laza, and that the city council has been made aware of the lawsuit and no councilmember has expressed any desires to discontinue the lawsuit. (Doc. No. 87-2, at ¶¶ 1–6.) Defendant Stutes similarly attests that he filed the lawsuit against Plaintiff with the approval of appropriate city officials. (Doc. No. 86-1, at ¶ 5.)

Ratification posits that a plaintiff satisfies the policy standard where he shows that "a final decisionmaker[ ]" adopted "a course of action 'tailored to a particular situation and not intended to control decisions in later situations.'" *Bd. of Cty. Comm'rs of Bryan Cty., Okla. v. Brown*, 520 U.S. 397, 410 (1997) (quoting *Pembaur v. City of Cincinnati*, 475 U.S. 469, 481 (1986)). Here, either Defendant Stutes and the city officials who met behind closed doors were final decisionmakers for the City because they decided to file suit against Mr. Laza without any further meetings or approval of other city officials, or the decision required the approval of the city manager and/or the city council who collectively *post hoc* ratified the decision to file the lawsuit against Plaintiff after the decision was made behind closed doors. In this case, that decision is the

31

asserted basis for the constitutional deprivation of due process and Plaintiff has provided enough evidence to raise a question of fact regarding the City's liability.

For these reasons, the court **DENIES** the City's motion for summary judgment (Doc. No. 87) as to Plaintiff's Fourteenth Amendment procedural due process claim.

### e.   Fourth Amendment Unlawful Search Claim

The City Defendants contend that Plaintiff has not adequately pleaded a claim for an unlawful search and only points to two inspections that were done at the agreement of Plaintiff's counsel as part of discovery in ongoing litigation—*City of Palestine v. Jerry Laza*, Case No. DCCV-16-356-346 in the 349th District Court of Anderson County, Texas. (Doc. No. 87, at 19.) Further, the City Defendants argue that to the extent Defendant Stutes conducted an unlawful search, which is denied, there is no agency or *respondeat superior* liability under 42 U.S.C. § 1983 for a local government such as the City. *Id.* at 21–23. Plaintiff responds that he dismisses his unlawful search claim against all parties. (Doc. No. 96, at 16.) Defendants have not filed a reply addressing Plaintiff's voluntary dismissal.

Here, at the summary judgment stage, Plaintiff's requested dismissal of his Fourth Amendment unlawful search claim is a request for voluntary dismissal pursuant to Federal Rule of Civil Procedure 41(a)(2). Defendants have not opposed this dismissal and have not filed any counterclaims in this action. Accordingly, the court finds that Plaintiff's request for dismissal should be granted and Plaintiff's Fourth Amendment unlawful search claim is dismissed without prejudice.

### f.   TOMA Claim

The City Defendants contend that Plaintiff's TOMA claim fails for several reasons. First, the City Defendants contend there is no evidence that an unnoticed City of Palestine council

meeting took place to pass a resolution or ordinance to authorize the filing of a state court suit against Plaintiff. (Doc. No. 87, at 23.) Second, the City Defendants contend that there was no necessity for the city council to pass a resolution or ordinance to authorize Defendant Stutes to file suit against Plaintiff. *Id.* at 24. Third, the City Defendants contend that this case is similar to *San Antonio v. Aguilar*, 670 S.W. 2d 681 (Tex. Civ. App. – San Antonio [4th Dist.], 1984, no writ), and the Open Meetings Act was not invoked here because the decision to pursue litigation against Plaintiff was an internal administrative decision. *Id.* at 24–25. Last, the City Defendants point out that the summary judgment evidence, including the affidavit of Mike Alexander, states that Mr. Stutes was authorized to file suit against Plaintiff and that the city council was aware of it. *Id.* at 25, citing Ex. B. Moreover, the City Defendants argue that because Plaintiff's TOMA claim fails, he is not entitled to injunctive relief. *Id.* at 26. Plaintiff argues that Defendant Stutes admits he filed the lawsuit against Mr. Laza on June 9, 2016 and that he had no knowledge of any city council meeting discussing the lawsuit prior to is filing. (Doc. No. 96, at 21–22.) Plaintiff clarifies that it is his contention that the city council did not vote to initiate the lawsuit, or even discuss it, prior to its initiation by Defendant Stutes, rendering it invalid, or alternatively, the suit was discussed or approved by a vote at a session unrecorded in the minutes, also constituting a violation of TOMA. *Id.* at 23. Plaintiff further contends that he does not challenge the authority or existence of the city charter or Mr. Stutes's representation of the City, but that the city charter does not authorize a violation of TOMA. *Id.* at 24. Plaintiff further argues that *Aguilar* is distinguishable because that case involved an appeal of a suit where the city attorney of San Antonio had previously represented the city, under color of proper authorization. *Id.* at 25. Lastly, Plaintiff argues that the testimony of Mike Alexander is irrelevant because it offers no suggestion of pre-suit approval by the City and suggests at best that the City made no *post hoc* objection to the lawsuit. *Id.*

With certain exceptions, TOMA provides that every "regular, special, or called meeting of a governmental body shall be open to the public." *Willmann v. City of San Antonio*, 123 S.W.3d 469, 473 (Tex. App. – San Antonio 2003, no writ) (citing TEX. GOV'T CODE § 551.002 (2012)). A core purpose of TOMA is to enable the public to have access to the actual decision-making process of its governmental bodies.  *Id.* (citing *City of San Antonio v. Fourth Court of Appeals*, 820 S.W.2d 762, 765 (Tex. 1991); *see also Cox Enter., Inc. v. Board of Tr. of Austin Ind. Sch. Dist.*, 706 S.W.2d 956, 960 (Tex. 1986). "The Open Meetings Act was promulgated to encourage good government by ending, to the extent possible, closed-door sessions in which deals are cut without public scrutiny." *Save Our Springs Alliance, Inc. v. Lowry*, 934 S.W.2d 161, 162 (Tex. App. – Austin 1996, orig. proceeding) (citing *Cox Enters., Inc. v. Bd. of Trustees of the Austin Indep. Sch. Dist.*, 706 S.W.2d 956, 960 (Tex. 1986) ("The Act is intended to safeguard the public's interest in knowing the workings of its governmental bodies.")). Provisions of the Act should be liberally construed to effect its purpose. *See Willmann*, 123 S.W.3d at 473; *Toyah Ind. Sch. Dist. v. Pecos–Barstow Ind. Sch. Dist.*, 466 S.W.2d 377, 380 (Tex. Civ. App. – San Antonio 1971, no writ).

The City Defendants' arguments focus on the fact that no "meeting" occurred under the TOMA, or needed to occur, because the decision to file suit was an administrative decision for which the city attorney was authorized under the city charter. As an initial matter, the court recognizes that "there is a presumption that when a city attorney brings suit on behalf of a city, the suit is authorized, absent a sworn plea to the contrary." *Aguilar*, 670 S.W.2d at 684. In this case, the city charter provides that the city attorney "shall represent the city in all litigation and controversies." *See, e.g.,* Doc. No. 87-4, at 18, "City Charter" Sec. 8.7. Indeed, it appears that the state court already considered whether Mr. Stutes had the authority to file and prosecute the lawsuit

34

against Mr. Laza by considering his motion brought before the state court, conducting a hearing

on the motion, and deciding to proceed to a trial, which resulted in a judgment against Mr. Laza.

*See, e.g,* Doc. No. 87-1, at 12–22. While the issue of Mr. Stutes's authority may have been resolved

by the state court, it is not apparent from the record that the state court ever considered whether a

violation of the TOMA occurred in deciding to file the lawsuit as Mr. Laza contends here. Whether

the TOMA was violated presents a slightly different question for the court as it is conceivable an

attorney may have authority under a city charter to take action, but could still be in violation of the

TOMA.

      The City Defendants do not contest, or otherwise present evidence to the contrary, that the

decision to file suit against Mr. Laza was made during a closed session. Rather, the City

Defendants focus on the fact that the decision was not made during a "meeting" as defined by the

TOMA.

      TOMA defines "meeting" as:

(A) a deliberation between a quorum of a governmental body, or between a quorum
of a governmental body and another person, during which public business or
public policy over which the governmental body has supervision or control is
discussed or considered or during which the governmental body takes formal
action; or

(B) except as otherwise provided by this subdivision, a gathering:

    (i)    that is conducted by the governmental body or for which the
governmental body is responsible;

    (ii)   at which a quorum of members of the governmental body is present;

    (iii)  that has been called by the governmental body; and

    (iv)  at which the members receive information from, give information to, ask
questions of, or receive questions from any third person, including an
employee of the governmental body, about the public business or public
policy over which the governmental body has supervision or control.

TEX. GOV'T CODE ANN. § 551.001 (2012).

The City Defendants rely on affidavits from Mike Alexander, the then city manager, and Ronald Stutes, the city attorney, in support of their arguments. As an initial matter, the state court affidavit of Mike Alexander submitted in support of Mr. Stutes's authority has no bearing on the question of before the court because it only provides that Mr. Stutes had authority to file the suit and that the city council has been made aware and no members have objected. (Doc. No. 87-1, at 16–17. As discussed above, the question before the court is not whether Mr. Stutes was authorized to file the lawsuit, but whether a violation of the TOMA occurred in the filing of this lawsuit. Mr. Stutes's affidavit provides little more detail regarding what occurred prior to the filing of the lawsuit against Mr. Laza. He simply states that "[p]ursuant to the authority granted to me as City Attorney by the City of Palestine City Charter, and at the request and approval of appropriate City of Palestine officials, I drafted and filed a lawsuit against Plaintiff to enforce the Ordinances." *Id.* at 2, ¶ 5. Mr. Stutes does point to an early 2016 meeting with himself, Assistant City Manager Larry Pannel, Development Services Director Jeffrey Lyons, and Code Enforcement Officer Patsy Smith and others whom he cannot recall wherein Mr. Laza's ordinance violations were discussed and it was determined that "that a lawsuit would be filed against Plaintiff Laza to enforce the Ordinances." *Id.* at ¶ 4.

Given this evidence, there is no dispute that the meeting in question included a "deliberation" of a "governmental body." *See* § 551.001(2)–(3). Moreover, the city charter defines a "quorum" as four members. Doc. No. 87-4, at Sec. 4.9. Given that Mr. Stutes has attested that it was himself, Assistant City Manager Larry Pannel, Development Services Director Jeffrey Lyons, and Code Enforcement Officer Patsy Smith, as well as others he cannot specifically recall, who were present at the early 2016 meeting, it appears that a quorum was present for this meeting.

(Doc. No. 87-1, at ¶ 4.) Thus, the question of whether the meeting needed to be open to the public turns on whether the filing of the lawsuit would be considered a "formal action" by the City or whether the decision to file the lawsuit, or other related discussions at the closed meeting, were about the public business or public policy over which the City has supervision or control. TEX. GOV'T CODE ANN. § 551.001 (2012).

As discussed above, the City Defendants rely on *Aguilar* in support of their argument that a TOMA violation did not occur. In *Aguilar*, the Court of Appeals determined that the decision to appeal a lawsuit did not violate the TOMA because (1) the meeting wherein the decision to appeal was made was neither a regular, special, or called meeting under the TOMA; (2) the decision to appeal was a ministerial decision and not a governmental one; and (3) there was no formal resolution or ordinance that emerged from the session. *Aguilar*, 670 S.W.2d at 685–86.  The Court of Appeals held that where "the city attorney has authority derived from the city charter to represent the city in all legal proceedings, the city council is not required to pass a resolution or an ordinance as a prerequisite to an appeal" and the decision to appeal was "an internal administrative decision and not within the purview of the Open Meetings Act." *Id.* at 686.

Here, unlike *Aguilar* where the city attorney had already represented the city at trial and the decision was made to file an appeal, Mr. Stutes and other city officials made the decision to initiate the filing of a civil lawsuit against Mr. Laza during a private meeting. Factually, there is a distinction between a city proceeding with an appeal of an already pending matter and deciding to file a lawsuit against one of its citizens. Nonetheless, Texas courts have found that city attorneys may make decisions with respect to litigation without first conducting an open meeting. *See City of San Benito v. Rio Grande Valley Gas Co*., 109 S.W.3d 750, 752 (Tex. 2003) (holding that "cities

could authorize their attorneys to opt out of the litigation without formal action in an open meeting."); *Aguilar*, 670 S.W.2d at 685–86.

Again, there is no dispute that the decision to file the lawsuit against Mr. Laza in 2016 was made during a private meeting between Mr. Stutes and other city officials. (Doc. No. 87-1, at 2, ¶ 4.) The earliest records of meeting minutes submitted by Defendants are from June 27, 2016, where a regular session was called to consider a number of orders of government business, and where the city council went into a closed session to discuss with the city attorney the already pending litigation against Mr. Laza. (Doc. No. 86-3, at 4.) The meeting then reconvened in regular session to discuss any action that needed to be taken with respect to that pending litigation against Mr. Laza. *Id.* Even if the city council eventually did approve of the filing of the lawsuit, if the original meeting where the decision to file suit was made was "not convened in accordance with the Act, it could not later ratify the void act at a properly convened meeting." *Esperanza Peace & Just. Ctr. v. City of San Antonio*, 316 F. Supp. 2d 433, 478 (W.D. Tex. 2001). The only summary judgment evidence with respect to what occurred when the decision to file suit against Mr. Laza was made is the affidavit of Mr. Stutes, which, as discussed above, does not contain many facts other than to state that it was determined that a written notice of violation of ordinances would be issued to Mr. Laza and that if he did not comply a lawsuit would be filed against him to enforce the ordinances. (Doc. No. 87-1, at 2, ¶ 4.) The parties have not submitted any additional evidence from other meeting attendees in the form of affidavit, deposition testimony, or otherwise. Thus, the court has very little information presently as to what occurred during that meeting aside from the decision to sue Mr. Laza being made.

Given that ordinance violations were discussed and the decision to file suit against Mr. Laza was made during the meeting, the court finds a genuine issue of material fact exists with

respect to whether the meeting needed to be an open meeting. As discussed above, while the cases relied on support the notion that discussions regarding the filing of a lawsuit may be appropriately made behind closed doors—particularly where matters of attorney-client privilege may arise—it is also equally plausible that the decision to file, after those confidential discussions have occurred, should be conducted in an open meeting. Indeed, it appears that this is exactly how the city council handled the presentation of litigation decisions after the lawsuit was filed—*i.e.* closing the session for confidential matters to be discussed and then reconvening an open session with respect to actions that need to be taken. *See* Doc. No. 86-3. Moreover, the decision of a city to sue one of its own citizens using taxpayer money implicates public business. The court does not read TOMA as strictly as Defendants present it to require only open meetings where a resolution or ordinance is passed. Rather, the statute implicates that open meetings are required when there is "formal action" taken, or when information is exchanged about the public business or public policy over which the city council has supervision or control. TEX. GOV'T CODE ANN. § 551.001 (2012). In this case, a question of fact remains with respect to whether the City took formal action in deciding to file a lawsuit against Mr. Laza.

Moreover, Plaintiff contends that the City violated § 551.041 when if failed to provide any written notice of the meeting that occurred prior to the filing of the lawsuit against Plaintiff. (Doc. No. 96, at 21–28.)  Section 551.041 requires that "[a] governmental body shall give written notice of the date, hour, place, and subject of each meeting held by the governmental body." TEX. GOV'T CODE ANN. § 551.041 (1993). Because factual questions remain as to the meeting that occurred prior to the filing of the lawsuit against Plaintiff and there is a dearth of evidence regarding any written notice as to that meeting, the court also finds a question of material fact exists with respect

to whether the City violated the TOMA by failing to provide any written notice regarding the meeting.

For these reasons, the court **DENIES** the City Defendants' motion (Doc. No. 87) with respect to Plaintiff's TOMA claim. Further, because the only basis to deny Plaintiff's request for injunctive relief was based on Plaintiff's alleged failure to prove a TOMA claim, the court **DENIES** the request for summary judgment as to the injunctive relief and **DEFERS** ruling on any injunctive relief at this time.

### g.  Qualified Immunity as to Defendant Mike Alexander

Finally, the City Defendants argue that Defendant Mike Alexander is entitled to qualified immunity because, for the reasons already argued, Mr. Alexander did not violate any of Plaintiff's constitutional rights and his actions were objectively reasonable under the totality of the circumstances. *Id.* at 28–29. Plaintiff argues that Defendant Alexander did not act within the scope of his discretionary authority when he enforced ordinances specifically targeting Mr. Laza, in violation of the equal protection clause, and when he permitted Defendant Stutes to file suit against Laza in violation of the city charter and TOMA. (Doc. No. 96, at 26–27.) Plaintiff contends the violations of clearly established law are fourfold: TOMA, the equal protection clause, the due process clause, and the city charter. *Id.* at 27. Plaintiff argues that Defendant Alexander violated his constitutional rights through selective enforcement of police powers in levying city ordinances against him in a way that severely impeded the use of his property. *Id.* at 27. Plaintiff further argues that the city charter does not permit the city attorney to file suit against a corporation, person, or firm without approval of the city council, which failed to occur here. *Id.* Plaintiff argues that state law requires city council meetings to conform to TOMA and that TOMA requires written notices regarding the subject of each meeting. *Id.* at 28.

The doctrine of "qualified immunity" protects government officials from "liability for civil damages insofar as their conduct does not violate 'clearly established' statutory or constitutional rights of which a reasonable person would have known." *Harlow v. Fitzgerald,* 457 U.S. 800, 800 (1982).  The qualified immunity inquiry determines whether a plaintiff has shown "(1) that the official violated a statutory or constitutional right, and (2) that the right was 'clearly established' at the time of the challenged conduct." *Ashcroft v. al–Kidd,* 563 U.S. 731, 735 (2011) (citing *Harlow*, 457 U.S. at 818).  The court has "discretion in deciding which of the two prongs of the qualified immunity analysis should be addressed first." *Pearson v. Callahan*, 555 U.S. 223, 236 (2009).

An additional consideration exists in the analysis of a qualified immunity defense on a motion for summary judgment.  Once a defendant invokes qualified immunity, "the burden shifts to the plaintiff to demonstrate the inapplicability of the defense." *McCreary v. Richardson*, 738 F.3d 651, 655 (5th Cir. 2013) (internal citation omitted).   Thus, although the court "draws all factual inferences in favor of the non-movant, . . . once the issue of qualified immunity is raised, the non-movant (*i.e* the plaintiff in this case) bears the burden of rebutting the defense." *See Estate of Davis v. City of N. Richland Hills*, 406 F.3d 375, 380 (5th Cir. 2005) ("[w]e do not require that an official demonstrate that he did not violate clearly established federal rights; our precedent places that burden upon plaintiffs."); *Brown v. Callahan*, 623 F.3d 249, 253 (5th Cir. 2010) ("the plaintiff bears the burden of negating qualified immunity…").  "The plaintiff can defeat summary judgment by rebutting the qualified immunity defense as a matter of law or by raising a genuine fact dispute that is material to the issue of immunity." *Johnson v. Eggebrecht*, No. 9:14-CV-144, 2015 WL 9703791, at *4 (E.D. Tex. Dec. 28, 2015), *report and recommendation adopted*, No. 9:14-CV-144, 2016 WL 165091 (E.D. Tex. Jan. 14, 2016) (citing *Trent v. Wade*, 776 F.3d 368,

376 (5th Cir. 2015)).  "[S]ummary judgment should be denied if the plaintiff's version of the facts would permit a finding that the official is not entitled to qualified immunity."  *Id.* (citing *Lytle v. Bexar Cnty.*, 560 F.3d 404, 418 (5th Cir. 2009)).

Here, as discussed, Plaintiff relies on four alleged bases to rebut the qualified immunity defense—that Defendant Alexander has violated clearly established rights found in the TOMA, the equal protection clause, the due process clause, and the city charter. As an initial matter, a violation or deviation from the city charter does not amount to a statutory or constitutional violation and therefore cannot rebut the defense of qualified immunity in this case. *See Harlow*, 457 U.S. at 801 (holding that qualified immunity shields government offcials from "liability for civil damages insofar as their conduct does not violate "clearly established" ***statutory or constitutional rights*** of which a reasonable person would have known.") (emphasis added). Plaintiff cites to no authority that would provide for the rebuttal of qualified immunity based upon the violation of city charter even if such a violation occurred here. Tellingly, Plaintiff does not even assert a violation of the city charter as a standalone claim in this matter. Moreover, as the court has discussed herein, Plaintiff's claim for violation of the equal protection clause fails. Thus, the only bases for which Defendant Alexander can be said to have violated a clearly established right are in Plaintiff's alleged due process and TOMA violations.

"A right is clearly established only if 'the right's contours were sufficiently definite that any reasonable official in the defendant's shoes would have understood that he was violating it.'" *Mote v. Walthall*, 902 F.3d 500, 505 (5th Cir. 2018) (quoting *Plumhoff v. Rickard*, 572 U.S. 765 (2014)). The Supreme Court has admonished courts "not to define clearly established law at a high level of generality." *Ashcroft v. al–Kidd*, 563 U.S. at 742. The contours of the right must be established by controlling authority or a "robust consensus of persuasive authority." *Mote*, 902

F.3d at 506 (quoting *Morgan v. Swanson*, 659 F.3d 359, 382 (5th Cir.2011) (en banc)). The fundamental concept promoted by requiring particularity is "fair warning" to government officials. *Id.*

### i.   Fourteenth Amendment Due Process

The court first considers the Fourteenth Amendment as the source of substantive law that would dictate whether Defendant Alexander is entitled to qualified immunity. Plaintiff cites to no cases with facts that might be similar to the present case to suggest that Defendant Alexander's *post hoc* ratification of the decision to file a lawsuit against Plaintiff constituted a violation of clearly established law. *See Cunningham v. Castloo*, 983 F.3d 185, 194 (5th Cir. 2020) (finding defendant entitled to qualified immunity where plaintiff failed to cite "adequate authority at a sufficiently high level of specificity" to put defendant "on notice that his conduct is definitively unlawful."). The court is unaware of any precedent that would provide fair notice to Defendant Alexander to alert him of a violation of clearly established law based on his conduct in this case. There is nothing to suggest that a reasonable official would understand that the means chosen by Defendant Alexander to ratify the filing of the lawsuit based on his interpretation of the city charter would violate a clearly established right. Moreover, the affidavit of Mr. Alexander regarding his conduct was put before the state court and it was determined that the City had authority to file suit for purposes of that action. (Doc. No. 86-1, at ¶ 12; Doc. No. 86-2.) For these reasons, the court finds that Plaintiff has not met his burden of defeating Defendant Alexander's claim of qualified immunity based on a violation of due process.

### ii.   TOMA

Next, Plaintiff relies on the TOMA as substantive law to rebut the defense of qualified immunity. Again, Plaintiff fails to cite to any cases that include facts that would have given

Defendant Alexander fair notice that his *post hoc* ratification of the decision to file a lawsuit against Plaintiff constituted a violation of clearly established law. While Plaintiff argues that the TOMA very clearly requires an open meeting and written notice, as the court has discussed herein, a question of fact remains with respect to whether the City took formal action in deciding to file a lawsuit against Mr. Laza. Thus, even a liberal reading under the TOMA does not give rise to a clearly established violation in this case. Indeed, as discussed above, Texas courts have found that city attorneys may make decisions with respect to litigation without first conducting an open meeting. *See Rio Grande Valley Gas Co*., 109 S.W.3d at 752 (holding that "cities could authorize their attorneys to opt out of the litigation without formal action in an open meeting."); *Aguilar*, 670 S.W.2d at 685–86. For these reasons, the court finds that Plaintiff has not met his burden of defeating Defendant Alexander's claim of qualified immunity based on a violation of the TOMA.

Because Plaintiff has failed to meet his burden of defeating Defendant Alexander's claim of qualified immunity in this case, the court finds that Defendant Alexander is entitled to qualified immunity. The City Defendants' motion for summary judgment (Doc. No. 87) as to qualified immunity of Defendant Alexander is **GRANTED**.

## II.     Defendant Stutes's Motion for Summary Judgment (Doc. No. 86)

### a.  Fourteenth Amendment Procedural Due Process Claim

Defendant Stutes argues that because he was within his chartered role as city attorney in filing a suit representing the City of Palestine, Plaintiff's procedural due process claim fails. (Doc. No. 86, at 13–14.) Defendant Stutes further argues that he had both implied and express authority from the City of Palestine to file the lawsuit against Plaintiff in state court and similarly cites to *Aguilar* in support. *Id.* at 14–16. Defendant Stutes argues that Plaintiff's due process claim also fails because he has no identifiable protected property interest. *Id.* at 16. Moreover, Defendant

Stutes argues that even if Plaintiff had a protected property interest, he was afforded due process. *Id.* at 17. Plaintiff argues that the failure to have an open meeting before suing Mr. Laza violates due process, and the failure to disclose information of a meeting subject to the TOMA violates due process. (Doc. No. 97, at 6.) Thus, Plaintiff argues that Defendant Stutes violated his due process rights in failing to disclose and make record of the meeting where it was decided that Mr. Laza would be sued by the City. *Id.* at 11–12. Plaintiff further contends that he has stated a protected property interest in his ability to operate his repair shop while maintaining his inventory on the premises. *Id.* at 15.

For the reasons discussed above with respect to the City Defendants, *supra* Section I.d, Defendant Stutes's motion for summary judgment (Doc. No. 86) as to Plaintiff's procedural due process claim is **DENIED**.

### b.  TOMA Claim

Defendant Stutes makes the same arguments as the City Defendants as to Plaintiff's TOMA claim. Namely that, (1) there is no evidence that an unnoticed City of Palestine council meeting took place to pass a resolution or ordinance to authorize the filing of a state court suit against Plaintiff; (2) there was no necessity for the city council to pass a resolution or ordinance to authorize Defendant Stutes to file suit against Plaintiff; (3) this case is similar to *Aguilar*, and the Open Meetings Act was not invoked here because the decision to pursue litigation against Plaintiff was an internal administrative decision; and (4) summary judgment evidence, including the affidavit of Mike Alexander, states that Mr. Stutes was authorized to file suit against Plaintiff and that the city council was aware of it. (Doc. No. 86, at 19–21.) Defendant Stutes also argues that because the TOMA claim fails for the stated reasons, Plaintiff is not entitled to injunctive relief. *Id.* at 21. Plaintiff argues that Defendant Stutes admits he filed the lawsuit against Mr. Laza on

45

June 9, 2016 and that he had no knowledge of any city council meeting discussing the lawsuit prior to is filing. (Doc. No. 97, at 11–12.) Plaintiff clarifies that it is his contention that the city council did not vote to initiate the lawsuit, or even discuss it, prior to its initiation by Defendant Stutes, rendering it invalid, or alternatively, the suit was discussed or approved by a vote at a session unrecorded in the minutes, also constituting a violation of the TOMA. *Id.* at 13. Plaintiff further contends that he does not challenge the authority or existence of the city charter or Mr. Stutes's representation of the City, but that the city charter does not authorize a violation of the TOMA. *Id.* at 14. Plaintiff further argues that *Aguilar* is distinguishable because that case involved an appeal of a suit where the city attorney of San Antonio had previously represented the city, under color of proper authorization. *Id.* at 14–15. Lastly, Plaintiff argues that the testimony of Mike Alexander is irrelevant because it offers no suggestion of pre-suit approval by the City and suggests at best that the City made no *post hoc* objection to the lawsuit. *Id.* at 15.

Defendant Stutes raises the same arguments as to the City Defendants with respect to Plaintiff's TOMA claim and Plaintiff argues the identical response. For the reasons, discussed *supra* Section I.f., Defendant Stutes's motion for summary judgment on Plaintiff's TOMA claim (Doc. No. 86) is **DENIED**.

### c.  Qualified Immunity

Defendant Stutes additionally argues that he is entitled to qualified immunity because, for the reasons already argued, he did not violate any of Plaintiff's constitutional rights. (Doc. No. 86, at 25.) Moreover, Defendant Stutes argues that given the clear language of the city charter and his approval to file suit by City of Palestine officials, his actions were objectively reasonable. *Id.* Plaintiff argues that qualified immunity defense is not available to Defendant Stutes because there was clearly established law at the time of the wrongful conduct, Defendant Stutes violated that

clearly established law, and a reasonable person would have known of the clearly established law. (Doc. No. 97, at 16.) Plaintiff again points to a fourfold of established law that was violated in support: the TOMA, the equal protection clause, the procedural due process clause, and the city charter. *Id.* at 17. Plaintiff argues that the plain language of the city charter required Stutes to get authorization from the city council prior to filing suit, which he failed to do. *Id.* at 18. Plaintiff further argues that the provisions of TOMA are clear and were violated by failing to have an open meeting prior to filing a lawsuit against Plaintiff. *Id.* at 19–20. Plaintiff argues that the due process clause was also clearly violated by the failure to have an open meeting and failure to make a record of the meeting. *Id.* at 21. Lastly, Plaintiff argues that Defendant Stutes clearly violated the equal protection clause by enforcing city ordinances against him and filing suit against him, while other property owners were treated differently. *Id.* at 22–24.

As the doctrine of qualified immunity has already been extensively discussed herein, the court will not reiterate the law. However, when the defense is raised, the court's inquiry focuses on whether plaintiff has shown "(1) that the official violated a statutory or constitutional right, and (2) that the right was 'clearly established' at the time of the challenged conduct." *Ashcroft,* 563 U.S. at 735 (citing *Harlow*, 457 U.S. at 818). As with Defendant Alexander, the same two remaining bases for rebutting the defense of qualified immunity are invoked by Plaintiff: violation of due process and violation of the TOMA. For similar reasons, the court finds that Defendant Stutes is entitled to qualified immunity.

### i.   Fourteenth Amendment Due Process

The court first considers the Fourteenth Amendment as the source of substantive law that would dictate whether Defendant Stutes is entitled to qualified immunity. Plaintiff cites to no cases with facts that are similar to the present case to suggest that Defendant Stutes's decision to file the

lawsuit against Plaintiff during a private meeting constituted a violation of clearly established law. *See Cunningham*, 983 F.3d at 1 (finding defendant entitled to qualified immunity where plaintiff failed to cite "adequate authority at a sufficiently high level of specificity" to put defendant "on notice that his conduct is definitively unlawful."). The court is unaware of any precedent that would provide fair notice to Defendant Stutes to alert him of a violation of clearly established law based on his conduct in this case. There is nothing to suggest that a reasonable official would understand that the means chosen by Defendant Stutes to file the lawsuit against Mr. Laza would violate a clearly established right. Moreover, as discussed herein, the city charter provides that the city attorney "shall represent the city in all litigation and controversies" and Mr. Stutes's authority to represent the City was apparently approved by the state court. *See, e.g.*, Doc. No. 87-4, at 18; Doc. No. 86-1, at ¶ 12. For these reasons, the court finds that Plaintiff has not met his burden of defeating Defendant Stutes's claim of qualified immunity based on a violation of due process.

### ii.   TOMA

Next, Plaintiff relies on TOMA as substantive law to rebut the defense of qualified immunity. Again, Plaintiff fails to cite to any cases that include facts that would have given Defendant Stutes fair notice that his decision to file a lawsuit against Plaintiff during a private meeting constituted a violation of clearly established law. While Plaintiff argues that the TOMA very clearly requires an open meeting and written notice, as the court has discussed herein, a question of fact remains with respect to whether the City took formal action in deciding to file a lawsuit against Mr. Laza. Thus, even a liberal reading under the TOMA does not give rise to a clearly established violation in this case. Indeed, as discussed above, Texas courts have found that city attorneys may make decisions with respect to litigation without first conducting an open meeting. *See Rio Grande Valley Gas Co.*, 109 S.W.3d at 752 (holding that "cities could authorize

their attorneys to opt out of the litigation without formal action in an open meeting."); *Aguilar*, 670 S.W.2d at 685–86. For these reasons, the court finds that Plaintiff has not met his burden of defeating Defendant Stutes's claim of qualified immunity based on a violation of the TOMA.

Because Plaintiff has failed to meet his burden of defeating Defendant Stutes's claim of qualified immunity in this case, the court finds that Defendant Stutes is entitled to qualified immunity. Defendant Stutes's motion for summary judgment (Doc. No. 86) is **GRANTED** as to qualified immunity.

### d.  Official Immunity

Finally, Defendant Stutes states that he has been sued in his personal capacity only. (Doc. No. 86, at 25.) However, Defendant Stutes argues that to the extent Plaintiff has intended to assert claims against him in his official capacity, those claims are the same as those claims asserted against the City and should therefore be dismissed for the same reasons. *Id.* at 26. Plaintiff does not assert whether he intended to sue Defendant Stutes in his official capacity, but argues that Defendant Stutes is not entitled to official immunity because he exceeded his discretionary and ministerial duties when he knowingly violated the TOMA, the city charter, due process clause, and the equal protection clause. (Doc. No. 97, at 24.)

Because the court the has concluded that Defendant Stutes is entitled to qualified immunity, the court will not consider whether he is also entitled to official immunity in this case. Whether or not Plaintiff intended to assert official capacity claims against Defendant Stutes in this case, the claims that remain in this action are against the City as any official capacity claims against Defendant Stutes are construed as claims against the City itself.

### III.  Plaintiff's Motion for Summary Judgment (Doc. No. 88)

### a.  TOMA Claim

Plaintiff contends that he is entitled to summary judgment on his TOMA claim because the evidence shows that Defendant Stutes filed a lawsuit against Plaintiff on June 9, 2016, that there is no evidence of any meeting minutes discussing the lawsuit before it was filed, and that the decision to file the lawsuit against Plaintiff was ultimately made in a closed meeting between Stutes, Jeffrey Lyons, Patsy Smith, Assistant City Manager Pannell, and others. (Doc. No. 88, at 10–12.) Because there is no evidence that the city council ever voted or gave authority to Defendant Stutes to file suit against Plaintiff, Plaintiff argues that Defendant acted outside the scope of his authority in violation of the TOMA. *Id.* at 12. The City Defendants argue that Plaintiff has produced no evidence to show that an unnoticed meeting occurred and that there was no necessity for the city council to pass a resolution or ordinance to authorize Defendant Stutes to file the lawsuit against Plaintiff. (Doc. No. 93, at 26–27.) The City Defendants further argue that TOMA is not invoked because the decision to pursue litigation against Plaintiff was an internal administrative decision. *Id.* at 28. The City Defendants therefore argue that Plaintiff has not carried his evidentiary burden of establishing that there is no genuine issue of material fact, and that he is entitled to summary judgment. *Id.* at 29. Defendant Stutes proffers the same arguments as the City Defendants. (Doc. No. 92, at 19–22.)

As the court has discussed herein, *supra* Section I.f., a genuine issue of material fact exists with respect to Plaintiff's TOMA claim. Therefore, Plaintiff's motion for summary judgment (Doc. No. 88) is **DENIED** with respect to Plaintiff's TOMA claim.

### b.  Fourteenth Amendment Procedural Due Process Claim

Plaintiff argues that Defendant Stutes violated his due process rights when he filed the 2016 lawsuit against Plaintiff without authorization from the city council. (Doc. No. 88, at 13.) The City Defendants argue that Defendant Stutes was well within his chartered role as city attorney

in filing suit and representing the City of Palestine, and thus Plaintiff's procedural due process claim fails as a matter of law. (Doc. No. 93, at 22–23.) Defendant Stutes argues that there is no provision in the city charter, the Texas Constitution or any Texas legislative act that mandates a city attorney must obtain prior approval of the city council before commencing litigation. (Doc. No. 92, at 14.) Defendant Stutes further argues that he had both implied and express authority to file suit. *Id.* at 15. Defendant Stutes also argues that Plaintiff has not identified any protected property interest and that even if he had, he was afforded due process. *Id.* at 16–17. Lastly, Defendant Stutes argues that Plaintiff's reliance on *City of Bonham v Southwest Sanitation*, Inc., 871 S.W.2d 765,767 (Tex. App. – Texarkana 1994, writ denied) is misplaced because that case dealt with not general acts of a city, but rather when a city contracts. *Id.* at 18–19.

As the court has discussed herein, *supra* Section I.d., a genuine issue of material fact exists with respect to Plaintiff's procedural due process claim. Therefore, Plaintiff's motion for summary judgment (Doc. No. 88) is **DENIED** with respect to Plaintiff's procedural due process claim.

### c.  Fourteenth Amendment Equal Protection Claim

Plaintiff argues that Defendants have unconstitutionally discriminated against him without rational basis from 1995 to 2016 by selectively enforcing city ordinances against him that were not enforced against other property owners. (Doc. No. 88, at 14–15.) Plaintiff cites to deposition testimony in support of his unequal treatment. *Id.* at 15. The City Defendants argue that Plaintiff has not established that any property owners were "similarly situated" to Plaintiff, that any other property owners ignored the applicable city ordinances, or that the conditions remained unchanged for any period of time. (Doc. No. 93, at 20.) The City Defendants further argue that Plaintiff has not produced evidence sufficient to establish that the City had no rational basis for its actions. *Id.*

at 21–22. For these reasons, the City Defendants argue that Plaintiff is not entitled to summary judgment on his equal protection claim.

The court has found *supra* Section I.c. that the City Defendants' motion for summary judgment as to the Plaintiff's Fourteenth Amendment equal protection claim should be granted and that claim should be dismissed with prejudice. Accordingly, Plaintiff's motion for summary judgment (Doc. No. 88) as to his Fourteenth Amendment equal protection claim is **DENIED**.

### d.  Fifth Amendment Takings Claim

Plaintiff argues that the City's enforcement of ordinances against him constitutes a regulatory taking. (Doc. No. 88, at 17.) Plaintiff argues that the City seeks to prevent him from using his property for outside storage even though he has a specific use permit. *Id.* Plaintiff contends that the City's targeted enforcement against him will impact his future use and economic interest in the land because he will not longer be able to operate his business the way he used to. *Id.* The City Defendants argue that Plaintiff has produced no competent evidence to: (1) demonstrate that the subject property has been left with no productive or economically beneficial use; (2) show that the enforcement of the city ordinances "rendered the property useless for the activity Laza invested in," or even deprived him of his ability to use the property for outside storage; (3) support valuations, appraisals or market values of the property either before, or after, the enforcement proceedings began; or (4) to show that Plaintiff's property value was negatively affected by the ordinances. (Doc. No. 93, at 15.) The City Defendants contend that the evidence demonstrates that it was Plaintiff's refusal to comply with the applicable ordinances that resulted in ordinance violations, not his "outdoor storage" of inventory and equipment. *Id.* The City Defendants argue that Plaintiff's property was a hazardous junkyard and the City enforced its

ordinances to promote the health, safety, and general welfare of the City thereby validly exercising its police power, which did not constitute a "taking." *Id.* at 17.

The court has found *supra* Section I.b. that the City Defendants' motion for summary judgment as to the Plaintiff's Fifth Amendment takings claim should be granted and that claim should be dismissed with prejudice. Accordingly, Plaintiff's motion for summary judgment (Doc. No. 88) as to his Fifth Amendment takings claim is **DENIED**.

### e.  Defendant Stutes's Affirmative Defenses

Plaintiff also moves for summary judgment on Defendant Stutes's affirmative defenses as he contends they are not adequately pleaded under Federal Rule of Civil Procedure 12(h)(2)(B). (Doc. No. 88, at 19.) Specifically, Plaintiff argues that Defendant Stutes's affirmative defenses of immunity, damages caused by Plaintiff's own conduct, statute of limitations, good faith, failure to mitigate, bankruptcy, exhaustion, and judicial estoppel are all insufficiently stated. *Id.* at 19–22. Defendant Stutes argues that his affirmative defenses were adequately pleaded to give Plaintiff fair notice and that Plaintiff has waived his argument to challenge these defenses. (Doc. No. 92, at 23–25.)  Because the court has concluded that Defendant Stutes is entitled to qualified immunity in this case, which was adequately pleaded by Defendant Stutes, the court will not consider the merits of whether his other affirmative defenses were adequately pleaded.

As a final matter, Plaintiff requests relief that this court void the state judgment against Plaintiff in *City of Palestine v. Jerry Laza*, Case No. DCCV-16-356-346 that is currently on appeal. (Doc. No. 88, at 23.) The City Defendants argue that because there is no violation of TOMA, there is no basis for injunctive relief of voidance of the state court judgment. (Doc. No. 93, at 29.) As the court has discussed above, the court will not make any rulings on injunctive relief at this time.

**CONCLUSION**

The long and arduous factual and procedural history of this case undoubtedly has colored the claims presented. As it stands, the court finds that the present claims are directed to violations of procedural due process and the TOMA and that sufficient evidence has been presented to raise genuine issues of material fact as to those claims as discussed herein. In sum, the court has ruled as follows:

- Plaintiff's motion for summary judgment (Doc. No. 88) is **DENIED**.

- The City Defendant's motion for summary judgment (Doc. No. 87) is **GRANTED-IN-PART** and **DENIED-IN-PART,** the motion is **GRANTED** as to dismissal of the City Council Defendants on the grounds of duplicity and the claims against Doug Smith, Will Brule, Steve Presley, Mitchell Jordan, Vickey Chivers, Larissa Loveless, Joe Baxter, Dana Goolsby, and Ann Conner are **DISMISSED** without prejudice; the motion is **GRANTED** as to Plaintiff's Fifth Amendment takings claim and Plaintiff's Fourteenth Amendment equal protection claim and those claims are **DISMISSED** with prejudice; the motion is **DENIED** as to Plaintiff's Fourteenth Amendment procedural due process claim and Plaintiff's TOMA claim; the motion is **GRANTED** as to qualified immunity as to Defendant Mike Alexander and the asserted claims against him are **DISMISSED** with prejudice.

- Defendant Stutes's motion for summary judgment (Doc. No. 86) is **GRANTED** as to qualified immunity and the claims asserted against him are **DISMISSED** with prejudice.

- Plaintiff's Fourth Amendment unlawful search claims is **DISMISSED** without prejudice pursuant to Fed.R.Civ.P. 41(a)(2).

Plaintiff's claims against the City for violation of procedural due process and the TOMA are the sole remaining claims to proceed to trial.

**So ORDERED and SIGNED this 29th day of March, 2022.**

JOHN D. LOVE
UNITED STATES MAGISTRATE JUDGE